# U.S. COURT OF APPEALS CASE NO. 14-1264, -1290

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

————————

GERAWAN FARMING, INC.,

*Plaintiff-Appellant,*

v.

REHRIG PACIFIC COMPANY,

*Defendant-Appellee.*

————————

On Appeal From The United States District Court For The Eastern District of
California District Court Case 1:11-cv-01273-LJO-BAM

————————

————————

## PLAINTIFF-APPELLANT GERAWAN FARMING, INC.'S
## *(CORRECTED)* OPENING APPEAL BRIEF

Jill M. Pietrini (Cal. Bar No. 138335)
jpietrini@sheppardmullin.com
James E. Curry (Cal. Bar No. 115769)
jcurry@sheppardmullin.com
Michael Murphy (Cal. Bar. No. 234695)
mmurphy@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
TEL: (310) 228-3700
FAX: (310) 228-3701

*ATTORNEYS FOR PLAINTIFF-APPELLANT
GERAWAN FARMING, INC.*

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Gerawan Farming, Inc. ("Appellant")

certifies the following:

1.     The full name of every party or amicus represented by me is:  Gerawan

Farming, Inc.

2.     The name of the real party in interest represented by me is:  Gerawan

Farming, Inc.

3.     All parent corporations and any publicly held companies that own 10 percent

or more of the stock of the party represented by me are:

No parent corporations or publicly held companies hold more than

10% of Gerawan Farming, Inc.

4.     The names of all law firms and the partners or associates that appeared for

the party now represented by me in the trial court or are expected to appear

in this court are:

Manatt Phelps & Phillips LLP, Law Offices of Michael P. Mallery,
Sheppard Mullin Richter & Hampton LLP, Jill M. Pietrini, James E.
Curry, Michael Murphy, Shannon King, and Michael P. Mallery


/s/Jill M. Pietrini
Jill M. Pietrini

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ...................................................1

STATEMENT OF JURISDICTION......................................................1

STATEMENT OF THE CASE .............................................................3

STATEMENT OF FACTS ..................................................................12

SUMMARY OF THE ARGUMENT ..................................................19

ARGUMENT .....................................................................................25

I.      STANDARD OF REVIEW .....................................................25

II.     THE TRIAL COURT IMPROPERLY DISMISSED GERAWAN'S
        LANHAM ACT CLAIM WITHOUT LEAVE TO AMEND......................26

III.    THE TRIAL COURT IMPROPERLY GRANTED SUMMARY
        JUDGMENT ON GERAWAN'S CORRECTION OF
        INVENTORSHIP CLAIM ...................................................31

IV.     THE TRIAL COURT IMPROPERLY LIMITED GERAWAN'S
        COMMON LAW UNFAIR COMPETITION CLAIM TO A
        "PASSING OFF" THEORY ..........................................................40

V.      THE TRIAL COURT IMPROPERLY LIMITED GERAWAN'S
        STATUTORY UNFAIR COMPETITION LAW CLAIM UNDER
        SECTION 17200 ..........................................................54

CONCLUSION ..................................................................................61

ADDENDUM…………………………………………………………63

        Order Granting in Part Motion to Dismiss…………………………64
        Order Granting Summary Judgment…………………………………84
        Order Granting Motion in Limine……………………………………...105
        Order Requiring Immediate Response by 3:30 p.m………………119
        Order Dismissing Case……………………………………………124

Entry of Judgment………..……………………………………………127
Amended Entry of Judgment……………………………………………..128

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Allied Grape Growers v. Bronco Wine, Co.*
    203 Cal.App.3d 432 (Cal. Ct. App. 1988) ........................................................57, 58

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...........................................................................................42, 50

*Balint v. Carson City*
    180 F.3d 1047 (9th Cir. 1999) ....................................................................................40

*Bank of the West v. Superior Court*
    2 Cal. 4th 1254 (1994) ................................................................................19, 30, 31

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1263 (1994)..............................19

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ...........................................................................................42, 50

*Big Bear Lodging Association v. Snow Summit, Inc.*
    182 F.3d 1096 (9th Cir. 1999) ...........................................................................25, 41

*Big Bear Lodging Association v. Snow Summit, Inc.*, 182 F.3d 1096, 1101
    (9th Cir. 1999)..........................................................................................................26

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
    20 Cal.4th 163 (1999) ...............................................................................................55

*Chaplin v. Amador*
    93 Cal.App. 358 (1928)............................................................................................46

*City Solutions Inc. v. Clear Channel Communications, Inc*.
    365 F.3d 835 (9th Cir. 2004).................................................................23, 45, 51, 52

*Clark v. Countrywide Home Loans, Inc.*
    732 F. Supp.2d 1038 (E.D. Cal. 2010) ....................................................................55

*In re Collins*
    141 F. Supp. 25 (S.D. Cal. 1956), *rev'd on other grounds,* 247 F.2d 607 ..........39

*Coos County Board of County Commissioners v. Kempthorne*
531 F.3d 792 (9th Cir. 2008) ........................................................................42

*Dow Chem. Co. v. Exxon Corp.*
139 F.3d 1470 (Fed. Cir 1998) .....................................................................59

*Ethicon, Inc. v. United States Surgical Corp.*
135 F.3d 1456 (Fed. Cir. 1998) ........................................20, 21, 32, 33, 34, 37

*Fina Oil & Chemical*
123 F.3d at 1473 (Fed. Cir. 1997) ......................................................20, 32, 33

*Giesy v. American National Bank of Portland, Oregon*
31 F. Supp. 524 (D. Or. 1940) .....................................................................43

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*
153 F.3d 1318 (Fed. Cir. 1998), *overruled on other grounds, Midwest*
*Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) ...............59

*Johnson v. Jones*
149 F.3d 494 (6th Cir. 1998) ........................................................................28

*L & L White Metal Casting Corp. v. Joseph*
387 F. Supp. 1349 (E.D.N.Y. 1975) ...............................................................28

*Lamothe v. Atlantic Recording Corp.*
847 F.2d 1403 (9th Cir. 1988) ......................................................................27

*Lieberman v. Matson Nav. Co.*
300 F.2d 661 (9th Cir. 1962) ........................................................................39

*Lopez v. Smith*
203 F.3d 1122 (9th Cir. 2000) .................................................................27, 30

*Markman v. Westview Instruments*
517 U.S. 370 (1996) ...................................................................................34

*Mercado v. Allstate Ins. Co.*
340 F.3d 824 (9th Cir. 2003) .............................................................56, 57, 58

*Murukana Farm, Inc. v. Huacuja*
2006 Cal.App. Unpub. LEXIS 10398, *18-19, 21 (2006) ...................................45

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
    319 F. Supp.2d 1059 (C.D.Cal. 2003) ........................................................57

*Ojala v. Bolin*
    178 Cal.App.2d 292 (1960) ..............................................10, 23, 45, 51

*People v. McKale*
    25 Cal.3d 626 (1975) ......................................................................56

*Price v. Symsek*
    988 F.2d 1187 (Fed. Cir. 1993) ......................................................37

*Shroyer v. New Cingular Wireless Servs.*
    622 F.3d 1035 (9th Cir. 2010) ..................................................57, 58

*Skaff v. Meridien North America Beverly Hills, LLC*
    506 F.2d 832 (9th Cir. 2007) ......................................................43, 60

*Snell v. Cleveland, Inc.*
    316 F.3d 822 (9th Cir. 2002) ..................................................19, 25, 27

*Southland Sod Farms v. Stover Seed Co.*
    108 F.3d 1134 (9th Cir. 1997) ......................................................31

*Sukumar v. Nautilus, Inc*
    829 F. Supp.2d 386 (W.D. Virginia, 2011) ......................................59

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.*
    7 F.3d 1434 (9th Cir. 1993) ............................................................28

*Superguide Corp. v. DirecTV Enterprises, Inc.*
    358 F.3d 870 (Fed. Cir. 2004) ..................................................22, 34

*Swierkiewicz v. Sorema N.A.*
    534 U.S. 506 (2002) ......................................................................42

*Sybersound Records, Inc. v. UAV Corp.*
    517 F.3d 1137 (9th Cir. 2008) ......................................................31

*Travelers Cas. & Sur. Co. of America v. Brennete*
    551 F.3d 1132 (9th Cir. 2009) ......................................................40

## Statutes

15 U.S.C. § 1125 ...........................................................................................................28

15 U.S.C. § 1125(a) ......................................................................................................1, 2

28 U.S.C. § 1291 .............................................................................................................1

28 U.S.C. §§ 1331 and 1338 ...........................................................................................1

28 U.S.C. § 1367 .............................................................................................................1

35 U.S.C. § 256 ...............................................................................................................1

35 U.S.C. § 292 ..................................................................................................18, 56, 59

Cal. Bus. & Prof. Code § 17200 ...................2, 3, 4, 5, 17, 43, 44, 54, 55, 56, 57, 58, 59, 60

## Other Authorities

Fed.R.Civ.P. 8(a)(2) ......................................................................................................42

FRAP 4(a)(3) ...................................................................................................................1

## STATEMENT OF RELATED CASES

This case was previously before the Court of Appeals for the Ninth Circuit under the same or similar title and was transferred to this Court pursuant to 28 U.S.C. § 1631.

## STATEMENT OF JURISDICTION

The trial court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 based on Gerawan's claims under 15 U.S.C. § 1125(a) and 35 U.S.C. § 256, and had supplemental jurisdiction under 28 U.S.C. § 1367 over Gerawan's state law claims.

Final judgment in Defendant-Appellee Rehrig Pacific Company's ("Rehrig") favor was entered on June 4, 2013. Gerawan filed an Amended Notice of Appeal on June 5, 2013 to the Ninth Circuit. (A463-464.)

Following post-trial briefing related to Rehrig's motion for attorney's fees, the trial court entered an "Amended Judgment" on January 21, 2014. (A97.) Gerawan filed a Notice of Appeal to this amended judgment with this Court on February 10, 2014. (A475-476.)

This Court has jurisdiction over these appeals under 28 U.S.C. § 1291 and the notices of appeal are timely pursuant to FRAP 4(a)(3).

## STATEMENT OF THE ISSUES PRESENTED ON APPEAL

Gerawan submits the following issues for review:

1.      Did the trial court err in dismissing Gerawan's claim under 15 U.S.C. § 1125(a), and without providing Gerawan leave to amend the claim?

2.      Did the trial court err when it granted summary judgment on Gerawan's correction of inventorship claim of U.S. Patent No. 5,415,293 (the "'293 Patent")?

3.      Did the trial court err in *sua sponte* limiting Gerawan's state law common law unfair competition claim to exclude any cause of action premised upon Rehrig's misappropriation of Gerawan's rights in the Harvest Tote products, and in excluding Gerawan's witnesses to support its passing off theory of unfair competition?

4.      Did the trial court err in *sua sponte* limiting Gerawan's state law claim under Cal. Bus. & Prof. Code §17200 to exclude any cause of action premised upon Rehrig's false marking the second generation Harvest Tote?

**STATEMENT OF THE CASE**

Although Gerawan sued Rehrig for eight claims under federal and state law, the trial court impermissibly paired down Gerawan's case to a single narrow claim for common law unfair competition limited to a "passing off" theory and a claim for statutory unfair competition under Cal. Bus. Prof. Code §17200 ("Section 17200"). The trial court did this by (a) dismissing claims with prejudice and without leave to amend, (b) ignoring notice pleading requirements under the FRCP and case law; (c) restrictive briefing of 8 and then 5 pages on dispositive motions; (d) requiring such important briefing in as little as 24 to 48 hours; and (e) forcing in effect multiple summary judgment motions six weeks before trial without providing Gerawan the procedural protections of FRCP 56. In short, the trial court left Gerawan with narrow unfair competition claims that would potentially not allow it to stop the offending activity of Rehrig or compensate Gerawan for the harm caused by Rehrig's conduct.

Gerawan sued Rehrig in July 2011 for, among other things, unfair competition under the Lanham Act, correction of patent inventorship, false promise under California common law, unfair competition under California common law, and violation of Section 17200. (A150-160.) Rehrig filed a motion to dismiss Gerawan's claims for failure to state a claim. The trial court denied Rehrig's motion to dismiss Gerawan's claims for correction of inventorship. (A5,

20.)  The trial court also dismissed with leave to amend Gerawan's claims alleging false promise, common law unfair competition, and violation of Section 17200, and various state law claims not at issue in this appeal.  ( A20.)

However, on Rehrig's motion to dismiss, the trial court dismissed *without* leave to amend Gerawan's claim for unfair competition under the Lanham Act. (A5-6, 20.)  This ruling was error.  The Lanham Act and common law unfair competition have significant overlap and both encompass "passing off" conduct. Because the trial court found that there were sufficient facts to support[1] Gerawan's common law unfair competition claim under a "passing off" theory, the trial court should also have found Gerawan had a viable claim for unfair competition under the Lanham Act.  Furthermore, the trial court absolutely should not have dismissed Gerawan's Lanham Act claim *without* leave to amend, because there were facts to support a cause of action under the Lanham Act, and any alleged defects with Gerawan's pleading of its Lanham Act claim could have easily been cured. Gerawan was denied the right to do so.

Later in the case, Rehrig brought a motion for summary judgment on Gerawan's claims for patent inventorship, false promise, and violation of Section 17200.  (A26, 35, 37.)  Rehrig did not seek summary judgment on Gerawan's common law unfair competition claim – despite expressly acknowledging this

---

[1]     *See* A369-370 (finding facts sufficient to state a claim for passing off).

claim in its Answer.  (*See*  A37 ("[Rehrig] does not acknowledge the common law component of [Gerawan's] claim."), A220 ("Rehrig admits that this action purports to be brought under … the statutory and common law of unfair competition[.]") The trial court granted Rehrig's motion for summary judgment on Gerawan's patent inventorship and false promise claims.  (*See* A41.)  However, the trial court denied summary judgment on Gerawan's claim under Section 17200.  (*See* A41-42.)

Although Rehrig's motion for summary judgment did not address Gerawan's common law unfair competition claim, Rehrig argued in the final pre-trial statement that Gerawan's common law unfair competition claim was nothing more than a claim for "passing off," which the trial court had purportedly dismissed when it dismissed Gerawan's Lanham Act claim.  (A268.)  Rehrig's argument was unfounded.  Indeed, after the trial court had dismissed Gerawan's Lanham Act claim, Rehrig expressly acknowledged that Gerawan's amended complaint included claims for common law unfair competition.  Rehrig would not have acknowledged the common law unfair competition claim in its Answer if it had in fact believed the claim had been previously dismissed.

Nevertheless, following the final pre-trial conference and on the eve of trial, the trial court *sua sponte* requested expedited briefing of no more than 8 pages as to why it should not dismiss Gerawan's common law unfair competition claims on

the same grounds that it used to dismiss Gerawan's prior Lanham Act claim, or

dismiss the common law claim as superseded by California's trade secret law.

(*See* A348-349 ("Plaintiff presented allegations of passing off in connection with

its Lanham Act claim, and the Court dismissed that claim with prejudice in

connection with Defendant's motion to dismiss … [w]hether Plaintiff's common

law claim for unfair competition is premised on a theory of 'passing off' or

misappropriation, it appears that it should be dismissed.").)  Thus, the trial court

itself acknowledged that Gerawan's unfair competition claim was premised on

both a passing off theory <u>and on a misappropriation theory</u>.  Yet the trial court

would not allow Gerawan to proceed to trial on its misappropriation common law

unfair competition theory.

Gerawan responded to the trial court's request for briefing by pointing out

that the trial court had dismissed Gerawan's Lanham Act claim on the erroneous

assumption that the Lanham Act claim was limited to a cause of action for "reverse

passing off."  (*See* A351-352.)  It was not so limited, as Gerawan established in the

briefing despite being severely restricted by the trial court in length and time to

submit.  Gerawan further pointed out to the trial court that Gerawan's common law

unfair competition claim included not only a claim based upon "passing off," but

also included claims that Rehrig had misappropriated physical property in which

Gerawan held an ownership interest.  (A352-353.)  These theories were supported

by the factual allegations of the First Amended Complaint, which were incorporated into each claim.  (A192 at ¶35.)

The trial court then requested additional expedited briefing limited to 5 pages to be submitted within 2 days (A360) on Gerawan's claims, and stated that "[o]f particular interest to the Court is Defendant's argument that summary judgment is appropriate on Plaintiff's common law claim for unfair competition because there is no evidence of consumer confusion."  (A360.)  The severely restricted page limitation and time restriction effectively eliminated the protections afforded to Gerawan under FRCP 56.  The briefing was effectively determining whether summary judgment should be entered against Gerawan on its remaining claims without the benefits of fully developed briefing, evidentiary protections, or a reply.  Gerawan had to limit such important briefing to 5 pages, submitted within 48 hours.  Nevertheless, Gerawan provided the trial court with evidence of likelihood of consumer confusion, and the trial court found that there was sufficient evidence for a jury to determine a likelihood of consumer confusion.  (*See* A369 ("Plaintiff does appear to have evidence that could lead a trier of fact to conclude that there was a likelihood of consumer confusion as to Plaintiff's affiliation with the second generation Harvest Tote.").)[2]

---

[2]    Later the trial court excluded the majority of evidence of confusion and association evidence on the ground that it was not introduced soon enough.  (A459.)

In preparation for trial, the parties submitted, *inter alia*, motions *in limine* and jury instructions. Among Rehrig's motions *in limine* was a request to preclude any reference to agreements between the parties to co-own patents. (*See* A54.) The trial court granted in-part and denied in-part this motion. (*See id.*) However, in *dicta*, the trial court stated in a single line "the claim to be decided by the jury is whether Defendant engaged in 'passing off' by selling the second generation Harvest Tote without Plaintiff's authorization." (*Id.*). This statement occurred three weeks before trial. Also, in *dicta*, the trial court stated that Gerawan's unfair business practices claim under Section 17200 did not include unlawful conduct such as Rehrig's false patent marking of Harvest Tote products. (*See* A53 ("[A]llegations of false marking[3] cannot form the basis of liability for any of the claims remaining in this case.").)

Shortly before trial, the parties filed proposed jury instructions. Gerawan's jury instruction on common law unfair competition cited several well-recognized Ninth Circuit and California cases supporting theories of common law unfair competition premised upon "passing off" <u>and</u> "<u>misappropriation</u>" causes of action. (*See* A435-439.) Rehrig's jury instructions included several instructions for

---

[3]     There was unequivocal evidence of false marking presented to the trial court (A5029, 5106), namely Rehrig sold and continues to sell the Harvest Tote with the phrase "Patent Pending," even though Rehrig conceded that it never even filed any patent applications for the Harvest Tote.

## STATEMENT OF RELATED CASES

This case was previously before the Court of Appeals for the Ninth Circuit under the same or similar title and was transferred to this Court pursuant to 28 U.S.C. § 1631.

## STATEMENT OF JURISDICTION

The trial court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 based on Gerawan's claims under 15 U.S.C. § 1125(a) and 35 U.S.C. § 256, and had supplemental jurisdiction under 28 U.S.C. § 1367 over Gerawan's state law claims.

Final judgment in Defendant-Appellee Rehrig Pacific Company's ("Rehrig") favor was entered on June 4, 2013. Gerawan filed an Amended Notice of Appeal on June 5, 2013 to the Ninth Circuit. (A463-464.)

Following post-trial briefing related to Rehrig's motion for attorney's fees, the trial court entered an "Amended Judgment" on January 21, 2014. (A97.) Gerawan filed a Notice of Appeal to this amended judgment with this Court on February 10, 2014. (A475-476.)

This Court has jurisdiction over these appeals under 28 U.S.C. § 1291 and the notices of appeal are timely pursuant to FRAP 4(a)(3).

## STATEMENT OF THE ISSUES PRESENTED ON APPEAL

Gerawan submits the following issues for review:

1.     Did the trial court err in dismissing Gerawan's claim under 15 U.S.C. § 1125(a), and without providing Gerawan leave to amend the claim?

2.     Did the trial court err when it granted summary judgment on Gerawan's correction of inventorship claim of U.S. Patent No. 5,415,293 (the "'293 Patent")?

3.     Did the trial court err in *sua sponte* limiting Gerawan's state law common law unfair competition claim to exclude any cause of action premised upon Rehrig's misappropriation of Gerawan's rights in the Harvest Tote products, and in excluding Gerawan's witnesses to support its passing off theory of unfair competition?

4.     Did the trial court err in *sua sponte* limiting Gerawan's state law claim under Cal. Bus. & Prof. Code §17200 to exclude any cause of action premised upon Rehrig's false marking the second generation Harvest Tote?

## STATEMENT OF THE CASE

Although Gerawan sued Rehrig for eight claims under federal and state law, the trial court impermissibly paired down Gerawan's case to a single narrow claim for common law unfair competition limited to a "passing off" theory and a claim for statutory unfair competition under Cal. Bus. Prof. Code §17200 ("Section 17200"). The trial court did this by (a) dismissing claims with prejudice and without leave to amend, (b) ignoring notice pleading requirements under the FRCP and case law; (c) restrictive briefing of 8 and then 5 pages on dispositive motions; (d) requiring such important briefing in as little as 24 to 48 hours; and (e) forcing in effect multiple summary judgment motions six weeks before trial without providing Gerawan the procedural protections of FRCP 56. In short, the trial court left Gerawan with narrow unfair competition claims that would potentially not allow it to stop the offending activity of Rehrig or compensate Gerawan for the harm caused by Rehrig's conduct.

Gerawan sued Rehrig in July 2011 for, among other things, unfair competition under the Lanham Act, correction of patent inventorship, false promise under California common law, unfair competition under California common law, and violation of Section 17200. (A150-160.) Rehrig filed a motion to dismiss Gerawan's claims for failure to state a claim. The trial court denied Rehrig's motion to dismiss Gerawan's claims for correction of inventorship. (A5,

20.)  The trial court also dismissed with leave to amend Gerawan's claims alleging

false promise, common law unfair competition, and violation of Section 17200,

and various state law claims not at issue in this appeal.  ( A20.)

However, on Rehrig's motion to dismiss, the trial court dismissed *without*

leave to amend Gerawan's claim for unfair competition under the Lanham Act.

(A5-6, 20.)  This ruling was error.  The Lanham Act and common law unfair

competition have significant overlap and both encompass "passing off" conduct.

Because the trial court found that there were sufficient facts to support[1] Gerawan's

common law unfair competition claim under a "passing off" theory, the trial court

should also have found Gerawan had a viable claim for unfair competition under

the Lanham Act.  Furthermore, the trial court absolutely should not have dismissed

Gerawan's Lanham Act claim *without* leave to amend, because there were facts to

support a cause of action under the Lanham Act, and any alleged defects with

Gerawan's pleading of its Lanham Act claim could have easily been cured.

Gerawan was denied the right to do so.

Later in the case, Rehrig brought a motion for summary judgment on

Gerawan's claims for patent inventorship, false promise, and violation of Section

17200.  (A26, 35, 37.)  Rehrig did not seek summary judgment on Gerawan's

common law unfair competition claim – despite expressly acknowledging this

---

[1]    *See* A369-370 (finding facts sufficient to state a claim for passing off).

claim in its Answer. (*See* A37 ("[Rehrig] does not acknowledge the common law component of [Gerawan's] claim."), A220 ("Rehrig admits that this action purports to be brought under … the statutory and common law of unfair competition[.]") The trial court granted Rehrig's motion for summary judgment on Gerawan's patent inventorship and false promise claims. (*See* A41.) However, the trial court denied summary judgment on Gerawan's claim under Section 17200. (*See* A41-42.)

Although Rehrig's motion for summary judgment did not address Gerawan's common law unfair competition claim, Rehrig argued in the final pre-trial statement that Gerawan's common law unfair competition claim was nothing more than a claim for "passing off," which the trial court had purportedly dismissed when it dismissed Gerawan's Lanham Act claim. (A268.) Rehrig's argument was unfounded. Indeed, after the trial court had dismissed Gerawan's Lanham Act claim, Rehrig expressly acknowledged that Gerawan's amended complaint included claims for common law unfair competition. Rehrig would not have acknowledged the common law unfair competition claim in its Answer if it had in fact believed the claim had been previously dismissed.

Nevertheless, following the final pre-trial conference and on the eve of trial, the trial court *sua sponte* requested expedited briefing of no more than 8 pages as to why it should not dismiss Gerawan's common law unfair competition claims on

the same grounds that it used to dismiss Gerawan's prior Lanham Act claim, or

dismiss the common law claim as superseded by California's trade secret law.

(*See* A348-349 ("Plaintiff presented allegations of passing off in connection with

its Lanham Act claim, and the Court dismissed that claim with prejudice in

connection with Defendant's motion to dismiss … [w]hether Plaintiff's common

law claim for unfair competition is premised on a theory of 'passing off' or

misappropriation, it appears that it should be dismissed.").) Thus, the trial court

itself acknowledged that Gerawan's unfair competition claim was premised on

both a passing off theory <u>and</u> <u>on</u> <u>a</u> <u>misappropriation</u> <u>theory</u>. Yet the trial court

would not allow Gerawan to proceed to trial on its misappropriation common law

unfair competition theory.

Gerawan responded to the trial court's request for briefing by pointing out

that the trial court had dismissed Gerawan's Lanham Act claim on the erroneous

assumption that the Lanham Act claim was limited to a cause of action for "reverse

passing off." (*See* A351-352.) It was not so limited, as Gerawan established in the

briefing despite being severely restricted by the trial court in length and time to

submit. Gerawan further pointed out to the trial court that Gerawan's common law

unfair competition claim included not only a claim based upon "passing off," but

also included claims that Rehrig had misappropriated physical property in which

Gerawan held an ownership interest. (A352-353.) These theories were supported

by the factual allegations of the First Amended Complaint, which were incorporated into each claim. (A192 at ¶35.)

The trial court then requested additional expedited briefing limited to 5 pages to be submitted within 2 days (A360) on Gerawan's claims, and stated that "[o]f particular interest to the Court is Defendant's argument that summary judgment is appropriate on Plaintiff's common law claim for unfair competition because there is no evidence of consumer confusion." (A360.) The severely restricted page limitation and time restriction effectively eliminated the protections afforded to Gerawan under FRCP 56. The briefing was effectively determining whether summary judgment should be entered against Gerawan on its remaining claims without the benefits of fully developed briefing, evidentiary protections, or a reply. Gerawan had to limit such important briefing to 5 pages, submitted within 48 hours. Nevertheless, Gerawan provided the trial court with evidence of likelihood of consumer confusion, and the trial court found that there was sufficient evidence for a jury to determine a likelihood of consumer confusion. (*See* A369 ("Plaintiff does appear to have evidence that could lead a trier of fact to conclude that there was a likelihood of consumer confusion as to Plaintiff's affiliation with the second generation Harvest Tote.").)[2]

---

[2]    Later the trial court excluded the majority of evidence of confusion and association evidence on the ground that it was not introduced soon enough. (A459.)

In preparation for trial, the parties submitted, *inter alia*, motions *in limine* and jury instructions. Among Rehrig's motions *in limine* was a request to preclude any reference to agreements between the parties to co-own patents. (*See* A54.) The trial court granted in-part and denied in-part this motion. (*See id.*) However, in *dicta*, the trial court stated in a single line "the claim to be decided by the jury is whether Defendant engaged in 'passing off' by selling the second generation Harvest Tote without Plaintiff's authorization." (*Id.*). This statement occurred three weeks before trial. Also, in *dicta*, the trial court stated that Gerawan's unfair business practices claim under Section 17200 did not include unlawful conduct such as Rehrig's false patent marking of Harvest Tote products. (*See* A53 ("[A]llegations of false marking[3] cannot form the basis of liability for any of the claims remaining in this case.").)

Shortly before trial, the parties filed proposed jury instructions. Gerawan's jury instruction on common law unfair competition cited several well-recognized Ninth Circuit and California cases supporting theories of common law unfair competition premised upon "passing off" _and_ "_misappropriation_" causes of action. (*See* A435-439.) Rehrig's jury instructions included several instructions for

---

[3] There was unequivocal evidence of false marking presented to the trial court (A5029, 5106), namely Rehrig sold and continues to sell the Harvest Tote with the phrase "Patent Pending," even though Rehrig conceded that it never even filed any patent applications for the Harvest Tote.

affirmative defenses which Rehrig had <u>never</u> pled that were relevant to a cause of

action for passing off. (*Compare* A428-429 *with* A224-225.) Those new defenses,

never previously pled or mentioned by Rehrig, were classic fair use, abandonment,

and nominative fair use. (ER A428-429.) Thus, when Rehrig answered and

acknowledged that Gerawan had pled a claim for common law unfair competition,

it must have understood that claim was being brought under a theory different from

"passing off" – *e.g.*, misappropriation. Given Rehrig's answer, the trial court's

later ruling that a misappropriation theory had not been pled was contrary to the

record and erroneous.

After reviewing the jury instructions, the day before trial at 11:32 a.m., the

trial court *sua sponte* issued an order limiting Gerawan's common law unfair

competition claim to a theory of "passing off" and barring Gerawan from

presenting a cause of action based upon elements set forth in controlling Ninth

Circuit case law that reflect a "misappropriation" theory of unfair competition.

(*See* A60-61.) The trial court based its limitation on the unsupported position that

Gerawan never pled a misappropriation theory of common law unfair competition,

even though all allegations of misappropriated of the Harvest Tote by Rehrig were

incorporated into <u>each</u> claim. The trial court further instructed Gerawan to

consider whether it wished to continue to trial on such a limited claim or to

stipulate to judgment and immediately seek appellate review of the trial court's

order.  (A61.)  The trial court required a response from Gerawan by 3 p.m. that day -- Gerawan had about three hours to make this decision.  (*Id.*)

Gerawan had evidence to prove a passing off theory of common law unfair competition.  As the trial court noted, "Plaintiff does appear to have evidence that could lead a trier of fact to conclude that there was a likelihood of consumer confusion as to Plaintiff's affiliation with the second generation Harvest Tote." (*See* A369 lines 20-21.)  The trial court made this statement even though, the court later excluded Gerawan's evidence of actual confusion between Gerawan's Harvest Tote product and Rehrig's second generation Harvest Tote product and evidence of association of, or sponsorship by, Gerawan with the Harvest Tote products in the agricultural industry.  (A459.)

Before continuing to trial, an important issue that Gerawan faced was the scope of its remedy upon successfully prosecuting its claim.  Gerawan had specifically sought injunctive relief barring Rehrig from "[m]aking, selling, or distributing the Harvest Tote, the second generation Harvest Tote, or any other tote or product derived therefrom, without an accounting and payment of royalties due to Gerawan[.]"  (A381-382, 193-194.)  Such remedies were clearly available to Gerawan under a misappropriation theory of common law unfair competition.  *See, e.g., Ojala v. Bolin*, 178 Cal.App.2d 292, 301 (1960); *City Solutions, Inc. v. Clear Channel Communications, Inc.*, 365 F.3d 835, 842 (9th Cir. 2004).  But these

remedies may not have been available under solely a "passing off" theory. Under a passing off theory, Rehrig *might* be enjoined only from using the name Harvest Tote and still be free to <u>make</u> and <u>sell</u> the second generation Harvest Tote under a different name, or Rehrig *might* be enjoined from making the second generation Harvest Tote, but still be free to make a third generation tote. In either event, Gerawan would be forced to file a new suit to prevent Rehrig's misappropriation of its property – a suit that might be time-barred under the statute of limitations.

Under the circumstances, Gerawan saw little reason to incur the significant expense and expend the resources of the trial court and the parties by proceeding to a trial on an involuntarily narrowed claim where, even when victorious, Gerawan would not receive the important relief it sought and pled. Instead, Gerawan sought an immediate appeal.

Because the issues most prevalent in the case related to the California state law claims, Gerawan filed its initial appeal in the Ninth Circuit. After Gerawan filed its opening brief in the Ninth Circuit, Rehrig moved to dismiss the appeal because the case includes a claim for correction of inventorship. Accordingly, Gerawan filed a motion to transfer the appeal to this Court, which was unopposed.

## STATEMENT OF FACTS

Gerawan has been family owned and operated since 1938, and is the nation's largest grower of peaches, plums, and nectarines, and among the largest of table grapes. (A377.) Gerawan had a history of designing totes and bins to help it pick and process produce more efficiently. (*See* A5046-47.) Gerawan had facilities for testing the effectiveness of agricultural containers, and had a history of innovation and working with injection molders to create agricultural picking bins. (A5024-25, A5046-47.) In early 1993, Ray Gerawan of Gerawan conceived of a bin for picking stone fruit which came to be called the "Harvest Tote." No product on the market possessed all of the features of the Harvest Tote at this time. (*See* A5037, 5053, 5076.)

In 1993, Rehrig was a manufacturer of injection-molded plastic containers who was seeking to enter the agricultural market, particularly in the Central Valley region of California. (*See* A285, 5021.) At that time, Rehrig had only sold two agricultural products commercially – both products had only been sold in Southern California, and neither product was commercially successful. (*See* ER A5019, 5042.)

Having no meaningful experience in the agricultural industry, in June or early July 1993, Rehrig approached Gerawan for help in designing agricultural

produce containers. (A5045.) Rehrig originally sought input concerning a picking and shipping container for grapes. (A5045-46.) Gerawan had little interest at that time in Rehrig's grape container, but discussed with Rehrig its idea for a new bin for picking stone fruit (*i.e.*, the Harvest Tote). (A5037, 5045-46.) Gerawan met with Rehrig, and provided Rehrig with feedback on bins for picking and shipping grapes and discussed Gerawan's idea for a stone fruit picking bin. (A5037, 5046-48, 5053.) In particular, Gerawan provided Rehrig with information regarding the need and a method for ventilating and quickly cooling agricultural produce – particularly when placed on pallets. (A5048-49, 5053.)

At this time, Rehrig was a novice when it came to the needs of the agricultural industry. (A5049.) During discovery, Rehrig's witnesses admitted Rehrig's lack of experience in the agricultural industry. (A5042.) For example, Rehrig lacked any facilities for testing the cooling efficiency of its containers. (A5099, 5390.) In contrast, Gerawan had been in the agricultural industry for decades, had a history of designing agricultural tools, and ran cooling tests on picking bins on a regular basis. (A5053.)

Gerawan's relationship with Rehrig was not limited to a couple of meetings. Rehrig employees met with Gerawan at least 50 times over the course of almost a year. (A5023, 5042.) During this process, Rehrig signed a Confidentiality Agreement under which it agreed that it would not use the information that

-13-

Gerawan provided it without Gerawan's authorization, and that any modifications, improvements or inventions based upon the Harvest Tote design belonged to Gerawan (the "Confidentiality Agreement"). (A5041, 5430-31.)

The partnership between Gerawan and Rehrig led to the development and commercialization of a stone fruit picking bin. (A5022-23.) Gerawan coined the name "Harvest Tote" for this bin, and the name was used with Gerawan's permission and approval. The parties negotiated a distribution agreement for the Harvest Tote. Under this agreement, Rehrig essentially acted as Gerawan's agent for sales of the Harvest Tote. Gerawan paid for the costs of creating the mold and the prototypes for the Harvest Tote, (A5025-26), and owned the mold. (A5025.) Gerawan received all profits on sales of the Harvest Tote, less a 6% commission to Rehrig. (A5091-92, 5159.) Gerawan also bought the Harvest Tote and used it in its own operation. (A5083.) Rehrig earned profits two ways on the Harvest Tote: (1) on its sales price of the Harvest Tote to Gerawan and third parties, and (2) from the 6% commission Gerawan paid to Rehrig on third party sales. (A5159.)

Although the Harvest Totes sold to third parties were not marked with Gerawan's name, many growers in the agricultural industry were aware that Gerawan was behind the product.[4] (A5048.) Indeed, Rehrig used Gerawan's

---

[4]     Harvest Totes sold to Gerawan prominently featured Gerawan's name, and Gerawan was also a significant, if not the largest, customer of the Harvest Tote, having purchased thousands of units. (*Id.* Ex. 377, A5055.)

reputation to promote the Harvest Tote, and Gerawan gave multiple sales leads to Rehrig, providing Rehrig with customers that it never had before.

The Harvest Tote was a very successful product. For many years Rehrig and Gerawan worked together promoting and selling the Harvest Tote. However, in 2003, Rehrig decided that it could make far more money if it cut Gerawan out of the partnership. (A5159-61.) An internal Rehrig memo explicitly identified the benefits of developing a second generation Harvest Tote and cutting Gerawan out of any of the profits. (*Id.*) Similarly, internal Rehrig communications stated that by selling a second generation Harvest Tote (without Gerawan), Rehrig could "print money".

Shortly after this memo issued, Rehrig began telling Gerawan that there were problems with the mold for the Harvest Tote, and that market interest in the Harvest Tote was diminishing. (A5064-66.) Gerawan contacted Rehrig and expressed its interest in designing a second generation Harvest Tote. (A5140-41.) Rehrig put off Gerawan's inquiries, and secretly began designing a second generation Harvest Tote without disclosing this fact to, or involving, Gerawan. Rehrig used the existing Harvest Tote as the base model and made slight modifications and "improvements" to the Harvest Tote design. (*See* A5100, 5102-03.) Rehrig kept almost all of the specialized features provided by Gerawan – for example, the ventilation was intentionally kept identical. (A5100, 5103.) The

design was also specifically made to be "stackable" with the original Harvest Tote. The Confidentiality Agreement between the parties expressly forbade Rehrig from doing this without Gerawan's authorization and assigned future Harvest Tote models (*e.g.,* the second generation Harvest Tote) to Gerawan. (A5430-31.)

Rehrig sought market feedback from agricultural growers for this second generation Harvest Tote. Tellingly, Rehrig did not seek any feedback from Gerawan – one of the largest growers in the nation and its erstwhile business partner. (A5083, 5101.) When Rehrig was ready to launch the second generation Harvest Tote, it directly contacted existing customers of the Harvest Tote (except for Gerawan) and offered a two-for-one trade-in special if the customers turned in their existing Harvest Totes. (*See* A5152-53.) Thus, Rehrig sought to clear the market and supplant the Harvest Tote with the second generation Harvest Tote, using the customers that Gerawan gave to Rehrig to do so. The Harvest Tote, a name coined by Gerawan, also had name recognition. To take advantage of this recognition, Rehrig referred to and marketed the second generation Harvest Tote as the "Harvest Tote," and still does. (A5087-88.)

Rehrig never showed the second generation Harvest Tote to Gerawan, but instead led Gerawan to believe that the market had lost interest in the Harvest Tote. Rehrig then ceased making payments to Gerawan for sales of any Harvest Tote.

Some years later, Ray Gerawan saw a picking bin in the field on another farm, which he later learned was the second generation Harvest Tote made by Rehrig. (A188-189.) Mr. Gerawan was not able to examine the picking bin and did not realize that the bin had been manufactured by Rehrig at that time. It was not until 2008 that Gerawan discovered Rehrig had introduced a second generation Harvest Tote without Gerawan and in contravention of the Confidentiality Agreement. (A189.)

After Gerawan discovered Rehrig's unilateral manufacture and sale of the second generation Harvest Tote, it investigated and filed this suit. Rehrig's unauthorized sale of the second generation Harvest Tote constitutes unfair competition under the Lanham Act and California common law, and violates Section 17200.

During its pre-filing investigation, Gerawan also learned through its intellectual property counsel that Rehrig had received a patent for a grape picking and shipping container, which it called a grape lug – the '293 Patent. (A98.) Grape lugs were one of the products that Gerawan had discussed with Rehrig in 1993. Rehrig's application for this patent was filed shortly after Rehrig and Gerawan first met to discuss agricultural containers. (A98.) Surprisingly, the claims of the issued patent were not limited to how the grape lug was constructed (as would be expected with a plastic injection molder such as Rehrig). The issued

patent also included language in its claims reaching beyond the structural architecture to claim efficient ventilation and cooling of agricultural produce. (A116-117.)

This was exactly the information that Ray Gerawan had provided to Rehrig. (A5049, 5053.) Gerawan recalled how little Rehrig understood of agricultural products in 1993, and realized that the claim language regarding ventilation and cooling came from Rehrig's discussions with Ray Gerawan. Because of this claim language, Gerawan filed a claim seeking declaratory judgment that Ray Gerawan was an unnamed inventor on the patent that had issued. Furthermore, the Harvest Tote products are marked "Patent Pending." The parties had agreed on patenting the Harvest Tote and sharing rights in the patent. However, during discovery Gerawan learned that Rehrig had never filed a patent on the Harvest Tote and had only stamped the Tote "Patent Pending" to discourage competition. Gerawan filed a motion to amend its complaint to specifically add Rehrig's false marking activities to support its unfair competition claims and a federal claim for false marking under 35 U.S.C. § 292. The trial court denied the motion on the grounds that it should have been filed sooner even though it was timely filed. (A258, 261-262.)

## SUMMARY OF THE ARGUMENT

Gerawan filed suit alleging unfair competition under California's common law and under the Lanham Act. These claims for relief are closely related and, when brought under a "passing off" theory, are sometimes referred to as nearly synonymous. *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1263 (1994). The trial court granted Gerawan leave to amend its claim for common law unfair competition (*see* ER 105, A20), and later found that there was sufficient evidence of consumer confusion to support a jury trial on the issue of common law unfair competition under a "passing off" theory. (*See* A369). Paradoxically, the trial court found that Gerawan could not state a claim for unfair competition under the Lanham Act, found that Gerawan's Lanham Act claim could not be cured by amendment, and dismissed the Lanham Act claim with prejudice. (A7, 20.) This dismissal was improper.

A complaint should not be dismissed without leave to amend unless there is no set of facts the plaintiff could plead to cure the alleged defect in the cause of action. *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n.6 (9th Cir. 2002). Under a "passing off" theory of unfair competition, claims under the Lanham Act and under California's common law are nearly synonymous. *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1263 (1994). Thus, the trial court's finding that

Gerawan possessed sufficient facts to demonstrate "passing off" under California common law cannot be reconciled with its ruling that Gerawan could not state any facts sufficient to state a claim under the Lanham Act.  Because Gerawan possessed sufficient facts to state a claim for "passing off" under California's common law – and in particular had facts from which it could prove a likelihood of, and actual, confusion – the trial court erred when it dismissed Gerawan's Lanham Act claim without leave to amend.  The trial court's dismissal with prejudice should be reversed.

The trial court also erroneously granted summary judgment on Gerawan's claim for correction of inventorship.  Inventorship is a fact intensive inquiry.  *See Fina Oil & Chemical Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997).  The issue revolves around the individual contributions of the named and unnamed inventors to the claims of a patent.  *See Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).

Gerawan provided the trial court with admissible evidence that before the filing of the application that led to issuance of the '293 Patent, Ray Gerawan had met with Cory Phillips, a Rehrig employee.  During those meetings, Mr. Gerawan provided Mr. Phillips with information regarding ventilation and cooling for agricultural containers.  When Mr. Gerawan and Mr. Phillips met, Rehrig as a company had very little experience in the agricultural community.  After the

meeting, Rehrig filed its application with at least two independent claims including language related to ventilation and cooling. Also, after the meeting, Rehrig added Mr. Phillips (a Rehrig sales and marketing person) as a named inventor of the '293 Patent. When deposed, Mr. Phillips could not articulate what he contributed to the invention identified in the '293 Patent. (A5030.)

Mr. Gerawan's testimony was corroborated by the testimony of independent third-party witness David Dever, the former manager of Gerawan. Mr. Dever was present at the early meetings between Gerawan and Rehrig and had taken detailed notes during those meetings. (A5046.) Mr. Dever, who is now the CEO of a competitor to Gerawan, provided detailed testimony describing Ray Gerawan's discussions with Rehrig regarding agricultural products. (A5048-49, 5053.) Mr. Dever's testimony was unrebutted.

The trial court improperly discounted Mr. Gerawan's and Mr. Dever's testimony. However, as a matter of law, Mr. Dever's testimony is sufficient to corroborate Mr. Gerawan's claim for correction of inventorship. *See Ethicon*, 135 F.3d at 1461. Moreover, because Mr. Dever's testimony was unrebutted, the jury was entitled to hear that testimony and determine inventorship.

The trial court found that testimony from Mr. Gerawan and Mr. Dever could not overcome a sketch showing a single embodiment of the invention claimed in the '293 Patent. (A31-32.) This ruling shows a misreading of the law on patent

inventorship. Inventorship examines the <u>scope</u> of the patent claims. The claims of the '293 Patent are far broader than the <u>embodiment</u> shown in the drawing relied upon by the trial court. *See Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004). Because the claim language is not limited to the scope of the drawing relied upon by the trial court, the jury is entitled to weigh the testimony of Mr. Gerawan and Mr. Dever, and determine whether the claim language was written broadly to encompass concepts Mr. Gerawan provided to Cory Phillips. Thus, the trial court's grant of summary judgment should be reversed.

On the eve of trial, the trial court *sua sponte* limited Gerawan's common law unfair competition claim to a "passing off" theory. (A61.) In effect, the trial court granted summary adjudication on all theories of unfair competition other than "passing off," even though Rehrig never moved for summary judgment on Gerawan's common law unfair competition claim, and even though there were facts to support all theories of unfair competition and all theories had been pled. The trial court granted summary adjudication on these claims without the procedural protections of FRCP 56, *e.g.,* briefing on dispositive issues limited to 5 pages and required to be filed within 48 hours. This was improper and constituted reversible error.

Common law unfair competition is broader than only "passing off" and also includes claims under a "misappropriation" theory. *See, e.g., City Solutions Inc. v. Clear Channel Communications, Inc.*, 365 F.3d 835, 842 (9th Cir. 2004); *Ojala v. Bolin*, 178 Cal.App.2d 292, 297-98 (1960). The trial court acknowledged as much when it requested briefing on Gerawan's unfair competition claim as to whether a claim under a passing off theory had been dismissed at the pleading stage, and whether a claim under a misappropriation theory were superseded by the Uniform Trade Secrets Act. (A348.) Nevertheless, the trial court found that Gerawan had failed to plead and provide notice to Rehrig of a misappropriation theory of unfair competition. (*See* A60.) This was error.

Gerawan's complaint set forth facts that were more than sufficient for notice pleading of a claim for common law unfair competition under a misappropriation theory. (*See* A186-190.) The first amended complaint specifically states that Rehrig developed and sold the Second Generation Harvest Tote based upon Gerawan's Harvest Tote design without authorization from Gerawan. (A192.) Furthermore, Gerawan's claim incorporated the following facts by reference:

- Gerawan invested time and resources in creating the Harvest Tote, paid for the mold, and owned the mold;

- Rehrig manufactured the Harvest Tote to Gerawan's specifications;

- Rehrig manufactured a second generation Harvest Tote without Gerawan's authorization;

- The second generation Harvest Totes are very similar to the original Harvest Tote and appear to be a derivation of the original Harvest Tote;

- Gerawan has suffered harm as a result of Rehrig's conduct.

(*See* A185-192.) These facts provide a more than adequate foundation to allege a misappropriation theory of unfair competition under *City Solutions Inc. v. Clear Channel Communications, Inc.* *See* 365 F.3d at 842

Additional facts were set forth and developed in more detail in later pleadings. Indeed, Gerawan explicitly informed the trial court and Rehrig that its unfair competition claim was "not limited to passing off" and "is premised upon Rehrig's use and unauthorized sale of tangible property in which [Gerawan] bears a direct ownership interest[.]" (A362.) Nevertheless, the trial court found that Gerawan's unfair competition claim was limited to passing off, and dismissed all claims asserting a misappropriation theory. (A61.) California's common law permits claims for unfair competition asserting a misappropriation theory, and the pleadings in the case provided Rehrig (and the trial court) with facts sufficient to state a claim for misappropriation and sufficient to give notice thereof to Rehrig.

Therefore, the trial court's *sua sponte* limitation on Gerawan's common law unfair competition claim should be reversed.

## ARGUMENT

## I.     STANDARD OF REVIEW

Gerawan appeals from the district court's dismissal without leave to amend of Gerawan's cause of action for violation of the Lanham Act.  Dismissal under Rule 12(b)(6) is reviewed under the law of the regional circuit.  *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338 (Fed. Cir. 2013) (citing *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 403 F.3d 1050, 1055 (9th Cir. 2005)).  The Ninth Circuit reviews dismissal of a complaint without leave to amend under a *de novo* standard.  *Big Bear Lodging Association v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir. 1999).  "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by amendment."  *Snell*, 316 F.3d at 828 n.6.

Gerawan also appeals from the district court's grant of summary judgment on Gerawan's claim for correction of inventorship.  This Court "review[s] *de novo* the district court's grant of summary judgment, drawing all reasonable inferences in favor of the nonmovant."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Finally, Gerawan appeals from the district court's *sua sponte* grant of summary judgment on Gerawan's common law unfair competition claim. Again, federal courts "review *de novo* the district court's grant of summary judgment, drawing all reasonable inferences in favor of the nonmovant." *Id.*

## II. THE TRIAL COURT IMPROPERLY DISMISSED GERAWAN'S LANHAM ACT CLAIM WITHOUT LEAVE TO AMEND

The trial court improperly dismissed without leave to amend. To the extent dismissal was permissible, that dismissal should have been with leave to amend so that Gerawan could plead additional facts to support its Lanham Act claim. The Lanham Act encompasses "passing off" conduct. The trial court later found that Gerawan had in presented sufficient evidence to bring, and try, a claim for "passing off" under California's common law of unfair competition. (*See* A369-370.) Because there were sufficient facts to bring a claim for common law unfair competition, there were also sufficient facts for Gerawan to a claim for unfair competition under the Lanham Act. Accordingly, the trial court's dismissal without leave to amend was error.

This Court reviews dismissal of a complaint without leave to amend under a *de novo* standard. *Big Bear Lodging Association v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir. 1999). "Dismissal without leave to amend is improper unless

-26-

it is clear, upon *de novo* review, that the complaint could not be saved by amendment." *Snell*, 316 F.3d at 828 n.6. This Court has "repeatedly held that a trial court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by allegations of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotes omitted). Here, the trial court improperly dismissed Gerawan's Lanham Act claim without leave to amend, and should be reversed.

The trial court characterized Gerawan's Lanham Act claim as limited to a claim for "reverse passing off" and on those grounds dismissed the claim with prejudice. (*See* A7.) But neither the Lanham Act, nor Gerawan's claim, is limited to "reverse passing off." Thus, the trial court improperly limited both the scope of the Lanham Act and the scope of Gerawan's claims, and should be reversed.

The Lanham Act is not limited to claims for reverse passing off. Reverse passing off occurs when a party takes another's product, removes the trademark or name identifying the origin of the product, and sells the product under the party's own name. *See Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988). The Lanham Act prohibits conduct far broader than this. Section 43(a) of the Lanham Act imposes liability to a person who "is likely to cause confusion . . . as to the <u>affiliation</u>, <u>connection</u>, or <u>association</u> of such person with another person, or as to the <u>origin</u>, <u>sponsorship</u>, or <u>approval</u> of his or her goods, services, or

commercial activities by another person." 15 U.S.C. §1125 (emphasis added); *see also Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998) ("The Lanham Act covers trademark infringement as well as a host of other deceptive practices that might loosely be termed 'unfair competition.'")

Nor is the Lanham Act limited to "passing off." In *Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.*, 7 F.3d 1434, 1437 (9th Cir. 1993), the plaintiff asserted a Section 43(a) claim under the Lanham Act, and alleged that the products sold under the defendant's name were designed by, and manufactured for, the plaintiff. The Ninth Circuit upheld the plaintiff's claim, holding that the Lanham Act proscribes, in connection with goods, any false designation of origin "which is likely to cause confusion, or to cause mistake, or to deceive ... as to [their] origin." *Id*. at 1437, citing *Smith v. Montoro*, 648 F.2d 602, 604 (9th Cir. 1981). As that Court noted, the Lanham Act "has progressed far beyond the old concept of fraudulent passing off, to encompass any form of competition or selling which contravenes society's current concepts of 'fairness.'" *Summit Mach.*, at 1437 (emphasis added); *see also*, *e.g.*, *L & L White Metal Casting Corp. v. Joseph*, 387 F. Supp. 1349, 1356 (E.D.N.Y. 1975):

> The purpose of (section 43(a)) was to create a new federal cause of action for false representation of goods in commerce in order to protect persons engaged in commerce from, among other things, unfair competition, fraud and deception which had theretofore only been protected by the common law. While this section is broad enough to cover situations involving the common law 'palming off' of

the defendants' products by the use of the plaintiff's photographs, it is also comprehensive enough to include other forms of misrepresentation and unfair competition not involving 'palming off.'" (citations omitted).

Thus, while the Lanham Act imposes liability for conduct that constitutes "passing off" and "reverse passing off," any ruling limiting a Lanham Act claim to "reverse passing off" or "passing off" is an incorrect statement of the law and should be reversed.

The trial court not only misread the law, but also misread Gerawan's claim. Gerawan's Lanham Act claim was not couched as a "reverse passing off" claim, but included claims for "passing off" and other improper actions likely to cause confusion as to Gerawan's association with the second generation Harvest Tote, and included Rehrig's misappropriation of Gerawan's Harvest Tote (*see* A151-153, 157-156.) – with the modifications and alleged improvements Rehrig made to the design. Indeed, Gerawan did not posit its Lanham Act claim as one of reverse passing off. Rehrig did. Unfortunately, the trial court accepted Rehrig's mischaracterization and improperly dismissed Gerawan's Lanham Act claims without leave to amend as a result.

In addition to being legally improper, the trial court's decision was inherently inconsistent and contrary to the facts on the record. As the trial court itself noted, there may be considerable overlap between claims for common law unfair competition and claims for unfair competition under the Lanham Act. (*See*

A369.)  Both common law unfair competition and the Lanham Act impose liability

for "passing off" one's goods as those of another, or otherwise deceiving the public

as to the origin, source, association or affiliation of a party with one's goods.  *See*

*Bank of the West*, 2 Cal. 4th at 1263 (holding that "passing off" under common law

unfair competition is nearly synonymous with a claim under the Lanham Act.).

Yet, when the trial court dismissed Gerawan's Lanham Act claim without leave to

amend, it provided Gerawan leave to amend its claim for common law unfair

competition.  (*See* A20.)  Moreover, later the trial court explicitly found that

Gerawan had stated a claim and produced facts to support a claim for "passing off"

under California's common law of unfair competition.  (A369-370.)  It is difficult

to understand how the trial court could find that Gerawan had adequately pled its

common law unfair competition claim, and at the same time find that Gerawan

could not possibly state sufficient facts to support a claim for unfair competition

under the Lanham Act.  The only answer can be that the trial court accepted

Rehrig's mischaracterization of Gerawan's Lanham Act claim as limited to

"reverse passing off."

A complaint should not be dismissed without leave to amend unless it is

impossible for the plaintiff to allege facts in support of its claim.  *Lopez*, 203 F.3d

at 1130.  The touchstone for "passing off" claims under common law unfair

competition and under the Lanham Act is a likelihood of confusion.  *See*

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008);

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997);

*Bank of the West*, 2 Cal. 4th at 1263. Here, the trial court not only found that

Gerawan had adequately pled a common law unfair competition claim, but even

found that Gerawan had produced sufficient evidence to go to trial on a claim for

"passing off," and found that there was evidence to support a likelihood of

confusion as to Gerawan's association with the second generation Harvest Tote.

(A369.) These facts support not only a claim for common law unfair competition,

but also a claim for passing off under the Lanham Act.

The Lanham Act is clearly not limited to "reverse passing off." Gerawan

stated (and produced) facts sufficient to state a claim for passing off and sufficient

to show a likelihood of confusion. Thus, Gerawan could have cured any purported

flaws in pleading its Lanham Act claim. Accordingly, the trial court's dismissal

without leave to amend was improper and should be reversed.

## III.   THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT ON GERAWAN'S CORRECTION OF INVENTORSHIP CLAIM

Gerawan presented the trial court with admissible evidence showing that

Ray Gerawan contributed to a claimed element of the '293 Patent. This evidence

included not only testimony by Ray Gerawan, but also testimony by a third-party

from a competitor of Gerawan. The trial court found that this testimony was insufficient to overcome a Rehrig sketch showing a single embodiment of the '293 Patent. Thus, the trial court improperly weighed the evidence on summary judgment, contrary to the requirements of FRCP 56. Moreover, the trial court's ruling assumes the sketch shows the entire scope of the invention claimed in the '293 Patent, thus importing a limitation from the specification into the claims. Accordingly, the trial court's ruling was based upon legal error and should be vacated and remanded.

The trial court granted summary judgment on Gerawan's claim for correction of inventorship, finding that there were no facts from which could prove that Ray Gerawan was an unnamed inventor of the '293 Patent. (A35.) In particular, the trial court found that because Rehrig had prepared a sketch of its grape lug product that purportedly predated its discussions with Ray Gerawan, that Ray Gerawan could not be an unnamed inventor of the '293 Patent. (A31-32.) This was error and shows a fundamental misinterpretation of the law of inventorship. Specifically, the trial court confused the scope of the claim language with the limitations of a single embodiment shown in a single drawing.

A patented invention may be the work of one or more joint inventors. *See Ethicon*, 135 F.3d at 1460 (*citing* 35 U.S.C. §116). The issue of inventorship is a question of law that rests upon underlying facts. *See Fina Oil & Chemical*, 123

F.3d at 1473 n.5.  Determining co-inventorship is a fact specific inquiry, "and no bright-line standard will suffice in every case." *Id.* at 1473.  "[A] co-inventor need not make a contribution to every claim of a patent.  A contribution to one claim is enough." *Ethicon*, 135 F.3d at 1460 (internal citations omitted).  To be considered "a [co-inventor], an individual must make a contribution to the conception of the claimed invention that that is not insignificant in quality when that contribution is measured against the dimension of the full invention." *Fina Oil*, 123 F.3d at 1473. A joint invention is simply the result of collaboration between two or more persons working together. *Id.* (*citing Burroughs Welcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227 (Fed. Cir. 1994)).

Regardless of any structural sketches or patent drawings, all claims from the '293 Patent discuss ventilation, and independent claims 4 and 6 specifically claim "A stackable and nestable container for perishable food items requiring the circulation of a cooled air flow comprising…" and alignment of the containers such that "when a cooled air flow is directed towards said juxtaposed containers the majority of the cooled air flow is directed through said side wall apertures and over said perishable food items, and such that the cooled air flow lost between the juxtaposed containers is minimized." (A116-117.)  This claim language is much broader than an embodiment shown in a single drawing that was later included in the '293 Patent.

-33-

The key issue when determining inventorship of a patent is the language of the claims, and each individual's contribution to that language. *See Ethicon*, 135 F.3d at 1460. Determining the scope of claim language is a question of law. *Markman v. Westview Instruments*, 517 U.S. 370 (1996). Limiting the scope of claim language to a drawing from the specification is legally improper. *See Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ("[A] a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment."). Here, the claim language regarding ventilation is broad – much broader than a single drawing from the '293 Patent. Thus, the trial court's failure to recognize that the claims of the '293 Patent extend beyond the sketch Rehrig included in the '293 Patent specification was improper and should be reversed.

In addition to this legal error, the trial court found that Gerawan had failed to cite sufficient evidence from which a jury could reasonably determine that Ray Gerawan had contributed to the claims of the '293 Patent. (*See* A35.) This was incorrect. Gerawan presented deposition testimony from Ray Gerawan and third-party witness David Dever regarding Ray Gerawan's contribution to the claims of the '293 Patent. This testimony constituted admissible evidence showing that Ray Gerawan provided information related to the aspect of ventilation to Rehrig *before* Rehrig filed its application leading to the '293 Patent.

Proper ventilation to permit quick forced-air cooling of produce, and adequate means for hydrocooling, is particularly important for agricultural products. However, such cooling must be controlled to avoid overcooling. (A5001-5002.) Different types of produce are cooled differently. (A5078.) Rehrig lacked significant experience in designing and manufacturing agricultural products, and Rehrig lacked facilities to test whether its designs adequately cooled produce. (A5099, 5390.) In contrast, Gerawan had facilities for such cooling and conducted cooling tests "all the time." (A5053.)

The application leading to the '293 Patent was filed on August 30, 1993. (A98.) As early as late June 1993 or early July 1993, Ray Gerawan met with Rehrig representative, Cory Phillips. (A5045-46.) This meeting was to discuss Rehrig's design and manufacturing of potential agricultural containers. (*Id*.) Rehrig had previously tried to manufacture agricultural containers, but these had not sold well, had only limited distribution in the Los Angeles area, and were no longer being offered when Gerawan and Rehrig met. (A5019, 5042.)

During late June 1993 or early July 1993, Ray Gerawan met with Rehrig and reviewed preliminary designs that Rehrig had prepared for a crate focused on picking and transporting of grapes. (A5046-48.) At the same time, Mr. Gerawan also discussed with Rehrig the design for a picking bin for stone fruit. (A5046-48.) During this discussion, Mr. Gerawan provided Rehrig with specific input into

-35-

proper ventilation of agricultural products and specific input into how agricultural containers are stacked and palletized during the cooling process. (A5048-49, 5053, 5060.) Mr. Gerawan testified that during these discussions he provided Rehrig with information related to "venting, side venting, and bottom holes for hydrocooling." (A5060.) This information was specifically provided in the context of discussing a picking bin that was later named the Harvest Tote. However, the information was equally applicable to Rehrig's grape lug, and found its way into Rehrig's application for the '293 Patent, which was filed at the end of August 1993.

Mr. Dever, an un-biased third-party, was present during the meetings between Mr. Gerawan and Rehrig, and took detailed notes of those meetings. Mr. Dever, now the CEO of a competitor of Gerawan,[5] testified that Ray Gerawan specifically provided the following information to Rehrig about the grape crate that is covered by the '293 Patent:

- The lid design for the grape crate for adequate ventilation and stacking;
- The placement of venting holes for adequate ventilation;
- The design and structure of the corners for close juxtapositioning in field bins and on pallets; and
- The placement of holes in the floor for the hydrocooling.

(A5049-5053, 5076.)

---

[5]    Mr. Dever is the CEO of a *competitor* of Gerawan and, if anything, might be expected to have a slight bias *against* Gerawan. However, Ray Gerawan knew Mr. Dever to be a man of integrity and reasonably relied upon his testimony.

Mr. Dever further testified that Ray Gerawan provided Rehrig with information regarding venting and hydrocooling concepts during discussions related to the Harvest Tote product. (A5053.) Mr. Dever specifically identified Mr. Gerawan's contributions in reasonable detail and without hesitation. (A5049, 5053.) Mr. Dever's testimony is corroborated by his contemporaneous notes. Mr. Dever's testimony and notes corroborate the testimony of Mr. Gerawan and are sufficient to raise issues of fact as to Mr. Gerawan's inventive contribution. *See Ethicon*, 135 F.3d at 1461 ("[O]ral testimony of someone other than the alleged inventor may corroborate."); *see also Price v. Symsek*, 988 F.2d 1187, 1195-96 (Fed. Cir. 1993).

After meeting with Ray Gerawan in late June 1993 or early July 1993, Rehrig filed the application that issued as the '293 Patent. (A98.) That application included broad language covering ventilation in several claims of the '293 Patent. (A116-117.) Rehrig was a newcomer to agricultural containers and had contacted Gerawan to seek information about the design of agricultural containers and the features required for such containers. (A5046, 5053.) Furthermore, at the time the '293 Patent was filed, Rehrig lacked facilities to even conduct cooling and ventilation tests. (A5099, 5390.) In contrast, Gerawan conducted such tests on a regular basis. (A5053.) In short, Rehrig did not have the wherewithal to write the broad patent claims it did without information and know-how from Ray Gerawan.

Expert witness Dr. Vorst testified that it is very unlikely for an injection molder to have knowledge of agricultural ventilation properties and requirements. (A5078.)  Witnesses from both Rehrig and Gerawan testified that the Harvest Tote was innovative and unique when designed in 1993-94.  (A5037, 5053.)

Jeff Ackermann, a named inventor on the '293 Patent, acknowledged that he had no experience in agricultural products prior to working on the grape crate and that he met with Mr. Gerawan several times to review designs for agricultural products.  (A5042.)  Mr. Ackermann was the only named inventor when the application leading to the '293 Patent was first filed.

Cory Phillips, the Rehrig marketing and sales representative who first met with Ray Gerawan in 1993, was later added as a co-inventor of the '293 Patent. (A5137.)   Mr. Phillips testified that he had no experience in the agricultural industry and that he met with Mr. Gerawan about 50 times regarding the design of the Harvest Tote and the grape crate.  (A5023, 5031.)  When questioned, Mr. Phillips could not identify or point to a single contribution that he made to the invention claimed in the '293 Patent.  (A5030.)  Given Mr. Ackermann's and Mr. Phillips' lack of experience in the field, and the number of times that Mr. Ackermann and Mr. Phillips met with Mr. Gerawan, a jury could reasonably infer that Mr. Gerawan provided Messrs. Ackermann and Phillips with significant inventive contributions regarding ventilation of agricultural containers that became

incorporated into the claims for the '293 Patent.  A jury can also reasonably infer that Mr. Gerawan provided Mr. Phillips with an inventive contribution that resulted in Mr. Phillips being deemed a joint-inventor.

Mr. Ackerman and Mr. Phillips did not contradict the testimony of Ray Gerawan or David Dever.  Accordingly, a jury is entitled to consider this testimony.  *See  Lieberman v. Matson Nav. Co.*, 300 F.2d 661, 661 (9th Cir. 1962) (trier of factual issue is entitled to believe or disbelieve plaintiff's testimony); *In re Collins*, 141 F. Supp. 25, 28 (S.D. Cal. 1956) ("It is the rule of the federal courts that uncontradicted testimony may be disregarded if there are in it inconsistencies, or inherent improbabilities or facts contradict it.  [citation omitted.]  But when such testimony is not inherently improbable or deficient in other respects, it cannot be disregarded merely because given by an interested party"), *rev'd on other grounds,* 247 F.2d 607.  Thus, the trial court erred in granting summary judgment on Gerawan's inventorship claim and thereby excluding this testimony from trial.  In effect, the trial court improperly weighed the evidence on summary judgment.

Because the testimony of Mr. Gerawan and Mr. Dever support a finding that Mr. Gerawan provided specific information regarding a unique combination of features for efficient cooling (via ventilation and hydrocooling) of agricultural products to Rehrig employees that are both named joint-inventors of the '293 Patent, a jury may reasonably infer that Ray Gerawan should be properly named as

a co-inventor of the '293 Patent.  Accordingly, this Court should hold there is a

disputed issue of material fact precluding summary judgment and should remand

the issue of inventorship for decision at trial.[6]

## IV. THE TRIAL COURT IMPROPERLY LIMITED GERAWAN'S COMMON LAW UNFAIR COMPETITION CLAIM TO A "PASSING OFF" THEORY

*Twenty* hours before trial was to begin, the trial court *sua sponte* limited

Gerawan's common law unfair competition claim to a theory of "passing off."

(*See* A61.)  In effect, the trial court granted without notice summary adjudication

on aspects of Gerawan's common law unfair competition claim, after the final pre-

trial conference and entry of the final Pretrial Order, and hours before the trial was

to begin.[7]  This Court reviews motions for summary adjudication under a *de novo*

standard.  *See Travelers Cas. & Sur. Co. of America v. Brennete*, 551 F.3d 1132,

1137 (9th Cir. 2009); *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir. 1999).

Alternatively, this Court may view the trial court's actions as a dismissal with

---

[6]     Upon vacating the trial court's grant of summary judgment and remanding for further proceedings, this Court should also vacate the trial court's award of limited attorney's fees to Rehrig under 35 U.S.C. § 285.  (*See* A87.)  Section 285 only permits the awarding of fees to a prevailing party.  If the summary judgment ruling has been vacated, Rehrig will no longer be a prevailing party.

[7]     The trial court had previously analogized its pretrial rulings on Gerawan's claims to a motion for summary judgment.  (*See* A360.)

prejudice of aspects of Gerawan's common law unfair competition claim. Such

dismissals are also reviewed under a *de novo* standard. *See Big Bear Lodging*

*Association*, 182 F.3d at 101.

The trial court *sua sponte* found that Gerawan had not provided notice of a

misappropriation theory of common law unfair competition in its pleadings.

(A60.) This finding is unsupported by the record. Gerawan's First Amended

Complaint (A185-192, 194), the Amended Proposed Pretrial Order (A267, 273-

274, 286-293), and the Final Pretrial Order ( A378-379, 396) all provided the trial

court and Rehrig with a short and plain statement of facts that supported a

misappropriation theory of common law unfair competition in its pleadings.[8]

These allegations are again set forth below:

- Gerawan invested time and resources in creating the Harvest Tote,
  paid for the mold, and owned the mold;

- Rehrig manufactured the Harvest Tote to Gerawan's specifications;

- Rehrig manufactured a second generation Harvest Tote without
  Gerawan's authorization;

- The second generation Harvest Totes are very similar to the original
  Harvest Tote and appear to be a derivation thereof (later discovery

---

[8]    The Final Pretrial Order not only included facts that supported a
misappropriation theory, it also cited case law on damages available under a

showed that many of the specifications of the second generation

Harvest Tote were intentionally made to be nearly identical (or are

identical) to the specifications of the Harvest Tote;

- Gerawan has suffered harm as a result of Rehrig's conduct.

That is all that is required in federal notice pleading. *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007);

*see also* Fed.R.Civ.P. 8(a)(2) (requiring a "short and plain statement showing that

the pleader is entitled to relief").

The trial court took a narrow view of pleading, which contravened well

established authority on what constitutes notice pleading in federal

court. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) ("This simplified

notice pleading standard relies on liberal discovery rules and summary judgment

motions to define disputed facts and issues and to dispose of unmeritorious

claims.")   The Ninth Circuit has interpreted this to mean that "[n]otice pleading

requires the plaintiff to set forth in his complaint *claims for relief*, not causes of

action, statutes or legal theories." *Coos County Board of County Commissioners v.*

*Kempthorne*, 531 F.3d 792, 812 (9th Cir. 2008) (emphasis in original) (citations

omitted.)  Further, "Rule 8(f) provides that '[a]ll pleadings shall be so construed as

to do substantial justice." *Swierkiewicz*, 534 U.S. at 513.

---

misappropriation theory of common law unfair competition.  (A386 (*citing Ojala*

Here, the trial court held that Gerawan did not specifically plead facts relating to misappropriation of Gerawan's Harvest Tote by Rehrig in its common law unfair competition claim.    The trial court overlooked that all of the factual allegations of the Complaint and First Amended Complaint were incorporated by reference into each claim, and overlooked that the common law unfair competition claim and Section 17200 claim were combined into one count in the Complaint and First Amended Complaint.  (A192.)   Thus, there is an irreconcilable inconsistency in the trial court's reasoning and orders.  The trial court found that Gerawan had pled misappropriation of the Harvest Tote and violation of the Confidentiality Agreement as part of the Section 17200 claim (ER 60-61, A371-372), but found that the <u>same facts</u> were not pled in the <u>same count</u> for the common law unfair competition claim.

More importantly, the trial court misapplied the notice pleading standard and the purpose of Rule 8 pleading requirements.  Specific facts are not necessary in a complaint filed in federal court, unless required by statute.  *See Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.2d 832, 841 (9th Cir. 2007).  As noted by the Ninth Circuit, "[t]hough the jurisdictional allegations in Skaff's complaint were succinct, concerns about specificity in a complaint are normally handled by the array of discovery devices available to the defendant".  *Id.* at 842; *see also Giesy v.*

---

*v. Bolin*, 178 Cal.App.3d 292, 302 (1960).)

*American National Bank of Portland, Oregon*, 31 F. Supp. 524, 528 (D. Or. 1940) ("Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.")

Not only did Gerawan allege specific facts regarding the misappropriation of its Harvest Tote and violation of the Confidentiality Agreement in its Complaint and First Amended Complaint (even though it was not required to do so under applicable law); it also provided substantial discovery on the issue. Rehrig served discovery directed expressly at the issue of misappropriation of Gerawan's Harvest Tote – it had to because that was an obvious part of Gerawan's Section 17200 claim and of Gerawan's false promise claim.

The record clearly shows that <u>Rehrig knew</u> Gerawan had brought a claim for common law unfair competition. (*See* A220 at ¶1 ("Rehrig admits that this action purports to be brought under the … common law of unfair competition[.]").) Rehrig ignored Gerawan's common law unfair competition claim throughout discovery, failed to include the claim in its motion for summary judgment, and only addressed the claim in its portion of the Joint Pretrial Statement served on Gerawan, after the close of discovery and after dispositive motions. Gerawan did not hide its misappropriation theory from Rehrig or the trial court; rather Rehrig

ignored the claim and raised no purported issues with Gerawan's unfair competition claim until immediately before trial.

Whether reviewed under the standard for a summary judgment, or the standard for dismissal without leave to amend, the trial court's *sua sponte* limitation of Gerawan's unfair competition claim should be reversed. Gerawan pled and presented facts sufficient to state and prevail on a cause of action for misappropriation under California's common law of unfair competition, and it was entitled to a trial on that claim.

As illustrated by documents and testimonial evidence adduced during discovery, Gerawan had strong evidence to support a misappropriation theory of common law unfair competition. This evidence included: (1) Gerawan's work to develop the Harvest Tote; (2) Rehrig's unauthorized use of the Harvest Tote to create the second generation Harvest Tote; (3) the Confidentiality Agreement between the parties assigning Gerawan the sole ownership in the second generation Harvest Tote; and (4) Gerawan's lost share of the revenue stream from the discontinued sales of the Harvest Tote and unauthorized sales of the second generation Harvest Tote. (A5026-27, 5065, 5100, 5430-31.) These facts were undisputed and closely match up with well-known elements or other principles supporting a finding of common law unfair competition. *See, e.g., City Solutions,* 365 F.3d at 842; *Ojala*, 178 Cal.App.2d at 297-98; *Murukana Farm, Inc. v.*

*Huacuja*, 2006 Cal.App. Unpub. LEXIS 10398, *18-19, 21 (2006); and *Chaplin v. Amador*, 93 Cal.App. 358, 362-63 (1928) ("The foregoing principles of law do not apply alone to the protection of parties having trademarks and trade names. *They reach away beyond that, and apply to all cases where fraud is practiced by one in securing the trade of a rival dealer, and these ways are as many and as various as the ingenuity of the dishonest schemer can invent.*") (citations omitted) (emphasis in original).) These facts were set forth in several pleadings filed below and were therefore before the trial court. (*See, e.g.,* A186-189 at ¶¶9, 11, 14-16, 18, 37 ("Specifically, Defendant has engaged in unfair business practices by … developing and selling the second generation Harvest Tote based upon Gerawan's Harvest Tote design without authorization from Gerawan or payment of royalties to Gerawan.") (A233-236 at pp. 2:6-16, 4:18-5:18; A267, 273-274, 286-292 at pp. 2:7-26, 8:27-9:15, 21-27.)

At the final pretrial conference, Rehrig argued that Gerawan lacked evidence to prove a traditional passing off theory because: (1) the trial court had dismissed the reverse passing off claim with prejudice; and (2) Gerawan's common law unfair competition claim under a misappropriation theory was purportedly preempted by California's Uniform Trade Secret Act (prohibiting trade secret misappropriation). The trial court requested special briefing on these points, capped at 8 pages and required the briefing to be filed within 6 days. (A349.)

Gerawan informed the trial court that its "common law unfair competition claim should not be dismissed because [the claim] is based on traditional passing off _and other unfair and fraudulent practices_[.]"  (A351 (emphasis added).)  Gerawan further explained that under a misappropriation theory its claim was not based upon misappropriation of confidential information; "[Gerawan's] common law unfair competition claim rests upon Rehrig's use of the Harvest Tote to make the [second generation] Harvest Tote, a tangible product in which [Gerawan] holds a property interest by virtue of the contract the parties entered."  (A353 at p. 3:1-3.)  Gerawan also stated:

> Because [Gerawan's common law] unfair competition claim is premised upon Rehrig's use and unauthorized sale of tangible property in which [Gerawan] bears a direct ownership interest, [Gerawan's] claim is not superseded by the [Uniform Trade Secrets Act]. …
>
> [Gerawan] claims property rights in the [second generation] Harvest Tote pursuant to a written contract, and seeks the same type of remedies it is entitled to under a contract theory, _i.e._, the 94% of the net revenues that Rehrig paid [Gerawan] for sales of the Harvest Tote.  [Gerawan] is entitled to this remedy under a contract theory or an unfair competition theory, and the [Uniform Trade Secrets Act] does not affect [Gerawan's] common law unfair competition claim."

(A354 at p. 4:2-4 and 4:9-13.)

In short, Gerawan provided the trial court with specific facts and citations to the record evidence supporting a misappropriation theory of common law unfair competition.  (A354.)

The trial court then asked for additional limited briefing (5 page limitation and a 48 hour response time) on the scope of Gerawan's unfair competition claims, with a particular focus on a theory of passing off. (*See* A360 ("Of particular interest to the Court is Defendant's argument that summary judgment is appropriate on Plaintiff's common law claim for unfair competition because there is no evidence of consumer confusion.").) Gerawan replied with a detailed assessment (as much as possible within the 5-page limit and 48 hour window to prepare the brief) of facts showing evidence of a likelihood of confusion and otherwise supporting its claims. In this briefing, Gerawan again pointed out to the trial court that its common law unfair competition claim was broader than a passing off theory. Gerawan even provided the trial court with a section entitled "Gerawan's Unfair Competition Claim is Not Limited to Passing Off" which stated:

> Dismissal of [Gerawan's] common law unfair competition claim based solely on the issue of actual consumer confusion would be improper. [Gerawan] has also alleged that Rehrig competed unfairly by developing and selling the [second generation] Harvest Tote without [Gerawan's] authorization. [ ] This allegation (which survived summary judgment) is based upon Rehrig's use of the Harvest Tote, a tangible product created by [Gerawan's] efforts in which [Gerawan] holds a property interest. [ ] Such facts support the common law unfair competition claim, and should go to a jury.

(A362 at p. 1:6-12 (citations to the trial court docket omitted).)

The trial court determined that Gerawan had sufficient evidence to prove traditional passing off and a likelihood of confusion. (A369 at p. 2:20-21.)

However, the trial court also stated "In its briefing, Plaintiff explains that this claim is grounded on a traditional theory of "passing off" goods." (A369 at p. 2:5-7 (citing DE 23 ¶¶ 36-37).) Yet this statement was <u>completely</u> <u>contrary</u> to Gerawan's statements in the record. Gerawan's briefing explicitly stated that its claim was "not limited to passing off" and provided the trial court with facts that sound in misappropriation. Furthermore, the trial court discussed Gerawan's briefing as a purported admission, but cited Gerawan's First Amended Complaint[9] (not its briefing). (*Id*.)

However, the paragraphs from Gerawan's First Amended Complaint cited by the trial court state that Gerawan's claim is based upon Rehrig **"developing and selling the second generation Harvest Tote based upon Gerawan's Harvest Tote design without authorization from Gerawan or payment of royalties to Gerawan."** (A192 at ¶ 37 (emphasis added).) Furthermore, all of the factual allegations in the Complaint and First Amended Complaint were incorporated by reference into each claim. (*Id*. at ¶35.) These facts clearly support a misappropriation theory. In addition, the Final Pretrial Order filed with the trial

---

[9]     Gerawan believes the reference to Docket No. 23 (the notice of appearance for Rehrig's counsel) was intended to be a reference to Docket No. 26 (Gerawan's First Amended Complaint).

court included Gerawan's request for injunctive relief and damages premised upon a misappropriation theory of common law unfair competition. (A383 at p. 9:4-9, A386 at p. 12:24-25] (*citing Ojala*, 178 Cal.App.2d at 302 (addressing common law unfair competition under a misappropriation theory and identifying damages available under a misappropriation theory).) Thus, Rehrig and the trial court were provided with ample notice that Gerawan sought to prove common law unfair competition under a misappropriation theory. That is all that is required under the federal notice pleading standard. *Ashcroft*, 556 U.S. at 678; *Bell Atlantic*, 550 U.S. at 555.

Rehrig's own arguments also show that it understood Gerawan's common law unfair competition claim to be premised on a misappropriation theory. Rehrig argued to the trial court that Gerawan's common law unfair competition claim was superseded by California's Uniform Trade Secret Act covering misappropriation of trade secrets. (A300-301.) Rehrig undoubtedly understood Gerawan to be stating a claim for misappropriation. There would be no reason to make this argument otherwise. In response to the trial court's request for supplemental briefing on this point, Gerawan never argued that its claim was not based upon a misappropriation theory. Gerawan clearly stated that its claim was based upon the misappropriation of a tangible product in which Gerawan bore a vested property interest. (A353, 354, 355.) Thus, Gerawan distinguished its property right from the

misappropriation of an intangible trade secret and showed that it was seeking a claim for the misappropriation of a tangible product.

Similarly, Rehrig's Answer and affirmative defenses show that it understood Gerawan's common law unfair competition claim to be based on a theory other than passing off.  Rehrig's Answer explicitly acknowledged that it understood Gerawan to be stating a claim under California's common law of unfair competition.  (A220 at ¶1.)  Common law unfair competition has at least two well recognized theories of liability (1) "passing off", and (2) "misappropriation."  *See, e.g., City Solutions Inc.*, 365 F.3d at 842; *Ojala*, 178 Cal.App.2d at 297-98.  The Ninth Circuit has expressly acknowledged the misappropriation prong of common law unfair competition in *City Solutions*:

> Common law misappropriation is one of a number of doctrines subsumed under the umbrella of unfair competition.   It is normally invoked in an effort to protect something of value not otherwise covered by patent or copyright law, trade secret law, breach of confidential relationship, or some other form of unfair competition.

*See City Solutions*, 365 F.3d at 842, citing *United States Golf Ass'n v. Arroyo Software Corp.*, 69 Cal.App.4th 607, 618 (1999).  In finding no error in the trial court's denial of the defendant's JMOL, the Ninth Circuit also noted that the jury was properly instructed that "'property' for purposes of the unfair competition claim, was 'not limited to physical or tangible property.  The term property can

include a confidential and proprietary business strategy developed to respond to the [subject] RFP." *City Solutions*, 365 F.3d at 842.

Rehrig also acknowledged Gerawan's common law unfair competition claim was broader than a claim for passing off alone. In its Answer, Rehrig expressly acknowledged that Gerawan had pled a claim for common law unfair competition, but did not plead any affirmative defenses to a passing off theory. Indeed, Rehrig did not suggest that the common law unfair competition claim was premised upon "passing off" until the Proposed Joint Pretrial Order and jury instructions when Rehrig added several instructions for affirmative defenses that had not been asserted in Rehrig's Answer, nor raised in the Pretrial Order. (*Compare* A428-430 *with* A224-225.) Rehrig's late affirmative defenses undermine its argument to the trial court. Given that Rehrig explicitly acknowledged Gerawan's common law unfair competition claim in its Answer, it must have understood the claim to be premised on a theory other than "passing off" (*i.e.*, misappropriation). If Rehrig had understood Gerawan's theory to be limited to "passing off", it would have pled the several belated affirmative defenses that it raised in its jury instructions in its Answer to the First Amended Complaint. The defenses that Rehrig tried to slide in right before trial were classic fair use and nominative fair use of the name Harvest Tote and abandonment of the name Harvest Tote, all of which are directed to trademark-type claims. (*See* A428-430.) Because Rehrig did not allege these

defenses in its Answer, Rehrig clearly had notice that Gerawan's claims were premised on a theory broader than or different from "passing off."

Gerawan provided the trial court and Rehrig with sufficient facts to provide notice that its claim for common law unfair competition was broader than a claim for 'passing off' and included a theory of misappropriation. These facts were provided in Gerawan's Complaint and First Amended Complaint, expanded upon in later pleadings, and extensively explored in discovery by both parties. (*See, e.g.,* A186-189, 192 at ¶¶9, 11, 14-16, 18, 37; A233-236 at pp. 2:6-16, 4:18-5:18; A267, 273-274, 286-292 at pp. 2:7-26, 8:27-9:15, 21-27.) When supplemental briefing was requested by the trial court, Gerawan explicitly informed the trial court and Rehrig that its unfair competition claim was broader than a claim for passing off, and the Joint Pretrial Order cited case law and relief premised upon a misappropriation theory of unfair competition. Under the circumstances, the trial court's *sua sponte* ruling on the eve of trial limiting Gerawan to a passing off theory was reversible error.

The trial court also committed reversible error when it excluded the majority of the evidence of actual confusion and association. First, the trial court ordered that Gerawan must have evidence of actual confusion to support its passing off theory of common law unfair competition claim. Gerawan responded by alerting the trial court that actual confusion is not the test for trademark-like claims -- the

test is likelihood of confusion.  (A362.)  Nonetheless, Gerawan presented the trial

court with what it asked for -- evidence of actual confusion and association.

(A405-408.)  Next, the trial court limited Gerawan's common law unfair

competition claim to passing off, effectively using a summary judgment standard

without the protections afforded under FRCP 56.  (A61.)  Third, the trial court also

excluded Gerawan's evidence of actual confusion and association that would

support its newly and involuntarily narrowed common law unfair competition

claim under a passing off theory.  (A458.)  In short, the trial court tied Gerawan's

hands and indicated that if it wanted to proceed to trial, it would do so with limited

evidence to support its newly and involuntarily narrowed claim.  Gerawan was

entitled to a trial on its common law unfair competition claim based on all theories

and with all evidence presented.  The trial court's orders restricting Gerawan to

passing off and excluding evidence of actual confusion and association should be

reversed.

## V.    THE TRIAL COURT IMPROPERLY LIMITED GERAWAN'S STATUTORY UNFAIR COMPETITION LAW CLAIM UNDER SECTION 17200

Section 17200 prohibits business conduct that is unlawful, unfair or

fraudulent.  The trial court stated in *dicta* that Gerawan could not bring a claim

under the unlawful prong of Section 17200 for Gerawan's unlawful conduct

violating the false marking statute and violating California's common law of unfair

competition. The trial court made these statements when *denying* motions in limine brought by Rehrig. Thus, the trial court effectively granted motions for summary adjudication on Gerawan's Section 17200 claim through *dicta* statements in motions *in limine*. Section 17200 prohibits business conduct that violates federal and state statutory and common law. The trial court's ruling was error and should be reversed.

Following the Pretrial Conference, the trial court requested supplemental briefing on whether Gerawan' unfair competition claims should be dismissed. The Court treated this request as a *sua sponte* ordered motion for summary judgment. (*See* A373.) In a footnote of the order on this supplemental briefing, the trial court expressly stated Gerawan's Section 17200 claim could not be supported by "unlawful" or "fraudulent" conduct. (*See id.* n.3.) This ruling was error. Whether assessed under the standard for dismissal with prejudice or summary judgment, this Court reviews such pre-trial dismissals under a *de novo* standard.

Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice[.]" Because the statute is written in the disjunctive, the statute "applies separately to business acts or practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Clark v. Countrywide Home Loans, Inc.*, 732 F. Supp.2d 1038, 1050 (E.D. Cal. 2010) (citation omitted); *see also Cel-Tech Communications, Inc. v. Los*

*Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999). Here, Rehrig's conduct was unlawful, unfair, and fraudulent under Section 17200.

Gerawan contends that Rehrig's conduct violated Section 17200's "unlawful" provision when, among other things, Rehrig developed and sold the second generation Harvest Tote without authorization from Gerawan in violation of California's common law unfair competition law, and when Rehrig falsely marked the Harvest Tote products as "Patent Pending" in violation of the federal false marking statute. 35 U.S.C. §292.

Violations of California's common law may support a claim of unlawful conduct under California's statutory unfair competition law. Section 17200 prohibits "unlawful" conduct, which is "anything that can properly be called a business practice and that at the same time is forbidden by law." *People v. McKale*, 25 Cal.3d 626, 634 (1975). This includes conduct forbidden by common law and by statute. *See Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 828 n.3 (9th Cir. 2003). Rehrig's conduct was forbidden by <u>both</u> common law and statute. Rehrig's conduct in taking and selling the second generation Harvest Tote was forbidden by California's common law of unfair competition. And Rehrig's marking of the second generation Harvest Tote "Patent Pending" is a direct (and intentional) violation of 35 U.S.C. § 292. Thus, Rehrig's conduct was unlawful under the California common law and federal patent law.

Superficially, there appears to be a split in the Ninth Circuit regarding whether violations of common law may also constitute "unlawful" conduct under Section 17200.  In *Mercado v. AllState Ins. Co.*, the Ninth Circuit stated: "Mercado raises the common law claim for breach of the covenant of good faith and fair dealing.  California courts have not foreclosed common law theories as a basis for actions pursuant to 17200."  340 F.3d 824, 828 n.3 (9th Cir. 2003) (citing California Supreme Court decision *Moradi-Shalal v. Fireman's Ins. Cos.*, 46 Cal.3d 287, 304-05 (1988)).

In contrast, in *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035 (9th Cir. 2010), the Ninth Circuit stated that a common law violation alone "is insufficient" to constitute "unlawful" conduct under Section 17200.  622 F.3d 1035, 1044 (9th Cir. 2010).   This is an incorrect and unsupported statement of California law.  The *Shroyer* Court relied on two cases to support its position: *Allied Grape Growers v. Bronco Wine, Co.*, 203 Cal.App.3d 432 (1988); and *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 319 F. Supp.2d 1059, 1074-75 (C.D.Cal. 2003).  However, the only authority cited by *Nat'l Rural Telecomms* for this position is *Allied Grape Growers*.  *See* 319 F. Supp.2d at 1074-75.  Thus, the lone California authority purportedly supporting this proposition of law is the California appellate court decision in *Allied Grape Growers*.  However, *Allied*

*Grape Growers* never addressed whether a common-law violation is "unlawful" under Section 17200. *See Allied Grape Growers*, 203 Cal.App.3d at 451-52.

The issue on appeal in *Allied Grape Growers* was whether the defendant's conduct was unfair or fraudulent. *Id.* at 451 ("The trial court found that Bronco's program was both unfair and fraudulent."). The *Allied Grape Growers* court held that it did not need to address whether the alleged conduct was fraudulent, because the defendant's conduct "was manifestly unfair." *See id.* at 452. Thus, *Allied Grape Growers* neither considered, examined, nor offered any opinion on whether violation of a common law duty constitutes "unlawful" conduct under Section 17200. Accordingly, any decisions relying upon *Allied Grape Growers* for such a position are unsupported and founded upon a misreading of the California case law. This Court should follow *Mercado* as the more accurate statement of California law and disregard *Shroyer*.

The Court should reverse the trial court's ruling that Gerawan's Section 17200 claim cannot be premised on Rehrig's unlawful violation of California common law. As discussed in *Mercado*, California has not excluded violations of common law from "unlawful" conduct under Section 17200.

The trial court also appeared to state that Gerawan could not rely upon Rehrig's false marking of the Harvest Tote to state a claim under Section 17200. In *dicta* when denying a motion in limine brought by Rehrig, the trial court stated

"that allegations of false marking cannot form the basis of liability for any of the claims remaining in this case." (A53 at lines 26-27.) This statement and ruling constitute error.

False marking may constitute a violation of Section 17200. The federal false marking statute prohibits anyone from marking a product "patent pending … when no application for patent has been made[.]" 35 U.S.C. § 292. The facts giving rise to a claim for false marking may also constitute a violation of Section 17200, particularly where there is evidence of bad faith. *See Hunter Douglas, Inc. v. Harmonic Design, Inc.* 153 F.3d 1318, 1336 (Fed. Cir. 1998) (holding that the patent law does not preempt Section 17200 where the defendant's actions amounted to fraud or bad faith), *overruled on other grounds, Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999); *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1473 (Fed. Cir 1998); *see also, Sukumar v. Nautilus, Inc*, 829 F. Supp.2d 386, 392-400 (W.D. Virginia, 2011) (finding no preemption of Section 17200 by the false marking statute after conducting a detailed preemption analysis).

Here the facts support a finding that Rehrig falsely marked its products for the express purpose of inhibiting competition. (*See* A5029.) Furthermore, the senior executive in charge of product development and an officer of Rehrig testified that he was unaware of Rehrig ever removing a "Patent Pending" marking

-- even when Rehrig became aware that no patent application had ever been filed to cover the product. (A5106.) Given these facts, Gerawan has easily met the relatively minimal standard necessary to survive either a motion to dismiss or a motion for summary judgment. Accordingly, the trial court's *dicta* statement that Rehrig's false marking cannot support a claim in this case should reversed.

Finally, to the extent that the trial court found that the unlawful prong of Section 17200 was not pled, that position finds no support under the federal notice pleading framework set forth above in Section III. First, Gerawan incorporated by reference all of Rehrig's activities alleged in the Complaint and First Amended Complaint in its combined Section 17200 and common law unfair competition count, which included activities that violate the common law. Second, Gerawan expressly alleged in the Complaint and First Amended Complaint.

> By reason of the foregoing, Defendant has been, and is engaged in "unlawful, unfair or fraudulent business practices" in violation of § 17200 et seq. of the California Business and Professional Code and acts of unfair competition in violation of the common law.

(A155, 192.)

Gerawan gave an example of facts supporting the unfair prong of Section 17200. Gerawan was not required to allege every factual scenario to support each prong of Section 17200. *Skaff*, 506 F.2d at 841. Put succinctly, Gerawan pled all prongs of Section 17200 and the trial court erred in finding that Gerawan's Section 17200 claim was limited to only the unfair prong of Section 17200.

## CONCLUSION

In sum, Gerawan seeks the following relief:

- Remand to the trial court for entry of an order permitting Gerawan to assert an unfair competition claim under the Lanham Act;

- Remand to the trial court for entry of an order permitting a jury determination of Gerawan's claim for correction of inventorship; and

- Remand to the trial court for entry of an order permitting a jury determination of Gerawan's claim for common law unfair competition under a misappropriation theory.

- Remand to the trial court for entry of an order permitting Gerawan's claim for statutory unfair competition pursuant to Cal. Bus. & Prof. Code § 17200 to proceed under the unlawful, unfair and fraudulent prongs, and to include allegations of violation of California's common law as a basis for unlawful behavior, and violations of the false marking statute 35 U.S.C. § 292 as a basis for unlawful, unfair and fraudulent conduct.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP


Dated: April 22, 2014      By             /s/ Jill M. Pietrini

                              Jill M. Pietrini
                              James Curry
                              Michael Murphy
            Attorneys for Plaintiff-Appellant
                   Gerawan Farming, Inc.

# ADDENDUM

| Order's Appealed From | Dkt. No. | Pg. |
|---|---:|---|
| Order Granting in Part Motion to Dismiss | 25 | 64-83 |
| Order Granting Summary Judgment | 100 | 84-104 |
| Order Granting Motion in Limine | 165 | 105-118 |
| Order Requiring Immediate Response by 3:30 p.m. | 204 | 119-123 |
| Order Dismissing Case | 211 | 124-126 |
| Entry of Judgment | 236 | 127 |
| Amended Entry of Judgment | 241 | 128 |

1
2
3
4
5
6
7                        IN THE UNITED STATES DISTRICT COURT

8                     FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   GERAWAN FARMING, INC.,                    CASE NO. 1:11-cv-01273 LJO BAM

11              Plaintiff,                     ORDER ON DEFENDANT'S MOTION TO
                                              DISMISS
12        vs.
                                              (Doc. 11)
13   REHRIG PACIFIC COMPANY,

14              Defendant.

15   _____/

16        Now pending before the Court is Defendant Rehrig Pacific Company's ("Rehrig's") motion to

17   dismiss.  Plaintiff Gerawan Farming, Inc. ("Gerawan") has filed an opposition, and Rehrig has filed a

18   reply.  Upon consideration of the parties' submissions and the record in this case, the Court GRANTS

19   IN PART and DENIES IN PART the motion to dismiss.

20   **I.      BACKGROUND**

21        **A.      Factual Background**

22        Gerawan is in the business of producing and distributing fresh produce.  In 1993, Gerawan and

23   Rehrig, a manufacturer of plastic-molded containers for industrial use, reached an agreement to patent,

24   manufacture, and sell the "Harvest Tote," a container for holding stone fruits such as peaches during

25   harvesting.  The agreement ("the Harvest Tote Agreement") provided that (1) Gerawan's founder, Ray

26   Gerawan,[1] would provide the initial design for the Harvest Tote; (2) Gerawan would share in the cost

27   of patenting the Harvest Tote; (3) the patent claims related to the Harvest Tote would be jointly owned;

28   _____

          [1] Ray Gerawan's relevant interests are assigned to Gerawan.  (Doc. 1, Compl., ¶ 20.)

1  (4) Rehrig would be granted an exclusive license to sell the Harvest Tote; and (5) Rehrig would pay
2  royalties to Gerawan from sales of the Harvest Tote.

3       During the parties' collaboration on the Harvest Tote in 1993, Rehrig filed a patent application
4  for U.S. Patent No. 5,415,293, entitled "Grape Lug" ("the '293 Patent"). The '293 Patent relates to a
5  container used for harvesting, storing, and transporting grapes. Among other characteristics, the '293
6  Patent includes patent claims for "the configuration of eight side columns and an upper portion, which
7  is recessed, in contrast with a lower portion, which has a doubling of material[,] which is characteristic
8  of the Harvest Tote." (Doc. 1, Compl., ¶ 12.) The '293 Patent, however, does not name Ray Gerawan
9  as a co-inventor of the Grape Lug.

10      Some time in 2001, Rehrig discontinued making royalty payments to Gerawan for sales of the
11 Harvest Tote. At that time, Gerawan was under the impression that the payments were discontinued
12 because sales of the Harvest Tote had fallen to the point where no royalty payments were warranted.
13 However, in 2008 Gerawan discovered that Rehrig had made significant sales of the Harvest Tote for
14 several years without paying Gerawan royalties. Gerawan also discovered that Rehrig developed and
15 claimed exclusive ownership of a new container for produce ("the Second Generation Harvest Tote"),
16 which appears to have been derived from the design of the Harvest Tote.

17      **B.    Procedural History**

18      Gerawan initiated this action on July 29, 2011. In its complaint, Gerawan asserts eight causes
19 of action: (1) correction of inventorship under 35 U.S.C. § 256; (2) conversion; (3) unfair competition
20 in violation of California Business and Professional Code Section 17200 *et seq.*; (4) unjust enrichment;
21 (5) concealment; (6) false promise; (7) unfair competition in violation of 15 U.S.C. § 1125(a); and (8)
22 accounting. On December 9, 2011, Rehrig filed the instant motion to dismiss pursuant to Federal Rule
23 of Civil Procedure 12(b)(6). In response, Gerawan filed an opposition on January 3, 2012, and Rehrig
24 filed a reply on January 17, 2012. This matter was deemed suitable for decision without oral argument
25 pursuant to Local Rule 230(g).

26 **II.    LEGAL STANDARD**

27      A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the
28 legal sufficiency of a claim presented in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir.

2001).  Where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory," dismissal under Rule 12(b)(6) is proper.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  While "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).  Naked assertions, "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. See Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In deciding a motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations of the complaint as true and construes the pleadings in the light most favorable to the party opposing the motion. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, the court may disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit. Id.  The court may also disregard allegations that are "conclusory" or are the product of unreasonable deductions and inferences. Id.  Finally, if the court concludes that dismissal under Rule 12(b)(6) is warranted, the court should not dismiss the complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).

## III.    DISCUSSION

### A.    Federal Claims

#### 1.    Correction of Inventorship

Gerawan claims that its founder, Ray Gerawan, was omitted as a co-inventor of the '293 Patent and therefore seeks a court order correcting the issued patent.  Rehrig argues that this claim should be dismissed because Gerawan has failed to allege facts sufficient to show that Ray Gerawan contributed

1    in a significant manner to the conception of the '293 Patent such that he should be named a co-inventor

2    in the issued patent.

3        The issuance of a patent "creates a presumption that the named inventors are the true and only

4    inventors." Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998) (citing

5    Hess v. Advanced Cardiovascular Sys., 106 F.3d 976, 980 (Fed. Cir. 1997)).  However, if an inventor

6    is not named in an issued patent through error and without any deceptive intention on his part, a court

7    may order correction of the patent.  See 35 U.S.C. § 256; Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466,

8    1471 (Fed. Cir. 1997).  A court may correct either a misjoinder (the patent names a person who is not

9    an inventor) or a nonjoinder (the patent omits the name of a person who is an inventor).  See Stark v.

10   Advanced Magnetics, 119 F.3d 1551, 1553 (Fed. Cir. 1997).

11        "Conception is the touchstone" in determining inventorship.  Burroughs Wellcome Co. v. Barr

12   Laboratories, Inc., 40 F.3d 1223, 1227 (Fed. Cir. 1994).  Conception is the "formation in the mind of

13   the inventor[] of a definite and permanent idea of the complete and operative invention[.]"  Id. (citation

14   and internal quotation marks omitted).  To be a joint inventor, an individual must "contribute in some

15   significant manner to the conception of the invention."  Fina Oil & Chem., 123 F.3d at 1473.  "[M]erely

16   assisting the actual inventor after conception of the claimed invention;" providing the actual inventor

17   well-known principles or state of the art without having a definite idea of the claimed combination as

18   a whole; or "reducing the [actual] inventor's idea to practice" through ordinary skill in the art does not

19   give rise to a claim for joint inventorship.  Ethicon, 135 F.3d at 1460.

20        A joint inventor need not make a contribution to the conception of every claim of a patent, nor

21   even the same amount of contribution as another inventor.  See 35 U.S.C. § 116.  Rather, each inventor

22   need only "perform . . . a part of the task which produces the invention."  Ethicon, 135 F.3d at 1460.

23   "A contribution to one claim is enough."  Id. at 1461 (citation omitted).  Thus, in the end, "the critical

24   question for joint conception is who conceived, as that term is used in the patent law, the subject matter

25   of the claims at issue."  Id.

26        The patent claims at issue in this case pertain to the walls of the Grape Lug, specifically "the

27   configuration of eight side columns and an upper portion, which is recessed, in contrast with a lower

28   portion, which has a doubling of material[.]" (Doc. 1, Compl., ¶ 12.)  Gerawan alleges that these claims

are "characteristic" of the Harvest Tote, which Ray Gerawan provided the "initial design" for as part of the Harvest Tote Agreement. (Id. ¶¶ 9, 12.) Gerawan notes that only after Rehrig received the design for the Harvest Tote did it file its patent application for the '293 Patent. When viewed in the light most favorable to Gerawan, these facts suggest that Ray Gerawan conceived the distinct wall construction as part of his work on the Harvest Tote and this distinct construction was incorporated in the claims of the '293 Patent. This gives rise to a facially plausible claim for correction of inventorship under 35 U.S.C. § 256. Accordingly, Rehrig's motion to dismiss is DENIED with respect to this claim.

### 2. Unfair Competition Under the Lanham Act

Gerawan claims that Rehrig's conduct constitutes a false designation of origin, affiliation, or sponsorship in violation of the Lanham Act, 15 USC § 1125(a). Specifically, Gerawan claims that Rehrig falsely and wrongfully suggested that it is the sole inventor or source of the Harvest Tote and the Second Generation Harvest Tote. Rehrig counters that Gerawan's allegations fail to state a cognizable claim under the Lanham Act.

Section 1125(a) provides, in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> * * *
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Simply put, § 1125(a) "makes a person liable for using a false description of origin in connection with any goods or services put into commerce." Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984). Its central purpose is to "protect consumers against deceptive designations of the origin of goods, and conversely, to enable producers to differentiate their products from those of others." Int'l Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912, 918 (9th Cir. 1980).

///

1    The essence of Gerawan's claim here is that Rehrig made false descriptions of origin when it

2  used Ray Gerawan's design for the Harvest Tote but failed to credit Ray Gerawan as a joint inventor or

3  source of origin of the Harvest Tote or the Second Generation Harvest Tote. This theory of liability,

4  however, relies on an incorrect construction of the word "origin" as it is used in § 1125(a). "Origin of

5  goods" refers to the producer of the tangible goods offered to consumers for sale, not the inventor or

6  creator of the patentable designs that the goods embody. See Dastar Corp., v. Twentieth Century Fox

7  Film Corp., 539 U.S. 23, 31-32, 37 (2003). As the Supreme Court explained:

8    [Section 1125(a)] of the Lanham Act prohibits actions like trademark infringement that
     deceive consumers and impair a producer's goodwill. It forbids, for example, the
9    Coca-Cola Company's passing off its product as Pepsi-Cola or reverse passing off
     Pepsi-Cola as its product. But the brand-loyal consumer who prefers the drink that the
10   Coca-Cola Company or PepsiCo sells, while he believes that that company produced (or
     at least stands behind the production of) that product, surely does not necessarily believe
11   that that company was the "origin" of the drink in the sense that it was the very first to
     devise the formula. *The consumer who buys a branded product does not automatically*
12   *assume that the brand-name company is the same entity that came up with the idea for*
     *the product, or designed the product--and typically does not care whether it is. The*
13   *words of the Lanham Act should not be stretched to cover matters that are typically of*
     *no consequence to purchasers.*
14

15  Id. at 32-33 (emphasis added). Here, it is clear that Rehrig produced the Harvest Tote and the Second

16  Generation Harvest Tote. Therefore, any claim that Gerawan should have been identified as a source

17  of origin of those goods must fail.

18    Gerawan's reliance on this Court's decision in GNI Waterman LLC v. A/M Valve Co., LLC,

19  Case No. CV F07-0863 LJO TAG, 2007 U.S. Dist. LEXIS 68715 (E.D. Cal. Sept. 7, 2007) is misplaced.

20  In GNI Waterman, the plaintiff and the defendant were direct competitors in the production and sale of

21  irrigation canal gates. The plaintiff alleged that the defendant misappropriated the plaintiff's product

22  design patterns to create canal gates that were identical to plaintiff's in every material respect yet sold

23  under the defendant's name. Based on these allegations, this Court concluded that the plaintiff stated

24  a cognizable claim under § 1125(a).

25    The claim in GNI Waterman rested on a theory of "reverse palming off," which is actionable

26  under § 1125(a). See Smith v. Montoro, 648 F.2d 602, 605-06 (9th Cir. 1981). Reverse palming off

27  generally occurs when the wrongdoer takes another party's product, removes the party's trademark or

28  name as the origin of source, and sells the product under the wrongdoer's own name. See Lamothe v.

1  Atlantic Recording Corp., 847 F.2d 1403, 1406 (9th Cir. 1988).  In concluding that the plaintiff stated

2  a claim for reverse palming off, this Court reasoned that appropriating a competitor's design pattern for

3  the purpose of recreating identical products to be sold under one's own name is essentially the same as

4  taking a competitor's product, removing the party's name as the origin of source, and selling it under

5  the defendant's name.  See GNI Waterman, 2007 U.S. Dist. LEXIS 68715, at *10-13.  Both scenarios

6  implicated the central purpose of § 1125(a): the protection of consumers from deceptive designations

7  of the origin of goods and enabling producers to differentiate their products from those of others.  See

8  Int'l Order of Job's Daughters, 633 F.2d at 918.

9           Those circumstances are absent here.  Gerawan produces no products or services related to the

10 Harvest Tote or the Second Generation Harvest Tote for consumers.  It is simply a patent co-owner.  As

11 such, the central ingredient for a reverse palming off claim is missing: the confusion of consumers by

12 one party taking the *products or services* of another and representing them as its own.  Accordingly, this

13 claim is DISMISSED.  Furthermore, because amendment of this claim would be futile, it is dismissed

14 without leave to amend.

15           **B.     State Law and Common Law Claims**

16           Rehrig moves to dismiss Gerawan's state law and common law claims on the grounds that the

17 claims are insufficiently pled, are not cognizable, are preempted by federal patent law, and are time-

18 barred.  The Court first addresses whether Gerawan alleges a cognizable claim for (1) conversion; (2)

19 false promise; (3) fraudulent concealment; (4) unjust enrichment; (5) unfair competition under Section

20 17200; and (6) accounting.  The Court then discusses whether these claims are time-barred under the

21 relevant statutes of limitations.

22           **1.     Conversion**

23           Gerawan claims that Rehrig (a) withheld royalty payments due from sales of the Harvest Tote

24 and the Second Generation Harvest Tote; and (b) wrongfully exercised control over Gerawan's interest

25 in the '293 Patent.  In its motion to dismiss, Rehrig argues that Gerawan's allegations regarding unpaid

26 royalties give rise to a breach of contract, not conversion, and that in any event, unspecific amounts of

27 money cannot be the subject of a claim for conversion.  With respect to the '293 Patent, Rehrig argues

28 that Gerawan's claim is preempted by federal patent law.

**a.** **Royalty Payments**

"A conversion occurs where the defendant wrongfully exercises dominion over the property of another." Bank of New York v. Fremont General Corp., 523 F.3d 902, 914 (9th Cir. 2008) (citations omitted). In California, the elements of a claim for conversion are: (1) the plaintiff's ownership or right to possession of property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. Plummer v. Day/Eisenberg, LLP, 184 Cal. App. 4th 38, 45 (Ct. App. 2010).

Although "[n]either legal title nor absolute ownership of the property [at issue] is necessary" to maintain a claim for conversion, "a mere contractual right of payment, without more, will not suffice." Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 452 (Ct. App. 1997). For example, in Imperial Valley Land Co. v. Globe Grain & Milling Co., 187 Cal. 352 (1921), landowners brought a claim for conversion against cotton growers for breaking a lease agreement that required the growers to tender one-fourth of their crop as rent. The California Supreme Court rejected the claim, reasoning that the lease did not give the landowners any property interest in the cotton crop itself because it did not give title to nor create a lien upon the crop. Id. at 353-54. Rather, the one-fourth amount simply represented the rental rate, which the growers failed to pay. Id. at 354. This gave rise to an ordinary debt, not a claim for conversion. Id.

In this case, there is nothing to suggest that the royalty payments due to Gerawan amounted to anything more than a contractual right to payment. Gerawan does not allege that it had an ownership interest in, or the right to immediate possession of, the *specific* proceeds from the sales of the Harvest Tote and the Second Generation Harvest Tote. Cf. Weiss v. Marcus, 51 Cal. App. 3d 590, 599 (Ct. App. 1975) (where an attorney has a secured interest in settlement proceeds by way of an attorney's lien, he may proceed with a claim for conversion when another person exercises dominion over the proceeds). Rather, Gerawan simply alleges that under the Harvest Tote Agreement, Rehrig agreed to pay certain royalties based on sales of the Harvest Tote.[2] This allegation, when combined with the allegation that Rehrig failed to pay royalties to Gerawan after 2001, gives rise to a debt and a breach of contract, not

---

[2] It is unclear on what basis Gerawan claims to be entitled to royalty payments for sales of the Second Generation Harvest Tote. Presumably, Gerawan asserts that under the Harvest Tote Agreement, Gerawan is entitled to royalties on any iteration of the Harvest Tote.

1   a claim for conversion.

2       Moreover, "[m]oney cannot be the subject of a cause of action for conversion unless there is a

3   specific, identifiable sum involved[.]" PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil &

4   Shapiro, LLP, 150 Cal. App. 4th 384, 395 (Ct. App. 2007). Here, Gerawan fails to identify a specific

5   sum of money that Rehrig allegedly converted. The general allegation that Rehrig failed to pay certain

6   royalties over the span of almost ten years does not sufficiently identify a specific sum of money. See

7   Vu v. California Commerce Club, Inc., 58 Cal. App. 4th 229, 235 (Ct. App. 1997) ("[A] generalized

8   claim for money [is] not actionable as conversion."); Software Design & Application, Ltd. v. Hoefer &

9   Arnett, Inc., 49 Cal. App. 4th 472, 485 (Ct. App. 1996) (no conversion claim where money was allegedly

10   misappropriated by the defendant "over time, in various sums, [and] without any indication that it was

11   held in trust for" the plaintiffs).

12       Accordingly, for all these reasons, Gerawan's claim for conversion regarding unpaid royalties

13   is DISMISSED with leave to amend.

14          **b.**     **The '293 Patent**

15       State law claims that frustrate the objectives embodied in the federal patent scheme are subject

16   to conflict preemption. See Ultra-Precision Mfg. v. Ford Motor Co., 411 F.3d 1369, 1378 (Fed. Cir.

17   2005). Thus, in a patent case, federal preemption occurs whenever a state law impermissibly attempts

18   to provide patent-like protection to subject matter addressed by federal patent law. See Bonito Boats

19   v. Thunder Craft Boats, 489 U.S. 141, 156-57, 168 (1989); Dow Chemical Co. v. Exxon Corp., 139 F.3d

20   1470, 1473 (Fed. Cir. 1998).

21       In the specific context of a conversion claim, courts have differentiated between claims that are

22   dependent on a determination of patent inventorship or ownership and those that are based on a non-

23   patent theory of conversion. Claims that are dependent on a determination of patent inventorship or

24   ownership, such as a misappropriation of patent rights, are generally preempted by federal patent law.

25   See Smith v. Healy, 744 F. Supp. 2d 1112, 1130 (D. Or. 2010) ("Plaintiffs' proposed conversion claim

26   does not concern Plaintiffs' tangible property but rather their intangible idea . . . therefore . . . Plaintiffs'

27   proposed conversion claim would be preempted by [federal] patent law."). In contrast, claims that can

28   be established without reference to patent inventorship or ownership are generally not preempted by

1   federal patent law.  See HIF Bio, Inc. v. Yung Shin Pharms. Industrial Co., 600 F.3d 1347, 1354 (Fed.

2   Cir. 2010) (suggesting that plaintiffs could establish a conversion claim not preempted by federal law

3   by basing their claim on defendants' alleged misappropriation of experiments, experimental data, and

4   non-public drafts of papers).

5         Here, Gerawan alleges that "[Rehrig] substantially interfered with Gerawan's rightful property

6   by omitting Ray Gerawan as an inventor" and as such, "wrongfully exercised control over Gerawan's

7   rights in . . . the '293 Patent[.]" (Doc. 1, Compl., ¶¶ 25-26.)  In other words, Gerawan claims that Rehrig

8   misappropriated Gerawan's patent rights.  Such a claim is preempted by federal patent law.  See GE v.

9   Wilkins, 1:10-cv-0674-OWW-JLT, 2011 U.S. Dist. LEXIS 81479, at *26-28 (E.D. Cal. 2010) (finding

10  conversion claim preempted where the counter claimant alleged that the counter defendant wrongfully

11  interfered with counter claimant's ownership interest as an inventor in certain patents).  Accordingly,

12  Gerawan's claim for conversion regarding its "ownership interest" in the '293 Patent is DISMISSED

13  with leave to amend.

14              **2.      False Promise**

15        Gerawan claims that Rehrig falsely promised that patent claims derived from the Harvest Tote

16  would be jointly owned.  Rehrig moves to dismiss this claim on the ground that Gerawan has failed to

17  allege facts with specificity regarding the alleged false promise.  Rehrig takes particular issue with the

18  absence of facts showing that Rehrig knew the alleged promise was false or misleading at the time the

19  promise was allegedly made.

20        A false promise is defined as "[a] promise, made without any intention of performing it."  Cal.

21  Civ. Code § 1710.  In California, a cause of action may lie where a defendant uses a false promise to

22  fraudulently induce the plaintiff into entering a contract.  Lazar v. Superior Court, 12 Cal. 4th 631, 638

23  (1996).  To establish such a claim, the plaintiff must show: (1) the defendant made a promise; (2) the

24  defendant knew the promise was false at the time it was made; (3) the defendant intended to induce the

25  plaintiff's reliance; (4) the plaintiff actually and justifiably relied on the promise; and (5) the plaintiff

26  suffered damages as a result of his reliance on the promise.  See Engalla v. Permanente Med. Group,

27  Inc., 15 Cal. 4th 951, 973-74 (1997).

28  ///

1    A claim for false promise is grounded in fraud and thus is subject to the heightened pleading

2    standard of Federal Rule of Civil Procedure 9(b).  See Vess v. Ciba-Geity Corp. USA, 317 F.3d 1097,

3    1103-04 (9th Cir. 2003) (explaining that state claims based on fraud are subject to Rule 9(b)).  Under

4    Rule 9(b), a defendant's state of mind may be "alleged generally," but the circumstances constituting

5    fraud must be pled with "particularity."  Fed. R. Civ. P. 9(b).  In other words, the party claiming fraud

6    must set forth facts such "as the times, dates, places, benefits received, and other details of the alleged

7    fraudulent activity."  Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).  It is insufficient for the

8    party claiming fraud to simply identify a transaction and allege that it was fraudulent in a conclusory

9    manner.  See In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), superceded

10    by statute on other grounds.  The purpose of Rule 9(b) is to protect defendants from factually baseless

11    claims of fraud inasmuch as it is meant to provide defendants notice of the claims against them.  See

12    Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

13    The allegations regarding Gerawan's claim for false promise are sparse.  Gerawan alleges that

14    "in or around 1993" it reached an agreement with Rehrig in which, among other things, it promised

15    Gerawan that patent claims related to the Harvest Tote would be jointly owned.  (Doc. 1, Compl., ¶¶ 9-

16    10.) Gerawan goes on to suggest that Rehrig had no intention of keeping this promise, as demonstrated

17    by the fact that soon after, Rehrig omitted Ray Gerawan from the '293 Patent which includes "one or

18    more claims to which Ray Gerawan made an inventive contribution [to]" in connection with his work

19    on the Harvest Tote.  (Id. ¶ 12.)

20    Without more, these allegations fall short of satisfying the "particularity" requirement of Rule

21    9(b).  Absent are specific details regarding where and on what date the parties reached the agreement;

22    who was involved in the negotiation of the agreement; who made the promise regarding joint ownership

23    of the patent claims; what was the exact promise made; in what context was the promise made; and why

24    was the promise so important to Gerawan in reaching the agreement.  The heightened pleading standard

25    of Rule 9(b) requires at least this much.[3]  See Vess, 317 F.3d at 1106 ("Averments of fraud must be

26    

27    _____

[3] Gerawan need not, however, allege with particularity why Rehrig's promise was false at the time it was made, as
Rehrig argues Gerawan must do.  It is true in the context of false *statements* that a party claiming fraud must explain why the
28    alleged statement was false when it was made and that simply pointing to subsequent, inconsistent statements or actions is
often insufficient in this regard.  See GlenFed, 42 F.3d at 1548-49.  However, in the context of false *promises*, the inquiry

1    accompanied by the who, what, when, where, and how of the misconduct charged.").  Accordingly, this

2    claim is DISMISSED with leave to amend.

3                    **3.      Fraudulent Concealment**

4            Gerawan claims that Rehrig fraudulently concealed the existence of the '293 Patent and the

5    Second Generation Harvest Tote.  Rehrig moves to dismiss these claims on the grounds that Gerawan

6    has failed to allege facts demonstrating that Rehrig had a duty to disclose this information to Gerawan

7    as a mere business partner in the Harvest Tote.

8            In California, a claim for fraudulent concealment consists of five elements: "(1) the defendant

9    must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to

10   disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the

11   fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and

12   would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result

13   of the concealment or suppression of the fact, the plaintiff must have sustained damage." Kaldenbach

14   v. Mutual of Omaha Life Ins. Co., 178 Cal. App. 4th 830, 850 (Ct. App. 2009) (citations and internal

15   quotation marks omitted).  Because a claim for fraudulent concealment, like a claim for false promise,

16   is grounded in fraud, it is subject to the heightened pleading standard of Rule 9(b).  See Grant v. Aurora

17   Loan Servs., 736 F. Supp. 2d 1257, 1273 (C.D. Cal. 2010).

18           There are four circumstances in which a duty to disclose may arise such that nondisclosure or

19   concealment constitutes actionable fraud: (1) when a fiduciary relationship exists between the parties;

20   (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when

21   the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes a

22   partial representation to the plaintiff while suppressing other material facts.  See LiMandri v. Judkins,

23   52 Cal. App. 4th 326, 336 (Ct. App. 1997).  "The first circumstance requires a fiduciary relationship;

24   each of the other three 'presupposes the existence of some other relationship between the plaintiff and

25   _____

26   is not whether a particular statement was truthful (a matter that is typically proven by reference to external, objective facts)
     but whether a promise was genuine (a matter that often requires proof of a person's intentions and state of mind).  See Cal.

27   Civ. Code § 1710 (defining false promise as a promise "made without any *intention* of performing it") (emphasis added).
     Under Rule 9(b), "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

28   Therefore, it is sufficient at this juncture for Gerawan to generally allege that when Rehrig made its promise to Gerawan, it
     had no intention of keeping it as demonstrated by Rehrig's patent application for the Grape Lug shortly after.

1   defendant in which a duty to disclose can arise.'" <u>Deteresa v. ABC</u>, 121 F.3d 460, 467 (9th Cir. 1997)

2   (quoting <u>LiMandri</u>, 52 Cal. App. 4th at 336-37). Such a relationship must be transactional in nature.

3   <u>See</u> <u>LiMandri</u>, 52 Cal. App. 4th at 337. An example is where parties form a relationship by "entering

4   into . . . [a] contractual agreement." <u>Id.</u>

5          It is unclear on what ground Gerawan claims Rehrig had a duty to disclose the existence of the

6   '293 Patent and the Second Generation Harvest Tote; Gerawan simply states in its complaint that the

7   two companies were "business partners" and fails to provide any further explanation in its opposition.

8   (Doc. 1., Compl., ¶ 40.) To the extent that Gerawan relies solely on its contractual relationship with

9   Rehrig to establish a duty to disclose, Gerawan's allegations are deficient. Gerawan fails to allege any

10  specific facts demonstrating that Rehrig had exclusive knowledge of the '293 Patent or the Second

11  Generation Harvest Tote; that Rehrig *actively* tried to conceal the existence of the '293 Patent or the

12  Second Generation Harvest Tote; or that Rehrig made some partial representation to Gerawan relating

13  to the '293 Patent or the Second Generation Harvest Tote. Indeed, at first blush, the first two scenarios

14  appear to be plainly implausible in light of the fact that recording a patent with the U.S. Patent Office

15  constitutes notice to the world of its existence, <u>see</u> <u>Gen. Bedding Corp. v. Echevarria</u>, 947 F.2d 1395,

16  1397 (9th Cir. 1991), and the fact that Rehrig presumably sold the Second Generation Harvest Tote to

17  the general public. Therefore, the only question remaining is whether a fiduciary relationship existed

18  between the parties by virtue of the two being "business partners."

19          A fiduciary relationship is "not necessarily created when one party entrusts valuable intellectual

20  property to another for commercial development in exchange for the payment of compensation [that is]

21  contingent on commercial success." <u>City of Hope Nat'l Med. Ctr. v. Genentech, Inc.</u>, 43 Cal. 4th 375,

22  391 (2008). If, however, the arrangement arises to a "joint venture," a fiduciary relationship is created

23  among its participants as a matter of law. <u>Id.</u> at 386. <u>See</u> <u>Weiner v. Fleischman</u>, 54 Cal. 3d 476, 482

24  (1991) ("[J]oint venturers are fiduciaries with a duty of disclosure and liability to account for profits.")

25  (quoting 9 Witkin, Summary of Cal. Law (9th ed. 1989) Partnership, § 19, at 418). Under California

26  law, "[a] joint venture exists when there is an agreement between the parties under which they have a

27  community of interest, that is, a joint interest, in a common business undertaking, an understanding as

28  to the sharing of profits and losses, and a right of joint control." <u>Connor v. Great Western Sav. & Loan</u>

1    Assoc., 69 Cal. 2d 850, 863 (1963) (citation and internal quotation marks omitted).  Accord Orosco v.

2    Sun-Diamond Corp., 51 Cal. App. 4th 1659, 1666 (Ct. App. 1997).

3         As currently pled, the complaint falls short of alleging the existence of a joint venture between

4    Gerawan and Rehrig.  Gerawan alleges the following facts with respect to the Harvest Tote Agreement:

5    (1) Ray Gerawan provided the initial design of the Harvest Tote; (2) Gerawan agreed to share the costs

6    of patenting the Harvest Tote; (3) patent claims relating to the Harvest Tote were to be jointly owned;

7    (4) Rehrig was granted an exclusive license to sell the Harvest Tote; and (5) Rehrig was to pay royalties

8    to Gerawan from sales of the Harvest Tote.  When viewed in the light most favorable to Gerawan, these

9    facts arguably demonstrate a common business undertaking and an understanding as to the sharing of

10   profits, but there are no facts regarding joint control of the endeavor.  This precludes a finding of a joint

11   venture.  See Orosco, 51 Cal. App. 4th at 1666; Wiltsee v. California Employment Commission, 69 Cal.

12   App. 2d 120, 123 (Ct. App. 1945) (an interest in profits unconnected to any power of control does not

13   make one a joint adventurer).

14        Accordingly, in the absence of facts showing a duty to disclose the existence of the '293 Patent

15   or the Second Generation Harvest Tote, Gerawan's claim for fraudulent concealment is DISMISSED

16   with leave to amend.

17        **4.**     **Unjust Enrichment**

18        Gerawan claims that Rehrig was unjustly enriched because it failed to pay Gerawan royalties

19   from sales of the Harvest Tote and the Second Generation Harvest Tote.  Rehrig argues that there is no

20   independent, stand-alone cause of action for unjust enrichment in California.  To the extent that there

21   is, Rehrig argues that Gerawan's claim for unjust enrichment is either defeated by the existence of the

22   Harvest Tote Agreement or preempted by federal patent law.

23        California courts are split as to whether unjust enrichment constitutes a stand-alone cause of

24   action.  Some courts have recognized such a claim.  See, e.g., Peterson v. Cellco Partnership, 164 Cal.

25   App. 4th 1583, 1593-94 (Ct. App. 2008); Lectrodryer v. Seoulbank, 77 Cal. App. 4th 723, 726-28 (Ct.

26   App. 2000).  Other courts have explicitly stated that "there is no cause of action in California for unjust

27   enrichment."  Melchior v. New Line Productions, Inc., 106 Cal. App. 4th 779, 793 (Ct. App. 2003).  See

28   also Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1370 (Ct. App. 2010); McBride v. Boughton,

1    123 Cal. App. 4th 379, 387 (Ct. App. 2004). These courts have explained that unjust enrichment "does

2    not describe a theory of recovery," Lauriedale Assoc. Ltd. v. Wilson, 7 Cal. App. 4th 1439, 1448 (Ct.

3    App. 1992), but rather "a general principle" that underlies "various legal doctrines and remedies[.]"

4    Melchior, 106 Cal. App. 4th at 793.

5         It appears, however, that the split is largely a dispute in semantics. See Nordberg v. Trilegiant

6    Corp., 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006). Those courts concluding that unjust enrichment

7    is not a stand-alone cause of action have typically recharacterized the claim as one for restitution. See

8    Cruz v. PacifiCare Health Sys., Inc., 30 Cal. 4th 303, 320 (2003); Durell, 183 Cal. App. 4th at 1370;

9    McBride, 123 Cal. App. 4th at 388; Lauriedale, 7 Cal. App. 4th at 1448. A claim for restitution, like a

10   claim for unjust enrichment, sounds in equity and consists of essentially the same elements: the unjust

11   retention of a benefit at the expense of another. Compare Lectrodryer, 77 Cal. App. 4th at 726 ("[T]he

12   elements of a claim of unjust enrichment [are] receipt of a benefit and unjust retention of that benefit at

13   the expense of another."); with McBride, 123 Cal. App. 4th at 388 ("Under the law of restitution, [a]n

14   individual is required to make restitution if he or she is unjustly enriched at the expense of another.")

15   (citation and internal quotation marks omitted). Therefore, for all relevant purposes, unjust enrichment

16   appears to be "synonymous" with restitution, which is a viable cause of action under California law.

17   Durell, 183 Cal. App. 4th at 1370.

18        Gerawan fails to state a cognizable claim regardless of whether its cause of action is construed

19   as unjust enrichment or restitution. Under either theory of recovery, the law operates by imposing an

20   implied or quasi-contract on the parties in order to avoid unjust enrichment. See Paracor Finance, Inc.

21   v. GE Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996); McBride, 123 Cal. App. 4th at 388, n.6. An

22   implied or quasi-contract cannot be imposed, however, where there is already a valid, express contract

23   defining the rights of the parties; the two are mutually exclusive. Berkla v. Corel Corp., 302 F.3d 909,

24   918 (9th Cir. 2002); Paracor, 96 F.3d at 1167. Therefore, a claim for unjust enrichment or restitution

25   cannot hinge upon the existence of a valid, express contract. See, e.g., Gerlinger v. Amazon, Inc., 311

26   F. Supp. 2d 838, 856-57 (N.D. Cal. 2004) (plaintiff cannot bring a claim for unjust enrichment while

27   relying on the existence of a valid contract to establish standing).

28   ///

Here, Gerawan alleges that Rehrig received an unjust benefit "by not paying Gerawan royalties due from sales of the Harvest Tote and of the Second Generation [Harvest] Tote." (Doc. 1, Compl., ¶ 36.) In order for this to constitute an unjust benefit, there must first be a basis for which Gerawan is entitled to the royalties such that Rehrig's retention of the royalties is unjust. The only basis alleged, or at least the only one that can be reasonably inferred from the complaint, is that under the Harvest Tote Agreement, the parties were to share ownership in the Harvest Tote and Rehrig was to pay royalties from sales of the Harvest Tote. However, if Gerawan relies on the existence of the Harvest Tote Agreement to show that it was entitled to royalty payments, it cannot then turn around and argue that no agreement exists such that an implied or quasi-contract should now be imposed. This tension within Gerawan's claim is fatal to the claim's viability. See Paracor, 96 F.3d at 1167; Gerlinger, 311 F. Supp. 2d at 856. Accordingly, this claim is DISMISSED with leave to amend.[4]

## 5.    Unfair Competition Under Section 17200

Gerawan claims that Rehrig's conduct constitutes unfair competition in violation of California Business and Professions Code Section 17200. Rehrig argues, among other things, that Gerawan fails to state a claim under Section 17200 because Gerawan fails to allege with particularity the existence of an unlawful, unfair, or fraudulent business practice.

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. Because the statute is written in the disjunctive, each prong of the UCL is a "separate and distinct theory of liability." Kearns, 567 F.3d at 1127. In other words, the UCL "applies separately to business acts or practices that are (1) unlawful, (2) unfair, or (3) fraudulent." Clark v. Countrywide Home Loans, Inc., 732 F. Supp. 2d 1038, 1050 (E.D. Cal. 2010) (citation omitted).

///

---

[4] In its opposition, Gerawan asserts that in addition to withholding royalty payments, Rehrig was unjustly enriched by the exclusive ownership it enjoyed over the Second Generation Harvest Tote. This assertion does not alter the Court's analysis for two reasons. First, Gerawan failed to plead this in its complaint. In its complaint, Gerawan simply alleged that Rehrig was unjustly enriched by its failure to pay Gerawan royalties. (Doc. 1, Compl., ¶¶ 36-37.) Second, Gerawan fails to allege any facts demonstrating that it is entitled to share in the ownership of the Second Generation Harvest Tote in the absence of the Harvest Tote Agreement. Therefore, Gerawan's quasi-contract claim regarding ownership over the Second Generation Harvest Tote fails for the same reason discussed with respect to Gerawan's quasi-contract claim for royalties. See Paracor, 96 F.3d at 1167; Gerlinger, 311 F. Supp. 2d at 856.

With respect to the "unlawful" prong, the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  See Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  As to the "unfair" prong, a business practice is unfair when it "offends an established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008) (quoting People v. Casa Blanca Convalescent Homes, Inc., 159 Cal. App. 3d 509, 530 (Ct. App. 1984)).  Finally, with respect to the "fraudulent" prong, a business practice is fraudulent "where members of the public are likely to be deceived."  Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1152 (9th Cir. 2008) (citation omitted).

It is unclear on which prong Gerawan rests its UCL claim.  Indeed in its opposition, Gerawan simply asserts that its "Section 17200 claim rests on a wide range of actions touching upon patents, business collaboration, product design collaboration, competition in the marketplace and payment of royalties due."  (Doc. 16, Pl.'s Opp'n, at 9.)  From what the Court can discern, it appears that Gerawan rests its UCL claims on the "unlawful" prong of the statute in that Gerawan argues that its allegations of reverse palming off and tortious conduct violate the UCL.  However, because Gerawan fails to state a claim in any of those respects, Gerawan similarly fails to state a claim under the UCL.  See Krantz v. Bt Visual Images, 89 Cal. App. 4th 164, 178 (Ct. App. 2001) (where a UCL claim is entirely derivative of another cause of action, it stands or falls with the underlying claim).  Accordingly, Gerawan's claim under the UCL is DISMISSED with leave to amend.

### 6.    Accounting

Gerawan seeks an accounting of Rehrig's profits and the unpaid royalties due from sales of the Harvest Tote and the Second Generation Harvest Tote.  An accounting is a derivative action, however, and it must be based on other claims.  Janis v. Cal. State Lottery Commission, 68 Cal. App. 4th 824, 833-34 (Ct. App. 1998).  Because Gerawan has failed to state a claim for profits and unpaid royalties, Gerawan is not entitled to an accounting.  See id. at 834.  Accordingly, this claim is DISMISSED with leave to amend.

### 7.    Statute of Limitations

A plaintiff must bring a claim within the relevant limitations period, which begins to run upon

accrual of the cause of action.  See Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (2005).  A cause of action generally accrues "'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.'"  Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999) (quoting 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 459, at 580).  In other words, under the general rule, a cause of action accrues "'when [it] is complete with all of its elements'–those elements being wrongdoing, harm, and causation."  Pooshs v. Philip Morris USA, Inc., 51 Cal. 4th 788, 797 (2011) (quoting Norgart, 21 Cal. 4th at 397).

    "An important exception to the general rule of accrual is the 'discovery rule[.]'"  Fox, 35 Cal. 4th at 807.  Under the discovery rule, accrual is delayed "until the plaintiff discovers, or has reason to discover, the cause of action."  Id. (citations omitted).  "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its [generic] elements,'" that is wrongdoing, harm, and causation.  Id. (quoting Norgart, 21 Cal. 4th at 398).  The policy underlying the discovery rule is to mitigate the harshness of the general rule of accrual, which would otherwise allow the limitations period to expire before a plaintiff has or should have discovered a latent injury and its cause.  Pooshs, 51 Cal. 4th at 797-98.

    It is clear here that under the general rule of accrual, the majority of Gerawan's state law and common law claims are untimely.  The factual underpinnings of Gerawan's claims are: (1) the parties' Harvest Tote Agreement in 1993; (2) Rehrig's patent application for the '293 Patent in 1993; (3) the issuance of the '293 Patent to Rehrig in 1995; (4) the discontinuance of the royalty payments related to the Harvest Tote beginning in 2001; and (5) the commercialization of the Second Generation Harvest Tote, the date of which the complaint does not provide.  With the exception of the commercialization of the Second Generation Harvest Tote, all of these events plainly occurred at least nine years prior to the initiation of this suit on July 29, 2011.  This far exceeds the three-year statute of limitations period for false promise, fraudulent concealment, and conversion, see Cal. Code Civ. P. § 338(c)-(d); the four-year statute of limitations period for unfair competition under the UCL, see Cal. Bus. & Prof. Code § 17208; and the limitations periods for unjust enrichment and accounting, which adopt the limitations period of the underlying claim, see Fed. Deposit Ins. Corp. v. Dintino, 167 Cal. App. 4th 333, 347-48 (Ct. App. 2008) (unjust enrichment claim grounded in a mistake is governed by the three-year statute

1    of limitations period for fraud or mistake); <u>Jefferson v. J. E. French Co.</u>, 54 Cal. 2d 717, 718-19 (1960)

2    (accounting is governed by the statute of limitations for the underlying claim).

3       The dispositive question, then, is whether Gerawan has sufficiently invoked the discovery rule

4    to resuscitate its otherwise untimely claims. "In order to rely on the discovery rule for delayed accrual

5    of a cause of action, '[a] plaintiff whose complaint shows on its face that [its] claim[s] would be barred

6    without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner

7    of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" <u>Fox</u>,

8    35 Cal. 4th at 808 (quoting <u>McKelvey v. Boeing North American, Inc.</u>, 74 Cal. App. 4th 151, 160 (Ct.

9    App. 1999)) (emphasis in the original). The burden is "on the plaintiff to 'show diligence;' 'conclusory

10    allegations' will not withstand [a motion to dismiss]." <u>Id.</u>

11       Gerawan only alleges two facts in its complaint relating to the discovery rule. First, Gerawan

12    alleges that from 2001 to 2008, it believed that sales of the Harvest Tote had fallen to the point where

13    no royalty payments were due. Second, Gerawan alleges that around August 2008, it discovered that

14    Rehrig had in fact made significant sales of the Harvest Tote after 2001 and had developed the Second

15    Generation Harvest Tote. From these two facts, Gerawan argues in its opposition that it discovered its

16    causes of action only in August 2008, and therefore, under the discovery rule, its causes of action began

17    to accrue only at that point.

18       While Gerawan's allegations touch upon the discovery rule in a general sense, the allegations

19    fall short in terms of both scope and specificity to invoke the exception to the general rule of accrual.

20    For example, Gerawan fails to explain how it discovered the fact that Rehrig made significant sales of

21    the Harvest Tote after 2001 and developed the Second Generation Harvest Tote. Gerawan also fails to

22    explain the circumstances in which it discovered the existence of the '293 Patent. There are no facts

23    regarding the "time" or "manner" in which Gerawan made this discovery, nor are there any facts as to

24    why Gerawan was unable to make this discovery any earlier than it did "despite reasonable diligence."[5]

25    <u>Fox</u>, 35 Cal. 4th at 808.

26    ///

27

28       [5] In its opposition, Gerawan offers an explanation as to why it could not be expected to have discovered the '293 Patent any earlier than it did. This explanation must be sufficient pled in its complaint, not raised for the first time in its opposition. <u>See</u> <u>Fox</u>, 35 Cal. 4th at 808.

Accordingly, Gerawan's state law and common law claims, with the exception of those that are predicated on the commercialization of the Second Generation Harvest Tote, are untimely on their face and must be dismissed for this reason, in addition to any other reason already set forth above.[6]

**C.     Leave to Amend**

Gerawan will be afforded the opportunity to file an amended complaint. See Cook, Perkiss & Liehe, Inc., 911 F.2d at 247.  However, Gerawan should file an amended complaint only if it is able to adequately address the deficiencies identified in this order in good faith.  Likewise, Rehrig should file an attack on any amended complaint Gerawan elects to file only if Rehrig's arguments are strong and substantive.  This Court simply no longer has the resources to revisit pleadings repeatedly.  Both parties are reminded of their obligations under Federal Rule of Civil Procedure 11.

**IV.     CONCLUSION**

In accordance with the above, this Court:

1.     DENIES Rehrig's motion to dismiss with respect to Gerawan's claim for correction of inventorship under 35 U.S.C. § 256;

2.     GRANTS Rehrig's motion to dismiss with respect to Gerawan's Lanham Act claim for unfair competition under 15 U.S.C. § 1125(a) without leave to amend;

3.     GRANTS Rehrig's motion to dismiss with leave to amend in all other respects; and

4.     ORDERS Gerawan to file and serve any amended complaint it elects to submit by no later than March 23, 2012.

IT IS SO ORDERED.

Dated:     **March 2, 2012**                         **/s/ Lawrence J. O'Neill**
                                                UNITED STATES DISTRICT JUDGE

---

[6] Rehrig argues that the discovery rule does not apply to claims under the UCL, and therefore this claim should be dismissed with prejudice.  There appears to be some disagreement among California courts on this issue.  See Broberg v. The Guardian Life Ins. Co. of America, 171 Cal. App. 4th 912, 920-21 (Ct. App. 2009).  Nevertheless, this Court need not reach that issue now because Gerawan has, in any event, failed to invoke the discovery rule at this time.

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GERAWN FARMING, INC.,                    Case No. 1:11-cv-01273 LJO BAM

12            Plaintiff,                       ORDER ON DEFENDANT'S MOTION FOR
                                              SUMMARY JUDGMENT
13       v.
                                              (Doc. 69)
14   REHRIG PACIFIC COMPANY,

15            Defendant.

16   _____/

17       Pending before the Court is Defendant Rehrig Pacific Company's ("Defendant's" or "Rerig's")

18   motion for summary judgment.  Plaintiff Gerawan Farming, Inc., ("Plaintiff" or "Gerawan") has filed

19   an opposition to the motion, and Defendant has filed a reply.  Having carefully considered the parties'

20   submissions and the entire record in this case, the Court GRANTS IN PART and DENIES IN PART

21   Defendant's motion for summary judgment.

22   I.   BACKGROUND

23       A.   Factual Background

24       Plaintiff is the nation's largest grower of peaches, plums, and nectarines and is also one of the

25   nation's largest growers of table grapes.  Defendant is a manufacturer of plastic-molded containers for

26   industrial use.  This case concerns a dispute between the two over the patent and ownership interests in

27   three containers used for harvesting fruit: (1) the Grape Lug; (2) the Harvest Tote; and (3) the Second

28   Generation Harvest Tote.

### 1.    The Grape Lug

In March 1992, Cory Phillips ("Mr. Phillips"), a Marketing Representative for Rehrig, began researching and marketing a durable container for storing and transporting grapes. Mr. Phillips spoke with industry experts, researched then-existing agricultural containers, and called potential users of the product. In the subsequent months, Jeff Ackerman ("Mr. Ackerman"), a Design Engineer for Rehrig, and William Apps ("Mr. Apps"), Head of New Product Development for Rehrig, joined Mr. Phillips in the project. The three worked to market and design a mold for a grape container, which would later become known as the "Grape Lug."

The project progressed from 1992 through 1993, and included the following notable events. In December 1992, Rehrig drafted a preliminary memorandum regarding the Grape Lug that contained general dimensions and price proposals for the product. In February and May 1993, Rehrig drafted production studies for the Grape Lug. By June 14, 1993, Rehrig had fully engineered drawings of the Grape Lug depicting the design and specific dimensions of the container. Also, on or around that date Rehrig ordered the mold for the Grape Lug. On July 1, 1993, Rehrig sent a proposal of the Grape Lug to Sun World, a potential customer.

In addition to its efforts to sell the Grape Lug, Rehrig sought to patent the product. On July 8, 1993, Rehrig authorized its patent counsel to initiate a patentability search on the Grape Lug. Rehrig ultimately filed a patent application in August 1993, identifying Mr. Ackerman as the sole inventor of the Grape Lug. However, a few months later Mr. Phillips and Mr. Apps were added to the application as inventors. On May 16, 1995, the U.S. Patent Office issued a patent for the Grape Lug. The patent, U.S. Patent No. 5415293 ("the '293 Patent"), identified three individuals as co-inventors of the Grape Lug: Mr. Ackerman, Mr. Apps, and Mr. Phillips.

At some point in 1993, Mr. Phillips contacted Gerawan and arranged a meeting to gauge the company's interest in the Grape Lug. The parties dispute when the meeting actually occurred; Rehrig asserts that the meeting occurred in late July 1993, while Gerawan asserts that the meeting occurred in June or early July 1993. In any event, at the meeting Mr. Phillips discussed the Grape Lug with Dave Dever ("Mr. Dever") and Ray Gerawan ("Mr. Gerawan") from Gerawan. Mr. Gerawan and Mr. Dever reviewed preliminary design drawings of the Grape Lug, but ultimately concluded that their company

1   was not interested in the grape container.  Mr. Gerawan and Mr. Dever did, however, express interest

2   in developing a picking bin for harvesting stone fruit for which Mr. Gerawan had a prior conception.

3   The picking bin would later become known as the "Harvest Tote."

4              **2.       The Harvest Tote**

5              On September 15, 1993, Gerawan and Rehrig signed a confidential disclosure agreement ("the

6   1993 Confidentiality Agreement") to facilitate the two companies' efforts in developing the Harvest

7   Tote.  Under the 1993 Confidentiality Agreement, Gerawan agreed to disclose what it considered to be

8   trade secrets, patentable information, and other proprietary materials relating to the Harvest Tote.  In

9   exchange, Rehrig agreed not to disclose the information to others and to use the information only to

10  develop the Harvest Tote for Gerawan.  Moreover, Rehrig agreed that the rights to any improvements

11  or modifications to the Harvest Tote and any inventions conceived as a result of reviewing Gerawan's

12  materials would be assigned to Gerawan.

13             In the ensuing months, from October 1993 to July 1994, Gerawan and Rehrig sought to reach

14  an agreement over the sales and marketing of the Harvest Tote.  The companies exchanged numerous

15  drafts of an Agreement in Principle, which included various terms such as: (1) Gerawan agreed to pay

16  for the mold of the Harvest Tote; (2) Rehrig agreed to engineer and manufacture the Harvest Tote to

17  Gerawan's specifications; (3) Gerawan agreed to provide Rehrig an exclusive license to manufacture

18  the Harvest Tote; (4) Rehrig agreed to pay Gerawan royalties from the sales of the Harvest Tote; and

19  (5) Rehrig agreed to refrain from improving the Harvest Tote for anyone besides Gerawan.  However,

20  it is unclear whether a final and firm agreement was ever reached.  Gerawan maintains that one was,

21  while Rehrig asserts that one was not.  There is no signed copy of any final "Agreement in Principle"

22  between the two companies.

23             Whatever the status of an agreement was, Gerawan did agree to buy the mold and Rehrig did

24  agree to pay royalties to Gerawan from sales of the Harvest Tote.  Sales of the Harvest Tote began in

25  the middle of 1994, but no patent was ever filed for the Harvest Tote.

26             **3.       The Second Generation Harvest Tote**

27             In or around 2000, Rehrig began to discuss with Gerawan the possibility of producing a next

28  generation Harvest Tote ("the Second Generation Harvest Tote"), and by 2002, Gerawan understood

1    that Rehrig was actually preparing to begin design work on the Second Generation Harvest Tote. To

2    express its interest in participating in the designing of the Second Generation Harvest Tote, Gerawan

3    sent an email to Rehrig on January 14, 2002. However, for reasons that are still unknown, the parties

4    never met to discuss the Second Generation Harvest Tote and Rehrig proceeded to design the Second

5    Generation Harvest Tote on its own. Meanwhile, sales of the original Harvest Tote came to an end in

6    or around September 2002.

7         Rehrig began production of the Second Generation Harvest Tote in March 2003. Though it is

8    unclear which features, if any, of the Harvest Tote were carried over to the Second Generation Harvest

9    Tote, the Second Generation Harvest Tote does differ from the Harvest Tote in many significant ways.

10   In particular, the Second Generation Harvest Tote: (1) has an exterior rib structure; (2) does not have

11   hollow corners; (3) has exterior sliders; (4) is not made with double thick material; (5) has a contoured

12   bottom; (6) has a stacking ledge on all four sides; (7) has an open corner design; and (8) has an option

13   for a plastic handle.

14        Although Rehrig openly advertised the Second Generation Harvest Tote, there is a dispute as

15   to whether Gerawan was actually aware that Rehrig had begun selling the Second Generation Harvest

16   Tote. For example, on April 1, 2003, George Papangellin ("Mr. Papangellin") of Gerawan told Jon

17   Kalin ("Mr. Kalin") at Rehrig via email that one of Gerawan's affiliates in Mexico, Grupo Alto, had

18   expressed interest in the Second Generation Harvest Tote and might want to buy it the following year.

19   Although the email makes clear that Mr. Papangellin was aware that Rehrig was designing the Second

20   Generation Harvest Tote, there is no indication that Mr. Papangellin was aware of the fact that it was

21   actually available for sale already.

22        Similarly, from 2004 to 2006, Mr. Gerawan observed harvesters using the Second Generation

23   Harvest Tote at Reedley Farms and Wawona Packing. However, Mr. Gerawan believed the containers

24   were the products of another company that had simply beaten Gerawan and Rehrig to the market. As

25   such, Mr. Gerawan did not ask Reedley Farms, Wawona Packing, or Rehrig about the containers.

26   According to Mr. Gerawan, it was not until August 2008 that he discovered the containers were made

27   by Rehrig. Mr. Gerawan maintains that a representative at a packing company told him "Rehrig" after

28   he asked who the container's manufacturer was.

**B.    Procedural History**

Plaintiff initiated this action on July 29, 2011.  After the Court granted Defendant's motion to dismiss, Plaintiff filed an amended complaint on March 23, 2012.  The amended complaint, which is presently the operative complaint, asserts the following causes of action: (1) correction of inventorship pursuant to 35 U.S.C. § 256; (2) false promise under California tort law; and (3) unfair competition in violation of California's Unfair Competition Law ("the UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and California common law.

Defendant filed the instant motion for summary judgment on February 14, 2013.  Plaintiff filed an opposition to the motion on February 28, 2013, and Defendant filed a reply on March 7, 2013.  The Court found Defendant's motion to be suitable for decision without oral argument and took the matter under submission pursuant to Local Rule 230(g).

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the case under the applicable law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party." Id.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in the original). The nonmoving party must go beyond the allegations set forth in its pleadings. See Fed. R. Civ. P. 56(c). "[B]ald assertions or a mere scintilla of evidence" will not suffice. Stefanchik, 559 F.3d at 929. Indeed, the mere presence of "some metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary judgment. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. at 587.

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. That remains the province of the jury. See Anderson, 477 U.S. at 255. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Id. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably, and therefore justifiably, be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

## III.    DISCUSSION

### A.    Correction of Inventorship

Plaintiff seeks to correct the '293 Patent and have Mr. Gerawan named as a co-inventor of the Grape Lug. Defendant responds that it is entitled to summary judgment on Plaintiff's claim for three reasons. First, Defendant argues that Plaintiff lacks standing to bring this claim. Second, Defendant contends that even if Plaintiff has standing, Plaintiff's claim for correction of inventorship is untimely and barred by the doctrine of laches. Third, Defendant argues that Plaintiff's evidence is insufficient to support its claim.

#### 1.    Standing

A plaintiff asserting a claim for correction of inventorship pursuant to 35 U.S.C. § 256 must establish standing. See Larson v. Correct Craft, Inc., 569 F.3d 1319, 1326 (Fed. Cir. 2009). In other words, "[the plaintiff] must show that [he] has suffered an injury-in-fact, that the injury is traceable to

1    the conduct complained of, and that the injury is redressable by a favorable decision." Chou v. Univ.

2    of Chicago & Arch Dev. Corp., 254 F.3d 1347, 1358 (Fed. Cir. 2001) (citations omitted).  A plaintiff

3    typically establishes standing to pursue a § 256 claim by showing that he has an expected ownership

4    interest in the patent at issue, or otherwise has a concrete financial interest in the patent.  See Larson,

5    569 F.3d at 1326-27; Chou, 254 F.3d at 1358-59.

6          Defendant maintains that Plaintiff does not have an expected ownership interest in the '293

7    Patent.  Defendant points to the general rule that absent any assignment, rights to an invention belong

8    to the inventor.  Accord Bd. of Trustees. v. Roche Molecular Sys., 131 S. Ct. 2188, 2195, 180 L. Ed.

9    2d 1 (2011).  Defendant further asserts that there is no evidence that Mr. Gerawan assigned any of his

10   rights to the '293 Patent to Plaintiff prior to filing this case.  Therefore, according to Defendant, even

11   if Plaintiff is successful in proving that Mr. Gerawan is an inventor of the Grape Lug in this case, Mr.

12   Gerawan, and not Plaintiff, will obtain an ownership interest in the '293 Patent.

13         Plaintiff counters that Mr. Gerawan's relationship with Plaintiff is so close and intertwined that

14   Mr. Gerawan is essentially Plaintiff's alter ego.  Thus, according to Plaintiff, any patent rights that Mr.

15   Gerawan obtains in this action will belong to Plaintiff as well, even absent any express assignment of

16   rights from Mr. Gerawan to Plaintiff.  Plaintiff cites LeFiell v. United States, 162 Ct. Cl. 865 (1963)[1]

17   as support for its argument.

18          In LeFiell, Cecil K. LeFiell ("Mr. LeFiell") obtained a patent for a tube tapering machine and

19   subsequently filed suit in the name of himself and his company against the United States for allegedly

20   manufacturing and using his invention without his prior authorization.  Id. at 866-67.  In response, the

21   United States moved to dismiss the company from the case, arguing that the company did not have an

22   ownership interest in the invention since its title belonged to Mr. LeFiell only.  Id. at 867.  Mr. LeFiell

23   countered that he always considered the company as the true owner of the invention, and therefore the

24   company was a proper party in the case.  See id. at 867-68.

25         The Court of Claims agreed with Mr. LeFiell.  The court reasoned that an inventor may have

---

27   [1] The holdings of the Court of Claims serve as precedential law in patent cases.  See S. Corp. v.
28   United States, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc).  Defendant has not provided, nor has
     the Court independently found, any cases showing that LeFiell is no longer good law.

such a close and intertwined relationship with a company that the inventor is essentially the alter ego of the company. Id. at 869. In those circumstances, the patent rights of the inventor belong entirely to the company, even if there has been no express assignment of rights. Id. The court concluded that Mr. LeFiell had alleged facts sufficient to show that he was the company's alter ego. According to Mr. LeFiell: (1) he was the president, general manager, and principal stockholder of the company; (2) he used the company's time and resources to develop the invention; (3) the company paid the expenses associated with securing the patent for the invention; and (4) the company received all the profits from the invention and patent. Id. at 870.

In this case, a trier of fact could reasonably conclude that Mr. Gerawan was the alter ego of Gerawan from 1993 to 1994, the time frame when the Grape Lug was allegedly invented. See Melin v. United States, 201 Ct. Cl. 748, 756 (1973) ("[I]n determining the question of ownership of a patent between a company and an employee under the 'alter ego' theory, . . . the relationship which existed between the employer and the employee at the time when the invention was made is determinative, and not the relationship at a subsequent time."). Critically, during this time frame Mr. Gerawan was the most senior officer at Gerawan, a company owned by his family. He was also one of its directors. There is some uncertainty as to how much actual managerial control Mr. Gerawan exercised, but there is evidence from which a trier of fact could conclude that Mr. Gerawan had primary responsibility for product development at the company, which included the designing of harvest containers. Moreover, Mr. Gerawan believed that his work, and any inventions derived therefrom, belonged to the company. In fact, the company, not Mr. Gerawan, received all the royalty payments generated from his work on the Harvest Tote.

Because a trier of fact could reasonably conclude that Mr. Gerawan was the alter ego of the company, the Court cannot rule as a matter of law that Plaintiff does not have an expected ownership interest in the '293 Patent. Accordingly, Defendant is not entitled to summary adjudication on the basis that Plaintiff lacks standing.

### 2. Laches

"Laches is an equitable defense that may bar an inventorship claim." Serdarevic v. Advanced Medical Optics, Inc., 532 F.3d 1352, 1358 (Fed. Cir. 2008). To establish laches, the party raising the

1 defense carries the ultimate burden of proving that the plaintiff's delay in bringing the instant action is

2 "unreasonable and inexcusable" and that the defending party has in fact suffered "material prejudice

3 attributable to the [plaintiff's] delay." Intirtool, Ltd. v. Texar Corp., 369 F.3d 1289, 1297 (Fed. Cir.

4 2004) (citation omitted).

5   "[A] delay of more than six years after the omitted inventor knew or should have known of the

6 issuance of the patent [produces] a rebuttable presumption of laches." Advanced Cardiovascular Sys.

7 v. SciMed Life Sys., 988 F.2d 1157, 1163 (Fed. Cir. 1993). Thus, if the party asserting laches is able

8 to establish that the plaintiff had actual knowledge of the disputed patent's issuance, or was aware of

9 facts that would have led a man of ordinary intelligence to inquire into the matter, it is presumed that

10 the plaintiff's delay in bringing suit was unreasonable and the defending party suffered prejudice. See

11 id. at 1161-62. The burden then shifts to the plaintiff to rebut this presumption by offering evidence

12 showing that the delay was reasonable or that the defending party has not suffered prejudice as a result

13 of the delay. Serdarevic, 532 F.3d at 1359-60. If the plaintiff does not meet its burden of production,

14 the defending party prevails. Id. at 1359.

15   Defendant attempts to establish a rebuttable presumption of laches by arguing that Plaintiff

16 knew, or a reasonable person would have known, that a patent had been issued for the Grape Lug at

17 least six years prior to initiating this action. First, Defendant notes that the '293 Patent is published by

18 the U.S. Patent Office and can be viewed, as all U.S. patents can, by the public. Second, Defendant

19 maintains that each of the nearly four million Grape Lugs purchased and used by Plaintiff from 1994

20 through 2001 was marked "patent pending" or stamped with the Grape Lug's actual patent number.

21 Defendant contends that these markings, along with any information Plaintiff would have gathered had

22 it investigated the patent status of the *Harvest Tote*, should have alerted Plaintiff more than a decade

23 ago that the '293 Patent had been issued to Defendant without naming Mr. Gerawan as a co-inventor

24 of the Grape Lug.

25   Defendant's argument falls short. As an initial matter, the public recordation of the '293

26 Patent in the U.S. Patent Office does not mean that, as a matter of law, Mr. Gerawan should have been

27 aware of the patent's issuance for the purpose of laches. See Advanced Cardiovascular Sys., 988 F.2d

28 at 1162-63 (explaining that any constructive notice provided by recording a patent in the Patent Office

1    does not impute the knowledge necessary to trigger laches).  As for the patent markings on the Grape

2    Lug, Plaintiff insists that all the Grape Lugs it purchased were marked "Patent Pending" and not with

3    the actual patent number.  In any event, even if Plaintiff knew that the Grape Lugs were marked with a

4    patent number, the issue is not what *Plaintiff* knew, but what *Mr. Gerawan* knew.  Mr. Gerawan is the

5    alleged co-inventor; therefore, it is the facts in *his* knowledge that matter.  See id. at 1163 ("[A] delay

6    of more than six years after the *omitted inventor* knew or should have known of the issuance of the

7    patent [produces] a rebuttable presumption of laches.") (emphasis added).  Defendant has not offered

8    evidence to fill the gap between Plaintiff's knowledge and Mr. Gerawan's, and has not demonstrated

9    that Mr. Gerawan was aware that the Grape Lug was patented or was being patented.[2]  Accordingly,

10   Defendant falls shy of establishing a rebuttable presumption of laches and therefore is not entitled to

11   summary adjudication on this basis.

12                           **3.      Sufficiency of Evidence**

13        The issuance of a patent "creates a presumption that the named inventors are the true and only

14   inventors."  Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998) (citing

15   Hess v. Advanced Cardiovascular Sys., 106 F.3d 976, 980 (Fed. Cir. 1997)).  However, if a person not

16   named in an issued patent proves by "clear and convincing evidence" that he is a co-inventor, and that

17   he was not identified in the patent through error and without any deception intent on his part, a district

18   court may order the patent corrected.  See 35 U.S.C. § 256 (2011); Fina Oil & Chemical Co. v. Ewen,

19   123 F.3d 1466, 1472 (Fed. Cir. 1997).

20        Conception, which is the "formation in the mind of the inventor[] of a definite and permanent

21   idea of the complete and operative invention," is the touchstone of inventorship.  Burroughs Wellcome

22   Co. v. Barr Laboratories, Inc., 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).  Therefore, to be a co-inventor,

23   a person must "contribute in some significant manner to the conception of the invention."  Fina Oil &

24   Chem., 123 F.3d at 1473.  See Ethicon, 135 F.3d at 1460.  "[M]erely assisting the actual inventor after

25   conception of the claimed invention;" providing the actual inventor well-known principles or state of

26   _____

27        [2] The Court acknowledges the tension of viewing Mr. Gerawan as the alter ego of Plaintiff in
     the context of standing, but separate entities in the context of laches.  Nevertheless, the question of
28   assignment and the question of actual knowledge are distinct.

1  the art without ever having a firm and definite idea of the claimed combination as a whole; or reducing

2  the actual inventor's idea to practice through ordinary skill in the art does not make one a co-inventor.

3  Ethicon, 135 F.3d at 1460.

4  A co-inventor need not contribute to the conception of every claim contained in a patent; nor

5  must he make the same amount of contribution as another inventor.  See 35 U.S.C. § 116.  Rather, "[a]

6  contribution to one claim is enough."  Ethicon, 135 F.3d at 1460 (citation omitted).  Thus, in the end,

7  "the critical question is who conceived, as the term is used in the patent law, the subject matter of the

8  claims at issue."  Id.

9  In this case, the concepts that are at issue are the Grape Lug's (1) lid design; (2) use of holes

10 for ventilation; (3) corner design and structure; and (4) placement of holes in the container's floor for

11 cooling.  Defendant maintains that it conceived these concepts, as well as every other concept tied to

12 the Grape Lug in the '293 Patent, prior to any discussion or meeting it had with Plaintiff.  According

13 to Defendant, its first meeting with Plaintiff occurred in late July 1993.  Defendant stresses that prior

14 to that point it had already (1) engineered drawings of the Grape Lug's body and lid (June 14, 1993);

15 (2) sent a proposal of the Grape Lug to Sun World (July 1, 1993); (3) authorized its patent counsel to

16 initiate a patentability search on the Grape Lug (July 8, 1993); and (4) received three part sheets for

17 the Grape Lug (July 22, 1993).

18 Defendant's engineered drawings of the Grape Lug, dated June 14, 1993, are critical pieces of

19 evidence.  According to Mr. Phillips, the engineered drawings of the Grape Lug depict the final form

20 and dimensions of the Grape Lug as it is embodied in the '293 Patent.  Notably, the drawings include

21 (1) a lid; (2) structured corners; and (3) a configuration of holes in the container's sides and floor (i.e.,

22 the very same aspects that Plaintiff now claims that Mr. Gerawan contributed to the Grape Lug).  Mr.

23 Phillips asserts that Defendant generally creates such drawings so that its tool builder can fabricate a

24 final mold for the product.  Mr. Phillips thus opines that Defendant ordered a mold for the Grape Lug

25 on or around June 14, 1993.

26 Defendant's proposal to Sun World, which is dated July 1, 1993, is also notable.  The proposal

27 touted the Grape Lug's ventilation and stacking ability.  The proposal materials also included pictures

28 of the Grape Lug that clearly depicted (1) a lid; (2) structured corners; and (3) a configuration of holes

1  in the container's sides and floor.  In fact, the pictures included in the proposal materials are virtually

2  identical to the ones used in the '293 Patent.

3       Taken together, Defendant's evidence demonstrates that Defendant's conception of the Grape

4  Lug was firm and definite by June 14, 1993.  Thus, it became Plaintiff's burden in opposing summary

5  judgment to offer clear and convincing evidence showing one of two things: (1) the Grape Lug shown

6  in Defendant's engineered drawings is different from the Grape Lug embodied in the '293 Patent; or

7  (2) Mr. Gerawan made his alleged inventive contributions to the Grape Lug sometime *before* June 14,

8  1993.  Cf. Ethicon, 135 F.3d at 1460 (assisting an actual inventor after conception of the invention has

9  already occurred does make one a co-inventor).  Plaintiff attempts to do the latter in its opposition and

10  relies on Mr. Dever's notes and testimony as support for its argument.  However, as explained below,

11  Plaintiff's reliance on this evidence is ultimately misplaced.

12       The first issue that Plaintiff must offer clear and convincing evidence on is the timing of the

13  first meeting between Mr. Gerawan and Mr. Phillips.  This is the only meeting between Plaintiff and

14  Defendant that could have occurred sometime before June 14, 1993.  Mr. Dever asserted that he and

15  Mr. Gerawan first met with Mr. Phillips "in June or early July 1993."  (Doc. 77 ¶ 3; see also Doc. 81,

16  Ex. C at 31:12-17.)  The next meeting between Mr. Gerawan and Defendant, according to Plaintiff's

17  own evidence, did not take place until mid or late July 1993.

18       Mr. Dever's testimony that the first meeting took place "in June or early July 1993" does not,

19  in of itself, show that Mr. Gerawan met with Defendant before June 14, 1993.  However, Mr. Dever

20  also testified during his deposition that at the parties' first meeting, Mr. Phillips showed Mr. Gerawan

21  design drawings of the Grape Lug in which the Grape Lug did *not* have a lid:

22      Q:    The design that Mr. Phillips said he had been working on when you said he had
23      been working on when you first met with him in June, July 1993, did he say it was one-
    or two-piece?

24      A:    I don't recall if he specifically stated it was one-piece or two-piece.  I remember
    just a picture design, and I only remember it being a one-piece.  It didn't have a lid on it
25      at that time.

26      Q:    So, at the very first meeting you had with Mr. Phillips, you remember him
    showing you a design which did not have a lid?

27      A:    Right.  Correct.

28

(Doc. 81, Ex C at 42:4-14.)  This testimony, along with Mr. Dever's assertion that the parties first met in June or early July 1993, could lead a trier of fact reasonably to conclude that Mr. Gerawan did in fact meet with Defendant sometime before June 14, 1993, and at a point when the Grape Lug had not yet been fully conceived.

It is, however, not enough to show that the parties met before June 14, 1993.  The second issue that Plaintiff must offer clear and convincing evidence on is the substance of the parties' discussions at the meeting.  Specifically, Plaintiff must show that at the meeting, Mr. Gerawan made some inventive contribution to the Grape Lug as embodied in the '293 Patent.  See Ethicon, 135 F.3d at 1460.  Here, Plaintiff's evidence falls short.

Plaintiff relies almost exclusively on Mr. Dever's testimony on this issue.  But Mr. Dever's testimony is neither clear nor convincing in showing that Mr. Gerawan made an inventive contribution to the Grape Lug at the parties' first meeting.  Although Mr. Dever testified in conclusory fashion that Mr. Gerawan "provided" Defendant with the ideas for a lid design, ventilation holes, and structured corners, Mr. Dever did not testify (nor can it be readily inferred from his testimony) that Mr. Gerawan provided Rehrig with any of these ideas at the parties' first meeting, as opposed to at one of the other 50 meetings that Mr. Gerawan subsequently had with Mr. Phillips:

> Q:    What was the substance of the conversation [during the first meeting with Rehrig in June or July 1993]?  Can you remember any of the specifics?
>
> A:    [Mr. Phillips] showed me a design, a drawing, of the grape lug, and we chatted about that.  And then – we didn't really have – ourselves, Gerawan Farming, didn't have a lot of interest in the grape box that they were designing, but we had an interest in a harvest tote, and so we chatted about a harvest tote.
>
> Q:    What did you tell Mr. Phillips about the design he showed you for the grape crate?
>
> A:    Specifically?
>
> Q:    Yes.
>
> A:    That we didn't see that there was a need for it at the time, is my recollection.
>
> Q:    Did you tell him anything about the design?
>
> A:    About the – good, bad or indifferent, is that what you're referencing?
>
> Q:    Yes.

1    A:      I don't recall telling him anything specific about the design of it, whether it was
good, bad or indifferent.

2                                               * * *

3    Q:      Do you recall ever providing any designs for a grape crate to Rehrig in the June,
July 1993 time frame?

4

5    A:      Designs for a grape crate?

6    Q:      Yes.

7    A:      Not that I recall.

8    Q:      Are you aware of anyone else at Gerawan that provided designs for a grape
crate to Rehrig in the June or July 1993 time frame?

9
A:      Not to my knowledge.
10
Q:      Did you, in the June or July 1993 time frame, provide any specifications for a
11   grape crate to Rehrig?

12   A:      Not to my knowledge.

13   Q:      And, to your knowledge, did anyone else at Gerawan Farming in the June or
July 1993 time frame provide any specifications for a grape crate to Rehrig?
14
A:      Again, not to my knowledge.  Sounded like the same question to me, but.
15
Q:      The first question was related to you personally and then I just wanted to know
16   if you are aware of anyone else at Gerawan who had done that.

17   A:      Oh, okay.

18   Q:      So, you know, just to be clear, are you aware of anyone at Gerawan, yourself or
any other person working for Gerawan, that provided any specifications to Rehrig for a
19   grape crate in the June or July 1993 time frame?

20   A:      Not to my knowledge.

21   (Doc. 81, Ex. C at 31:18-32:13, 37:8-38:12; 46:22-47:6.)

22           Mr. Gerawan's deposition testimony is also far from enlightening on this issue.  Mr. Gerawan,

23   the supposed co-inventor of the Grape Lug, testified that he could not recall which specific inventive

24   design features he contributed to the Grape Lug, whether at his first meeting with Mr. Phillips in June

25   or at some other time:

26   Q:      Did you conceive any of the specific design features of this product pictured in
Exhibit 9 [the Grape Lug]?
27
A:      To the best of my knowledge what specifically was I involved in the design of
28   that, I don't recall.  There were discussions on it.  As to what specifics, I don't recall.

Q:      And I want the record to be clear, when I said you, I was talking about you personally.

A:      Right.

(Doc. 69-7, Ex. D at 24:3-11.)

Thus, having reviewed the evidence presented as a whole, the Court concludes that Plaintiff has failed to offer clear and convincing evidence demonstrating that Mr. Gerawan made an inventive contribution to the Grape Lug as embodied in the '293 Patent.  Accordingly, Defendant is entitled to summary adjudication of this claim.

**B.      False Promise**

Plaintiff alleges that Defendant made two false promises.  First, Plaintiff alleges that Defendant falsely promised that the parties would jointly own any patent claims related to the Harvest Tote. (See Doc. 26 ¶¶ 10, 11, 30.)  Second, Plaintiff alleges that Defendant falsely promised that it would not use Plaintiff's confidential proprietary materials for any purpose other than to develop and sell the Harvest Tote for Plaintiff.  (Id. ¶¶ 10, 30.)

A false promise is defined as "[a] promise, made without any intention of performing it."  Cal. Civ. Code § 1710.  In California, a cause of action for false promise may lie where a defendant uses a false promise in order to induce the plaintiff into entering a contract.  Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996).  To prevail, the plaintiff must show that (1) the defendant made a false promise; (2) the defendant knew that the promise was false at the time it was made; (3) the defendant intended to induce the plaintiff's reliance; (4) the plaintiff actually and justifiably relied on the promise; and (5) the plaintiff suffered damages as a result of his reliance.  See Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 973-74 (1997).

**1.      Joint Ownership of Any Harvest Tote Patents**

Plaintiff's allegation that Defendant falsely promised it that the parties would jointly own any patent claims related to the Harvest Tote plainly lacks merit.  It is undisputed that the Harvest Tote has never been patented, and there is nothing to suggest that the Second Generation Harvest Tote has been patented.  Thus, Defendant could not have breached any promise to own jointly any patent claims on these products since there were never any patents to be shared in the first place.  Plaintiff does not

even address this issue, let alone attempt to argue otherwise in its opposition. Accordingly, Defendant is entitled to summary adjudication of this claim.

### 2.    Use of Proprietary Materials

As for the second alleged false promise, Defendant maintains that there is no evidence showing that it actually knew that this promise was false when it was made. In other words, Defendant argues that there is no evidence showing that it promised Plaintiff that it would not misappropriate Plaintiff's proprietary materials, while all along intending to break the promise. See Lazar, 12 Cal. 4th at 638 (to prevail on a claim for false promise, the plaintiff must prove that the defendant never actually intended to keep its promise). The Court agrees.

Plaintiff argues in its opposition that Defendant intended from the very outset to use Plaintiff's proprietary materials for other, non-sanctioned agricultural products, including the Second Generation Harvest Tote. However, Plaintiff offers no evidence of this. The only facts Plaintiff points to on this matter are: (1) Defendant does not usually share patents with its customers; and (2) in February 2002, Defendant noted that its royalty payment to Plaintiff was the largest factor affecting the Harvest Tote price. While these facts may set a general foundation for showing motive *in 2002*, they alone do not create a genuine issue of fact with respect to Defendant's intentions *in 1993*, the time when the parties reached an agreement on Plaintiff's proprietary materials. No trier of fact could reasonably infer from these two facts alone that Defendant harbored a secret intention in 1993 to take Plaintiff's proprietary materials to develop its own, unauthorized products, including the Second Generation Harvest Tote.[3] Accordingly, Defendant is entitled to summary adjudication of this claim.

### 3.    Other Promises

The Court notes parenthetically that Plaintiff maintains in its opposition that Defendant made two other false promises: (1) a promise to file patents for the Harvest Tote; and (2) a promise that any improvements to the Harvest Tote would be owned by Plaintiff. Neither of these promises is alleged

---

[3] The Second Generation Harvest Tote was developed in or around 2001, some *8 years* after the parties agreed to share Plaintiff's proprietary materials. There is no evidence showing that Defendant conceived of, let alone intended to sell, a Second Generation Harvest Tote at any point near to 1993.

1    in the operative complaint.  Moreover, the Magistrate Judge very recently denied Plaintiff's motion to

2    amend the pleadings to include these very allegations.  (See Doc. 89.[4])  The Court therefore disregards

3    Plaintiff's arguments on these issues.

4            **C.      Unfair Competition – Section 17200 and Common Law**

5            Plaintiff alleges that Defendant engaged in unfair competition in violation of the UCL , Cal.

6    Bus. & Prof. Code § 17200, *et seq.*, and California common law in two specific ways: (1) by applying

7    for patent protection over Plaintiff's proprietary design for the Harvest Tote without due attribution to

8    Mr. Gerawan; and (2) by developing and selling the Second Generation Harvest Tote based upon the

9    Harvest Tote design without ever receiving Plaintiff's authorization and without ever paying Plaintiff

10   royalties.  (Doc. 26 ¶¶ 36-37.)

11           Plaintiff's first allegation lacks merit because, as explained above, Defendant never applied for

12   patent protection for the Harvest Tote.  This, then, leaves Plaintiff's second allegation, specifically that

13   Defendant developed and sold the Second Generation Harvest Tote based on the Harvest Tote design

14   without receiving Plaintiff's authorization or paying Plaintiff any royalties.  On this issue, Defendant

15   argues that: (1) any UCL claim based on this conduct is entirely derivative of Plaintiff's other claims

16   and therefore should "rise or fall" with them; (2) any UCL claim based on this conduct is time-barred;

17   and (3) Plaintiff cannot recover the damages it requests in connection with its UCL claim.  Defendant

18   does not acknowledge the common law component of Plaintiff's claim.

19           **1.      Derivative of Other Claims**

20           It is not particularly clear what Defendant means when it says that Plaintiff's UCL claim is

21   entirely derivative of Plaintiff's other claims.  To the extent that Defendant has construed Plaintiff's

22   UCL claim as resting solely on the "unlawful" prong of the statute, it is mistaken.  The UCL prohibits

23   any unlawful, unfair or fraudulent business practice.  See Cal. Bus. & Prof. Code § 17200.  Because

24   the statute is written in the disjunctive, each prong of the UCL (i.e., unlawful, unfair, or fraudulent) is

25   a "separate and distinct theory of liability."  Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir.

26   2009).  Here, Plaintiff explicitly alleges its UCL claim under the "unfair" prong of the statute, not the

27   _____

28           [4] Plaintiff has moved for reconsideration of this order.  That motion is still pending.

1    "unlawful" prong.  (Doc. 26 ¶ 37.)

2         It is also conceivable that Defendant's "derivative" argument intended to reassert the argument

3    Defendant raised with respect to Plaintiff's claim for false promise.  Defendant argued there that there

4    is no evidence showing that Defendant used Plaintiff's proprietary materials in developing the Second

5    Generation Harvest Tote.[5]  Defendant maintains that the Harvest Tote and Second Generation Harvest

6    Tote differ significantly because the Second Generation Harvest Tote (1) has an exterior rib structure;

7    (2) has exterior sliders with better stacking ability; (3) does not have hollow corners; (4) is not made

8    with double thick material; (5) has a contoured bottom; (6) has a stacking ledge on all four sides; (7)

9    has an open corner design; and (8) has a plastic handle option.

10        There is a genuine dispute as to which features of the Harvest Tote design were carried over to

11    the Second Generation Harvest Tote and which were not.  Jon Hassel, Defendant's design engineer for

12    the Second Generation Harvest Tote, suggested in his deposition testimony that the Second Generation

13    Harvest Tote (1) has a similar footprint as the Harvest Tote; (2) stacks similar to the Harvest Tote; (3)

14    has the same ventilation percentage as the Harvest Tote; and (4) has similar holes in the bottom of the

15    container for hydrocooling as the Harvest Tote.  Mr. Hassel's deposition testimony creates a genuine,

16    fact-intensive dispute that only a trier of fact can fully resolve.  Accordingly, Defendant is not entitled

17    to summary adjudication on this basis.

18                    **2.    Statute of Limitations**

19        A plaintiff must bring a claim within the relevant limitations period, which begins to run upon

20    accrual of the cause of action.  See Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (2005).  A

21    cause of action generally accrues "'when, under the substantive law, the wrongful act is done, or the

22    wrongful result occurs, and the consequent liability arises."  Norgart v. Upjohn Co., 21 Cal. 4th 383,

23    397 (1999) (internal quotation marks and citation omitted).  In other words, under the general rule, a

24    cause of action accrues when it is complete with all of its generic elements, those being wrongdoing,

25    harm, and causation.  Id.

26    _____

27         [5] The Court did not address this argument in its analysis of Plaintiff's false promise claim

28    because the Court fully resolved that claim on other grounds.

"An important exception to the general rule of accrual is the 'discovery rule[.]'" Fox, 35 Cal. 4th at 807.  Under the discovery rule, accrual is delayed "until the plaintiff discovers, or has reason to discover, the cause of action." Id. (citations omitted).  "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its [generic] elements,'" that is wrongdoing, harm, and causation. Id. (quoting Norgart, 21 Cal. 4th at 398).  See Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1114 (1988) ("In sum, the limitations period begins when the plaintiff suspects, or should suspect, that she has been wronged.").

Here, it is clear that under the general rule of accrual Plaintiff's unfair competition claim under the UCL would be untimely.  The alleged factual underpinnings of Plaintiff's UCL claim appear to be: (1) the breach of the 1993 Confidentiality Agreement; and (2) the development and selling of the Second Generation Harvest Tote.  Both of these events occurred by 2003, over eight years before Plaintiff initiated this action.  This far exceeds the four-year statute of limitations period for claims under the UCL.  See Cal. Bus. & Prof. Code § 17208; Aryeh v. Canon Business Solutions, Inc., 55 Cal. 4th 1185, 1192 (2013).

The critical question, then, is whether Plaintiff can show that its claim accrued at a later date under the discover rule.  See Investors Equity Life Holding Co. v. Schmidt, 195 Cal. App. 4th 1519, 1533 (Ct. App. 2011) (the burden of proving delayed accrual falls on the plaintiff).  Plaintiff contends that it was only in August 2008, when Mr. Gerawan was told affirmatively that Defendant made and sold the Second Generation Harvest Tote, that Plaintiff suspected its injury.  Plaintiff therefore argues that its claim only began to accrue at that point.  Defendant, meanwhile, maintains that Plaintiff was, or at least should have been, placed on inquiry notice of any injury caused by Defendant's conduct long before 2008.

Viewed in the light most favorable to Plaintiff, the evidence in the record shows the following: (1) Plaintiff knew as of 2002 that Defendant began preparations for designing the Second Generation Harvest Tote; (2) Defendant never represented to Plaintiff that it was actually going to design and sell its own version of the Harvest Tote; (3) in 2003, Plaintiff indicated that one of its affiliates in Mexico was interested in purchasing a next generation harvest tote next year, but believed that Defendant was still in the process of designing the product; and (4) from 2004 to 2006, Mr. Gerawan observed other

harvest totes being used at other farms but did not suspect that Defendant was the producer in light of the 1993 Confidentiality Agreement. A trier of fact could reasonably conclude from these facts that Plaintiff did not suspect, nor should it have suspected, that Defendant was actually selling the Second Generation Harvest Tote on its own. In that case, the statute of limitations would not have begun to run until August 2008.

Defendant attempts to tip the scales decisively in its favor by arguing that Plaintiff knew that the Second Generation Harvest Tote was being sold as early as 2003 because Plaintiff purchased close to 2100 of them for a Mexican grower, Castelo Farms. As support for its argument, Defendant relies on the affidavit of Mr. Kalin and an invoice sent to Mr. Papangellin in April 2003. The invoice and other notes contain the code "pc002," which according to Defendant is the product code used for the Second Generation Harvest Tote. However, in his deposition Mr. Papangellin contested this, albeit indirectly. Mr. Papangellin suggested that he had only purchased original Harvest Totes for Castelo Farms:

> Q:    And so, it's fair to say that you were helping facilitate the sale of harvest totes, or potential sale of harvest totes from Rehrig to Castelo's company?
>
> A:    Which harvest tote are you talking about?
>
> Q:    Any harvest tote.
>
> A:    We had facilitated logistics for harvest totes – first generation harvest totes – the original harvest tote, to be sold and shipped to Nogales for Castelo.

(Doc. 81, Ex. E at 85:6-19.) Assuming this to be true, this testimony creates a genuine dispute of fact that only a trier of fact can resolve.

In sum, viewing all of the evidence in the light most favorable to Plaintiff, a trier of fact could reasonably conclude that Plaintiff had no reason to suspect prior to August 2008 that Defendant was selling the Second Generation Harvest Tote. If that is the case, the statute of limitations period began to run only in August 2008, thereby making Plaintiff's action timely. Accordingly, Defendant is not entitled to  summary adjudication on this basis.

### 3.    Monetary Damages

Plaintiff seeks the following monetary damages in connection with its UCL claim: (1) actual damages; (2) an accounting of Defendant's profits generated from the sales of the Harvest Tote and

1    the Second Generation Harvest Tote; (3) disgorgement of all unjust profits; and (4) punitive damages.

2    Defendant argues that the UCL does not permit such remedies.

3         While the scope of the UCL is "broad" and "sweeping," its remedies are "generally limited to

4    injunctive relief and restitution." <u>Cel-Tech Communications</u>, 20 Cal. 4th at 179-80; <u>see</u> <u>Korea Supply</u>

5    <u>Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1144 (2003). The California Supreme Court has held

6    that restitution in the context of the UCL means (1) money or property that was once in the plaintiff's

7    actual possession; or (2) money or property that the plaintiff has a "vested interest in." <u>Korea Supply</u>,

8    29 Cal. 4th at 1149. "A vested interest is one that is unconditional, absolute, and not contingent. A

9    contingent interest, on the other hand, is dependent upon an uncertain future event." <u>Pegasus Satellite</u>

10   <u>Television, Inc. v. DirecTV, Inc.</u>, 318 F. Supp. 2d 968, 979 (C.D. Cal. 2004) (internal quotation marks

11   and citations omitted).

12         It is difficult for the Court to determine which remedies are available to Plaintiff when neither

13   party has made any attempt to articulate clearly the underlying basis for Plaintiff's UCL claim. From

14   what the Court can discern, there may be two property interests at issue: (1) the right to use Plaintiff's

15   proprietary materials; and (2) the assignment rights to the Second Generation Harvest Tote. Facially,

16   these property interests could implicate Defendant's profits from the Second Generation Harvest Tote.

17   As such, the Court cautiously declines to preclude Plaintiff from recovering such as a remedy under its

18   UCL claim, at least at this time. Plaintiff is, however, not allowed to recover punitive damages under

19   its UCL claim. <u>See</u> <u>Korea Supply</u>, 29 Cal. 4th at 1144; <u>Groupion, LLC v. Groupon, Inc.</u>, 859 F. Supp.

20   2d 1067, 1083 (N.D. Cal. 2012).

21   **IV.    CONCLUSION**

22         For the reasons set forth above, the Court:

23         1.    GRANTS Defendant summary adjudication on the following claims and issues:

24               a.    Correction of inventorship pursuant 35 U.S.C. § 256;

25               b.    False promise under California law; and

26               c.    Punitive damages under the UCL.

27         2.    DENIES Defendant summary adjudication on the following claims and issues:

28               a.    Unfair competition under the UCL;

b.     Unfair competition under California common law; and

c.     Non-punitive monetary remedies under the UCL.

3.     ORDERS the parties to file a joint pretrial statement by no later than noon on Tuesday, April 16, 2013.  **The Court emphasizes that it expects the parties' positions on the remaining claims to be _precise and fully distilled_ in the joint pretrial statement. The Court will not accept a joint pretrial statement wherein the parties set forth a laundry list of issues and matters that have not been discussed between/among counsel.**

IT IS SO ORDERED.

Dated:   **April 8, 2013**                   **/s/ Lawrence J. O'Neill**
                                         UNITED STATES DISTRICT JUDGE

1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT

9         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  GERAWAN FARMING, INC.,                Case No. 1:11-cv-1273 LJO BAM

12          Plaintiff,                    ORDER ON THE PARTIES' MOTIONS IN
                                          LIMINE
13       v.

14  REHRIG PACIFIC COMPANY,               (Docs. 110-112, 114-128)

15          Defendant.

16  _____/

17       In accordance with the Court's preliminary pretrial order, Plaintiff Gerawan Farming, Inc.

18  ("Plaintiff") and Defendant Rehrig Pacific Company ("Defendant") filed motions in limine on April

19  25, 2013.  The parties filed oppositions to the motions in limine on April 30, 2013.  Having read and

20  considered the parties' submissions, the Court rules on the motions in limine as follows.

21  **A.    Plaintiff's Motions in Limine**

22       **1.    Motion in Limine No. 1 – Exclusion of Jim Nau**

23       Plaintiff moves to exclude Jim Nau from testifying at trial pursuant to Federal Rule of Civil

24  Procedure 37(c)(1).  Plaintiff argues that Defendant never disclosed Mr. Nau as a fact witness, which

25  Defendant is required to do under Federal Rule of Civil Procedure 26(a) and (e) if Defendant intends

26  to have Mr. Nau testify at trial.

27       This motion in limine is GRANTED.  It is undisputed that Defendant did not disclose Mr. Nau

28  as a fact witness under Rule 26(a) or (e).  Therefore, Defendant may not call Mr. Nau as a fact witness

1   at trial.  See Fed. R. Civ. P. 37(c)(1) ("If a party fails to . . . identify a witness as required by Rule

2   26(a) or (e), the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the

3   failure was substantially justified or is harmless).  Nothing in this order, however, precludes Defendant

4   from calling Mr. Nau on rebuttal solely for impeachment purposes.  See Fed. R. Civ. P. 26(a)(1)(A)(i)

5   (no disclosure requirement if the person is used solely for impeachment).

6       **2.**       **Motion in Limine No. 2 – Limiting Expert Opinions to Expert Reports**

7       Plaintiff moves to preclude Defendant from offering any expert opinions that have not already

8   been disclosed.  Specifically, Plaintiff argues that the trial testimony of Defendant's expert witnesses,

9   Suzanne Heinemann and William Apps, should be limited to what the experts provided in their initial

10  disclosures and expert reports.  Plaintiff insists that any other opinions should be excluded pursuant to

11  Federal Rule of Civil Procedure 37(c)(1).

12      This motion in limine is GRANTED IN PART and DENIED IN PART.  First, with respect to

13  Mr. Apps, his expert opinions, to the extent that he provides any, shall be confined to whatever he has

14  disclosed under Federal Rule of Civil Procedure 26(a)(2)(C).  Second, with respect to Ms. Heinemann,

15  her expert opinions shall be limited to her expert report *and* her deposition testimony regarding Larry

16  Gorman's supplemental expert reports.  Although Plaintiff suggests that Ms. Heinemann's deposition

17  testimony should be excluded because she failed to provide a written supplemental report on the issue,

18  whatever prejudice was caused by the lack of a written report was insignificant in light of the fact that

19  Plaintiff fully deposed Ms. Heinemann on the issue.  Moreover, as later explained in connection with

20  Defendant's motion in limine number 1, Ms. Heinemann must be permitted to testify on matters that

21  were discussed in her deposition to remedy the prejudice caused by Plaintiff's untimely submission of

22  Larry Gorman's supplemental expert report.

23      **3.**       **Motion in Limine No. 3 – Limitation on Experts**

24      Plaintiff moves to preclude Defendant from offering expert opinions from anyone other than

25  Suzanne Heinemann and William Apps.  Plaintiff argues that Ms. Heinemann and Mr. Apps were the

26  only experts Defendant disclosed pursuant to Federal Rule of Civil Procedure 26(a)(2)(A).  Plaintiff

27  therefore insists that Federal Rule of Civil Procedure 37(c)(1) precludes Defendant from introducing

28  expert opinions from anyone else.

1    This motion in limine is GRANTED. *Both parties* are precluded from offering expert opinions

2  from any witness who has not been properly disclosed as an expert pursuant to Rule 26(a)(2)(A).  See

3  Fed. R. Civ. P. 37(c)(1).

4       **4.      Motion in Limine No. 4 – Profits, Losses, Costs, and Deductions**

5       Plaintiff moves to preclude Defendant from introducing any evidence of costs associated with

6  manufacturing the Second Generation Harvest Tote.  Plaintiff argues that it requested such information

7  during discovery but Defendant failed to respond.

8       This motion in limine is GRANTED IN PART and DENIED IN PART.  Although Defendant's

9  responses are deficient, it appears that Defendant did produce some documents relating to costs of the

10 Second Generation Harvest Tote.  Moreover, the existence of certain costs such as resin appear to be

11 undisputed.  Therefore, while Defendant may not offer any evidence not produced during discovery,

12 Defendant will not be precluded from offering evidence on this matter altogether.

13      **5.      Motion in Limine No. 5 – Advertising and Marketing**

14      Plaintiff moves to preclude Defendant from offering any evidence of advertising and marketing

15 by Defendant regarding the Harvest Tote and the Second Generation Harvest Tote.  Plaintiff maintains

16 that Bill Bloch was the person most knowledgeable about the subject, yet Defendant refused to make

17 Mr. Bloch available for deposition.  Plaintiff stresses that Defendant instead had Cory Phillips and Jon

18 Kalin deposed on the issue, despite the fact that neither witness was adequately prepared to testify on

19 advertising or marketing.

20      This motion in limine is GRANTED IN PART and DENIED IN PART.  Precluding Defendant

21 from offering *any* evidence of advertising and marketing is not warranted, as there is no basis for such

22 a sweeping prelusion.  However, while Mr. Kalin and Mr. Phillips will be allowed to testify at trial on

23 the issue of Defendant's advertising and marketing efforts, neither witness will be allowed to expand

24 or change their deposition testimony.  As for Mr. Bloch, he is precluded altogether from testifying at

25 trial.  In refusing to make Mr. Bloch available for deposition, Defendant represented to Plaintiff that

26 Mr. Bloch was ill and that Defendant would not call Mr. Bloch to testify at trial.  The Court will hold

27 Defendant to that representation.

28 ///

1     **6.      Motion in Limine No. 6 – Authority to Develop and Sell the Second Generation**

2     **Harvest Tote**

3          Plaintiff moves to preclude Defendant from offering evidence as to why it believed it had the

4     authority to develop and sell the Second Generation Harvest Tote.  Plaintiff maintains that it requested

5     this information by way of interrogatory, but Defendant failed to respond.

6          This motion in limine is GRANTED IN PART and DENIED IN PART.  It appears that while

7     Defendant did not respond to Plaintiff's Interrogatory Number 22, Defendant did suggest the basis for

8     its belief that it had the authority to develop and sell the Second Generation Harvest Tote in its other

9     discovery responses.  Therefore, Defendant will not be completely precluded from offering evidence

10    on the issue.  However, Defendant will be confined to the reasons that were set forth in its discovery

11    responses, including (1) Defendant's response to Plaintiff's Interrogatory Number 14; (2) Defendant's

12    responses to Plaintiff's Document Request Numbers 8, 46, 55, 58, 65, 67, 68, 74, 75, 77, 79, 80, and

13    81; and (3) Jon Kalin's deposition testimony on the issue.

14    **7.      Motion in Limine No. 7 – Failure to License, Manufacture, or Police**

15         Plaintiff moves to preclude Defendant from offering evidence that Plaintiff failed to license,

16    manufacture, or "police" the Harvest Tote.  Plaintiff argues that such evidence is irrelevant, would be

17    overly confusing to the jury, and therefore should be excluded pursuant to Federal Rules of Evidence

18    401, 402, and 403.

19         This motion in limine is DENIED.  First, the term "policing" is too subjective and vague to

20    warrant a blanket preclusion of evidence.  Second, Plaintiff's licensing, manufacturing, and "policing"

21    activities (or lack thereof) may be relevant to Defendant's statute of limitations defense.  Specifically,

22    Plaintiff's activities may shed light on whether Plaintiff was aware of, or should have been aware of,

23    the Second Generation Harvest Tote at some point prior to 2008.  See Fox v. Ethicon Endo-Surgery,

24    Inc., 35 Cal. 4th 797, 808 (2005) ("[I]n order to employ the discovery rule to delay accrual of a cause

25    of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a

26    reasonable investigation[.]").  Therefore, Defendant will not be precluded from offering evidence on

27    these issues at trial.

28    ///

**8.      Motion in Limine No. 8 – Physical Samples**

Plaintiff moves to preclude Defendant from introducing into evidence (or referring to) physical samples of the Harvest Tote and Second Generation Harvest Tote other than the two samples used at Jeff Ackerman's deposition.  Plaintiff argues that Defendant failed to produce samples of the Harvest Tote and Second Generation Harvest Tote when Plaintiff requested them pursuant to Federal Rule of Civil Procedure 34.

This motion in limine is DENIED.  Rule 34 requires a party to produce *for inspection* tangible evidence; it does not require the party to ship the evidence to the requesting party.  See Fed. R. Civ. P. 34(a)(1); see also Mezu v. Morgan State Univ., 269 F.R.D. 565, 575 (D. Md. 2010) ("Defendant was not obligated to photocopy the documents *and mail them to Plaintiff*; Defendant only was obligated to make the documents available to Plaintiff for inspection and copying.") (emphasis added).  Moreover, the time, place and manner set by Defendant for inspection of the Harvest Tote and Second Generation Harvest Tote samples were reasonable.  Thus, there is no reason to preclude Defendant from using (or referring to) its own samples of the Harvest Tote or the Second Generation Harvest Tote.  However, in order to eliminate any hint of prejudice, Defendant will be required at trial to allow Plaintiff to inspect any sample Defendant wishes to use before it is shared with a witness or the jury.

**B.      Defendant's Motions in Limine**

**1.      Motion in Limine No. 1 – Exclusion of Larry Gorman's Expert Reports**

Defendant moves to exclude the initial and supplemental expert reports that were tendered by Plaintiff's damages expert, Larry Gorman.  Defendant argues that both of these reports are speculative and based on unreliable data.  Defendant also argues that Mr. Gorman's supplemental report is not a supplemental report at all; rather, it is an attempt to sneak in completely new expert opinions in the guise of supplementation.  Finally, Defendant maintains that Mr. Gorman's opinions on damages are irrelevant to Plaintiff's claim for unfair competition under California Business and Professions Code section 17200, *et seq.* ("the UCL").

**a.      Initial Report**

First, to the extent that Defendant moves to exclude Mr. Gorman's initial report, its motion in limine is GRANTED.  Under Federal Rule of Evidence 702, the court serves a special "gatekeeping"

1    function with respect to expert testimony.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).

2    The court must make an initial assessment of the proposed expert testimony to ensure that it "rests on

3    a reliable foundation."  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993).  See Fed. R.

4    Evid. 702(b)-(d).  Here, it is evident that Mr. Gorman's damages calculations as set forth in this initial

5    report are unreliable.  Mr. Gorman attempts to extrapolate close to eight years of profits generated by

6    the Second Generation Harvest Tote (2004 to December 2012) using one and a half years of profits for

7    the Harvest Tote (1995 to July 1996).  Setting aside the good question of whether one and a half years

8    of profits provides sufficient data points to calculate profits for the next 16 years,[1] Mr. Gorman offers

9    no explanation for his assumption that profits for the Second Generation Harvest Tote and the Harvest

10   Tote, which are two distinct products, would be the same.  This is a critical flaw in Mr. Gorman's

11   report.  And if that were not enough, Mr. Gorman himself points to others.  (See, e.g., Doc. 129, Ex. B

12   at 7) ("[T]he discount rate of 8% can be criticized, not necessarily because it is too high, or too low,

13   but rather because the empirical work required to estimate a valid discount rate that is fully consistent

14   with finance theory . . . has not been conducted.").  Plaintiff does not argue otherwise.  Therefore, the

15   Court finds exclusion of this report to be warranted under Rule 702.

16              **b.    Supplemental Report**

17         Second, to the extent that Defendant moves to exclude Mr. Gorman's supplemental report due

18   to its unreliability, it is DENIED.  Defendant protests that Mr. Gorman's damages calculations in this

19   report are unreliable because (1) Mr. Gorman's calculation of costs for the Harvest Tote differs greatly

20   from the cost benchmark the parties agreed to in 2002; and (2) Mr. Gorman damages calculations fail

21   to account for the fact that Plaintiff's involvement with the Second Generation Harvest Tote "would

22   have doomed" the product.  (Doc. 119 at 16.)  These criticisms go toward the weight of the evidence,

23   not its admissibility.

24         However, the Court does find merit in Defendant's argument that Mr. Gorman's supplemental

25   report was not timely disclosed.  Plaintiff provided Defendant Mr. Gorman's supplemental report on

26

27         [1] Some of these data points may even be flawed.  Defendant points to multiple errors that Mr.
28   Gorman made in calculating the profits tied to the Harvest Tote from 1995 to July 1996.  (See Doc.
     119 at 7-8.)

1  February 4, 2013, which was well after the deadline for the parties to submit expert reports.  Plaintiff

2  nevertheless maintains that this report was timely because it was merely supplementing Mr. Gorman's

3  initial expert report, as Plaintiff is allowed and in fact required to do pursuant to Federal Rule of Civil

4  Procedure 26(e)(2).  This is not true.

5          Supplementing an expert report pursuant to Rule 26(e) means "correcting inaccuracies, or

6  filling the interstices of an incomplete report based on information that was not available at the time of

7  the initial disclosure."  Keener v. United States, 181 F.R.D. 639, 640 (D. Mont. 1998).  Accord Fed. R.

8  Civ. P. 26(e)(1)(A).  Here, Mr. Gorman's supplemental report goes far and beyond simply correcting

9  inaccuracies or filling minor gaps in his initial report.  Mr. Gorman generates an entirely new damages

10  calculation that incorporates *thousands* of pages of additional information.  For example, whereas Mr.

11  Gorman's original report has a minimal discussion, if any, on costs related to the Second Generation

12  Harvest Tote, Mr. Gorman's supplemental report goes into significant detail into calculating the cost

13  of labor and raw materials.  (See Doc. 129, Ex. C.)  The result: a significantly different calculation of

14  damages.  In his original report, Mr. Gorman opines that profits for the Harvest Tote and the Second

15  Generation Harvest Tote *combined* were $2.4 million.  (Doc. 129, Ex. B at 7.)  Yet in his supplemental

16  report, Mr. Gorman opines that profits from the Second Generation Harvest Tote *by itself* were $2.32

17  million assuming 0% interest and $4.03 million assuming 10% interest.  (See Doc. 129, Ex. C at 16.)

18  These are entirely different opinions.  See Linder v. Meadow Gold Dairies, Inc., 249 F.R.D. 625, 640

19  (D. Haw. 2008) ("Rule 26(e) . . . does not give the producing party a license to disregard discovery

20  deadlines and to offer new opinions under the guise of the supplement label.") (quotation marks and

21  citations omitted).[2]

22          The question, then, is whether Mr. Gorman's untimely report should be stricken.  Federal Rule

23  of Civil Procedure 37(c)(1) provides, in relevant part:

24      If a party fails to provide information or identify a witness as required by Rule 26(a) or
       (e), the party is not allowed to use that information or witness to supply evidence on a

25

26          [2] Plaintiff maintains that Defendant "does not . . . identify any differences in methodology or
   approach between the reports . . . ."  (Doc. 133 at 6.)  This argument is misguided.  Just because the
27  general approach or basic methodology between the reports is the same does not mean that Plaintiff
   may smuggle in completely new opinions under the guise of supplementation.  Allowing such would
28  eviscerate the purpose of the Court's expert deadlines.

1   motion, at a hearing, or at a trial, unless the failure was substantially justified or is
    harmless.
2

3   The Ninth Circuit has explained that Rule 37(c)(1) "gives teeth" to the disclosure requirements set by

4   Rule 26. Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).  The

5   sanction is "self-executing" and "automatic," and is ameliorated only when the party facing preclusion

6   is able to show that its failure to properly disclose was substantially justified or is harmless.  Id.; see

7   Torres v. City of Los Angeles, 548 F.3d 1197, 1213 (9th Cir. 2008).

8          The Court does not find that Plaintiff's belated disclosure was substantially justified.  Plaintiff

9   blames Defendant for failing to produce requested documents sooner that it did.  Plaintiff emphatically

10  protests that it asked for the documents "at least five [times]."  (Doc. 133 at 8.)  The problem with this

11  argument is twofold.  First, Plaintiff fails to provide specific details regarding these requests, such as

12  when exactly they were made.  Second, and most critically, there is no indication that Defendant had

13  any obligation under the Federal Rules to produce anything.  Plaintiff does not argue that Defendant

14  failed to meet its obligations under Federal Rule of Civil Procedure 26(a)(1)(A)(ii), which requires a

15  copy or a description of all documents that a party may use to support its claims or defenses.  Nor can

16  Plaintiff argue that Defendant failed to meet its obligations under Federal Rule of Civil Procedure 34;

17  the record shows that Plaintiff did not propound "formal" discovery requests until November 9, 2012.

18  (See Doc. 59 at 4.)  Thus, Plaintiff's protests simply amount to a complaint that Defendant ignored its

19  informal discovery requests.  That is not substantial justification.  Plaintiff's counsel are sophisticated

20  and experienced trial attorneys.  Counsel are well aware that Plaintiff cannot rely solely on informal

21  discovery requests to obtain documents, especially when the documents contain Defendant's sensitive

22  and confidential financial information.

23         Turning to harmlessness, the Court finds that Plaintiff's late disclosure of Mr. Gorman's expert

24  report was harmful.  As indicated above, Plaintiff provided Defendant Mr. Gorman's new opinions on

25  February 4, 2013.  This was just four days before the close of discovery and less than 48 hours before

26  Defendant was set to depose Mr. Gorman.  Moreover, Defendant's rebuttal expert, Ms. Heinemann,

27  had no more than three days to review Mr. Gorman's new report before being deposed on February 8,

28  2013.  It is therefore evident that Defendant was prejudiced by (1) having wasted resources reviewing

1  and preparing for Mr. Gorman's old opinions; (2) having little time to prepare for Mr. Gorman's new

2  opinions; and (3) the fact that its rebuttal expert had little time to review and respond to Mr. Gorman's

3  newly disclosed opinions.

4       Nevertheless, in the specific circumstances of this case, the Court declines to strike Plaintiff's

5  late report.  Doing so would almost fatally cripple Plaintiff's common law claim, despite the fact that

6  the prejudice suffered by Defendant is easily remedied.  See Wendt v. Host Int'l, Inc., 125 F.3d 806,

7  814 (9th Cir. 1997) (court's discretion in sanctioning discovery conduct should be guided by the risk

8  of prejudice, the public policy favoring disposition of cases on their merits, and the availability of less

9  drastic sanctions).  Thus, instead of striking Mr. Gorman's late report, the Court sanctions Plaintiff as

10  follows.  First, Ms. Heinemann will not be precluded at trial from offering opinions on Mr. Gorman's

11  supplemental report.  She may testify on any subject reached in her deposition.  Second, if Defendant

12  needs to depose Mr. Gorman further, Plaintiff shall produce Mr. Gorman for a two-hour deposition at

13  Plaintiff's expense.  Defendant shall notify Plaintiff of its need for the deposition by Thursday, May

14  16, 2013, and Plaintiff shall produce Mr. Gorman by no later than Thursday, May 23, 2013.[3]

15       **c.**     **Application to Section 17200**

16       To the extent that Defendant argues that Mr. Gorman's report is irrelevant to Plaintiff's claim

17  under the UCL, the Court tentatively agrees.  While the scope of the UCL is "broad" and "sweeping,"

18  its remedies are "generally limited to injunctive relief and restitution."  Cel-Tech Comms., Inc. v. Los

19  Angeles Cellular Tel. Co., 20 Cal. 4th 163, 179-80 (1999).  The California Supreme Court has held

20  that  restitution in the context of the UCL means (1) money or property that was once in the plaintiff's

21  actual possession, or (2) money or property that the plaintiff has a "vested interest in."  Korea Supply

22  Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149 (2003).

23       Here, Plaintiff does not appear to have any vested interest in Defendant's profits from sales of

24  the Second Generation Harvest Tote.  Plaintiff may have an interest in the Second Generation Harvest

25

26       [3] Plaintiff and its counsel are forewarned that any further dilatory conduct on their part will be

27  grounds for severe sanctions, including dismissal.  Moreover, Plaintiff and its counsel are placed on notice that in the future this Court will not tolerate parties filing shell expert reports to meet the expert disclosure deadline so that the party can then turn around and file new expert opinions in the guise of

28  supplementation.  Such a practice eviscerates the purpose of the Court's deadlines.

1   Tote itself, but this does not automatically mean that Plaintiff has a firm, vested interest in the profits

2   or business opportunities associated with the Second Generation Harvest Tote.  Those are expectancy-

3   type damages, which are not recoverable under the UCL.  See Korea Supply, 29 Cal. 4th at 1151.  The

4   California Supreme Court has specifically cautioned that the UCL must not be used as "an all-purpose

5   substitute for a tort or contract action."  Id.

6        **2.**       **Motion in Limine No. 2 – Exclusion of Keith Vorst's Expert Reports**

7        Defendant argues that Plaintiff's expert, Keith Vorst, should be precluded from testifying at

8   trial because he is not qualified to opine on the engineering of plastic agricultural crates.  Defendant

9   also argues that Dr. Vorst's supplemental expert reports should be stricken because they impermissibly

10   expand the scope of Dr. Vorst's initial expert report.

11        This motion in limine is DENIED.  First, Dr. Vorst is qualified to opine on the engineering of

12   plastic agricultural crates.  Dr. Vorst is a professor in the Department of Industrial Technology and

13   Packaging at California Polytechnic State University; has a master's of science degree in packaging;

14   teaches courses on plastics processing; and consults the agricultural industry on the production of hard

15   plastic injection molding for agricultural products.  This base of knowledge, experience, and education

16   qualifies Dr. Vorst as an expert on the engineering of plastic agricultural crates, and he may testify on

17   this matter.  See Fed. R. Evid. 702 (a witness is qualified as an expert by knowledge, skill, experience,

18   training, or education).

19        Second, Dr. Vorst's supplemental expert reports do not contain entirely new opinions.  In his

20   initial expert report, Dr. Vorst opined that certain aspects of the Second Generation Harvest Tote can

21   be traced to the Harvest Tote and are attributable to Ray Gerawan.  Although with slightly more detail

22   and with slightly greater force, these opinions are largely repeated in Dr. Vorst's supplemental reports.

23   Therefore, the Court finds Dr. Vorst's supplemental reports to be just that, supplements.  And in any

24   event, to the extent that there are any meaningful differences between Dr. Vorst's initial report and his

25   supplemental reports, Defendant had a full and fair opportunity to depose Dr. Vorst on those matters.

26   See Fed. R. Civ. P. 37(c)(1) (late reports need not be excluded if the late disclosure is harmless); Yeti

27   by Molly, 259 F.3d at 1106 (same).  Thus, for all these reasons, the Court declines to strike Dr. Vorst's

28   supplemental reports.

**3.      Motion in Limine No. 3 – Use of the Term "Trade Secret"**

Defendant moves pursuant to Federal Rule of Evidence 403 to preclude Plaintiff from using or referencing the term "trade secret" when describing the information Plaintiff provided Defendant in connection with the Harvest Tote design.  Defendant insists that "trade secret" is a "loaded" term that will unfairly bias the jury against Defendant.

This motion in limine is GRANTED.  Use of the term "trade secret" arguably may prejudice Defendant.  On the other hand, Plaintiff will not suffer any prejudice if it is required to use a phrase in lieu of "trade secret."  Therefore, out of an abundance of caution, both parties shall refrain from using the term "trade secret" during trial.  See Fed. R. Evid. 403.

**4.      Motion in Limine No. 4 – Negotiations and Implied-In-Fact Agreements**

Defendant moves to preclude Plaintiff from offering evidence of "the negotiations surrounding or the alleged terms of any oral or implied-in-fact agreements relating to the Harvest Tote."  (Doc. 122 at 1.)  Defendant argues that such evidence is not relevant to this case and would be confusing for the jury.  Defendant also contends that Plaintiff may not premise liability on a breach of an oral obligation because the statute of limitations for such a breach is two years.

This motion in limine is DENIED.  Plaintiff has an interest in providing the jury context as to the parties' business relationship relating to the Harvest Tote.  At this point, and as a general matter, the Court does not see a substantial threat of confusion or undue prejudice to Defendant if evidence of negotiations or an implied-in-fact agreement is presented to the jury.  To the extent that Defendant is concerned that the jury may improperly find Defendant liable based on a breach of an oral obligation, Defendant may clarify that issue in the jury instructions and verdict form.

**5.      Motion in Limine No. 5 – "Patent Pending"**

Defendant moves to preclude Plaintiff from referencing or offering evidence as to whether Defendant marks its products as "Patent Pending."  Defendant insists that whether or not it marks its products as "Patent Pending" is irrelevant to this case.

This motion in limine is DENIED.  It is true that allegations of false marking cannot form the basis of liability for any of the claims remaining in this case.  However, exclusion of any reference or evidence of products marked "Patent Pending" sweeps too broadly.  As Plaintiff rightly points out,

such an exclusion would theoretically preclude Plaintiff from showing the Second Generation Harvest

Tote to the jury because it is marked "Patent Pending." To the extent that Defendant is concerned that

false marking may improperly become a focus in this case, the better course is for Defendant to object

to specific events at trial and to address the issue in the jury instructions and verdict form. See United

States v. Randall, 162 F.3d 557, 559 (9th Cir. 1998) ("Ordinarily, cautionary instructions or other

prompt and effective actions by the trial court are sufficient to cure the effects of improper comments,

because juries are presumed to follow such cautionary instructions.").

> **6.** **Motion in Limine No. 6 – Promises or Agreements to Seek Patent Protection for the Harvest Tote**

Defendant moves to preclude Plaintiff from referencing or offering evidence of any promise or

agreement to seek patent protection for the Harvest Tote. Defendant contends that there is no claim in

this case relating to such a promise or agreement.

This motion in limine is GRANTED IN PART and DENIED IN PART. The claim to be tried

by the jury is whether Defendant engaged in "passing off" by selling the Second Generation Harvest

Tote without Plaintiff's authorization. Whether Defendant promised to seek patent protection for the

Harvest Tote is marginally relevant, at best, to this claim. There is, however, a substantial threat that

the parties will waste time on this issue and confuse the jury as to the issues to be decided by it. For

example, considerable time and energy will need to be expended explaining the differences between

patent protection, which is not at issue, and trademark or trade name protection, which is. Therefore,

Plaintiff is precluded from referencing or offering evidence *to the jury* of any specific agreement or

promise to seek patent protection for the Harvest Tote. See Fed. R. Civ. P. 403. Nothing in this order

precludes Plaintiff from referencing or offering evidence on this matter to the Court in connection with

Plaintiff's UCL claim.[4]

///

---

[4] The Court will decide this claim. See, e.g., Soriano v. Countrywide Home Loans, Inc., Case No. 09-CV-2415 LHK, 2011 U.S. Dist. LEXIS 59714 (N.D. Cal. June 2, 2011) (reserving decision on the UCL claim for the Court because there is no right to a jury under the UCL). To the extent that the evidence to be presented to the jury differs from the evidence to be presented to the Court, the parties shall discuss and decide the logistics of accomplishing this.

**7.     Motion in Limine No. 7 – Promises or Agreements to Assign the Rights to Any**

**Improvement, Modification, or Invention Related to the Harvest Tote**

Defendant moves to preclude Plaintiff from offering evidence of any promise or agreement to assign rights to any improvement, modification, or invention related to the Harvest Tote.  Defendant contends that promises to assign may not form the basis of liability for Plaintiff's common law claim and that agreements to assign, or breaches thereof, may not from the basis of liability for Plaintiff's claim under the UCL.

This motion is DENIED.  At this point, the Court is of the opinion that this issue should simply be addressed and clarified in the jury instructions and verdict form.  As for Defendant's argument on breaches of contracts under the UCL, the Court has already addressed this matter in its order regarding the parties' supplemental briefing.  (Doc. 164.)

**8.     Motion in Limine No. 8 – Promises or Agreements to Co-Own Patents for the**

**Harvest Tote**

Defendant moves to preclude Plaintiff from referencing or offering evidence of any promise or agreement to co-own any patent for the Harvest Tote.  Defendant argues that there is no claim relating to promises or agreements to co-own patents for the Harvest Tote and therefore evidence on this issue is irrelevant to this case.

This motion in limine is GRANTED IN PART and DENIED IN PART.  Again, the claim to be decided by the jury is whether Defendant engaged in "passing off" by selling the Second Generation Harvest Tote without Plaintiff's authorization.  Whether Defendant promised to seek patent protection for the Harvest Tote is marginally relevant, at best, to this claim; however, there is a substantial threat that the parties will waste time on this issue and unnecessarily confuse the jury.  Therefore, consistent with the Court's ruling on Defendant's motion in limine number 6, Plaintiff is precluded from offering evidence to the jury of any specific promise or agreement to co-own patents for the Harvest Tote.  See Fed. R. Civ. P. 403.  Nothing in this order precludes Plaintiff from offering evidence on this matter to the Court in connection with Plaintiff's UCL claim.

///

///

**9.      Motion in Limine No. 9 – "Passing Off"**

Defendant moves to preclude Plaintiff from offering evidence of "passing off."  This issue has been resolved by the Court in its order regarding the parties' supplemental briefing.  (Doc. 164.)  This motion in limine is therefore MOOT.

**10.      Motion in Limine No. 10 – Other Collaborative Projects**

Defendant moves to preclude Plaintiff from referencing or offering evidence of the parties' collaboration on products other than the Harvest Tote, the Second Generation Harvest Tote, and the Grape Lug.  Defendant maintains that the parties' collaboration on other products is irrelevant to this case, would be a waste of the time for the jury to consider, and therefore should be precluded pursuant to Federal Rules of Evidence 401, 402, and 403.

This motion in limine is DENIED.  Evidence regarding the parties' collaboration on products other than the Harvest Tote, the Second Generation Harvest Tote, and the Grape Lug *may* be relevant background on the parties' business relationship.  Moreover, there is no clear risk of confusing the jury or prejudicing Defendant.  Therefore, the Court will not completely preclude Plaintiff from *touching upon* these issues to the extent that Plaintiff believes that it would be worthwhile to do so.  Plaintiff is forewarned, however, that the Court has no interest in dwelling on these issues, as they appear to have limited relevance to the merits of this case.  At any point it becomes apparent that Plaintiff is spending inordinate time or attention on these matters, or is confusing the jury, Defendant may re-raise its Rule 402 and Rule 403 challenge.

IT IS SO ORDERED.

Dated:   **May 13, 2013**                              **/s/ Lawrence J. O'Neill**
                                                                 UNITED STATES DISTRICT JUDGE

-118-

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  GERAWAN FARMING, INC.,              Case No. 1:11-cv-1273 LJO BAM

12            Plaintiff,
                                         ORDER
13       v.
                                         IMMEDIATE RESPONSE, IF ANY, DUE BY
14  REHRIG PACIFIC COMPANY,              TODAY AT 3:30 P.M.

15            Defendant.

16  _____/

17       The Court has reviewed the parties' proposed jury instructions and has unearthed a case in full

18  disarray.  This appears to be the latest chapter in the parties' never-ending—and constantly evolving—

19  dispute regarding the scope of Plaintiff Gerawan Farming, Inc.'s ("Plaintiff's") common law unfair

20  competition claim.

21       This saga first began with Plaintiff's amended complaint.  Tucked in a section of the complaint

22  titled "Unfair Competition Under Cal. Bus. & Prof. Code § 17200," Plaintiff alleged a claim for unfair

23  competition in violation of California common law.  (Doc. 26 at 8.)  Specifically, Plaintiff alleged:

24       36. By reason of the foregoing, Defendant has been, and is, engaged in 'unlawful,
         unfair or fraudulent business practices' in violation of §§ 17200 *et seq.* of the California
25       Business & Professions Code and acts of unfair competition in violation of the common
         law.
26
         37. Specifically, Defendant has engaged in an unfair business practice by taking
27       Gerawan's proprietary design for the Harvest Tote and, under false pretenses and/or
         without informing or involving Gerawan, (1) applying for patent protection for such
28       design without due attribution to Ray Gerawan; and (2) developing and selling the

Case: 14-1264 Case: 14-1264 CASE PARTICIPANTS ONLY Document: 13 Document: 11 Page: 137 Filed: 04/22/2014 Filed: 04/22/2014

Case 1:11-cv-01273-LJO-BAM   Document 204   Filed 06/03/13   Page 2 of 5

1  Second Generation Harvest Tote based upon Gerawan's Harvest Tote design without
2  authorization from Gerawan or payment of royalties to Gerawan.

3  (Id. ¶¶ 36-37.)

4       As the case proceeded, the claim apparently slipped by largely unnoticed.  Defendant Rehrig

5  Pacific Company ("Defendant") did not even address the claim in its motion for summary judgment.

6  (Doc. 69.)  And while Plaintiff did note in its opposition papers that it had alleged a claim for common

7  law unfair competition, its discussion was far from enlightening.  Plaintiff cited and relied on a single

8  line from the dissent in a California Supreme Court case:

9       Similarly, common law unfair competition extends beyond the mere passing off of
        one's goods as another's. Cel-Tech Communications, Inc. v. Los Angeles Cellular
10      Telephone Co., 20 Cal. 4th 163, 192 (1999). The cornerstone of a claim for common
        law unfair competition is 'fraud . . . practiced by one in securing the trade of a rival
11      dealer.' Id. at 193 (quoting Weinstock, Lubin & Co. v. Marks, 109 Cal. 529, 541
        (1895)). Clearly, that is what Rehrig has done in violation of the express terms of the
12      Confidentiality Agreement.

13  (Doc. 76 at 24.)

14       Unsurprisingly, the parties were in sharp disagreement when they submitted their joint pretrial

15  statement.  Plaintiff presented its claims as follows:

16      Plaintiff contends that the unfair competition claim takes two forms: (1) violation of
        California Business & Professions Code section 17200, et seq.; and (2) unfair
17      competition under California common law.

18      The claim is based on Gerawan's allegations: that Rehrig developed and sold the
        Second Generation Harvest Tote using design information from Plaintiff; that the
19      Second Generation Harvest Tote is a modification and/or improvement on the Harvest
        Tote; that Rehrig was forbidden from using Gerawan's information to make a modified
20      or improved Harvest Tote or an invention under the terms of a confidentiality
        agreement entered into by the parties; that Defendant did not seek Gerawan's
21      authorization before using this information or pay Gerawan any royalties after using the
        information; that Rehrig did acknowledge assignment of ownership to Gerawan in the
22      new product that was made using this information; that Rehrig improperly competed
        with Gerawan by offering the Second Generation Harvest Tote at discounted price to
23      customers to encourage customers to switch from using the Harvest Tote for which
        Rehrig paid Gerawan a royalty to using the Second Generation for which Rehrig
24      pocketed all the proceeds; that Rehrig cut off production of the Harvest Tote while
        entering the Second Generation into the market to unfairly compete against the Harvest
25      Tote (on which Rehrig paid Gerawan a royalty); that Rehrig marked its products as
        "patent pending" but never applied for a patent on either the Harvest Tote or the
26      Second Generation Harvest Tote; that Rehrig's marking its products as "patent
        pending" lured Gerawan into believing that Rehrig had applied for a patent on the
27      Harvest Tote as had been agreed to by the parties; that Rehrig took advantage of
        Gerawan's mistaken belief to establish itself in the agricultural produce container field
28      and undermine any attempts by Rehrig to enter the field with a different plastic molding

1    company; and that Rehrig took Gerawan's design and passed it off as its own without
2    providing any compensation to Gerawan.

3    (Doc. 106 at 2.)  As legal support, Plaintiff repeated its one-line citation to Cel-Tech.  Needless to say,

4    the basis for Plaintiff's claims remained factually and legally obscure.  For its part, Defendant raised a

5    whole host of issues and defenses for the first time and asked the Court to resolve them at the earliest

6    time *before* trial.  (Id. at 18.)

7        The Court attempted to do just that.  After the pretrial conference, the Court requested further

8    briefing on many of the issues that Defendant raised in the parties' joint pretrial statement.  The Court

9    stated that a review of Defendant's authorities appeared to show that (1) the common law tort of unfair

10   competition is generally limited to "passing off" one's goods as those of another; (2) that the Court

11   dismissed Plaintiff's passing off allegations in connection with its Lanham Act claim; (3) *that absent*

12   *passing off, it is unclear what Plaintiff's unfair competition claim is or could be premised on*; (4) and

13   that if the claim is premised on the misappropriation of trade secrets or confidential information, such

14   claims are preempted by California's Uniform Trade Secrets Act.  (See Doc. 108 at 2-3.)  The Court

15   explained that it had no intention of proceeding to trial on meritless claims.  (Id. at 1.)

16       Plaintiff responded that its common law claim for unfair competition should not be dismissed

17   because "*it is based on traditional passing off and other unfair and fraudulent practices*, not reverse

18   passing off, and is therefore qualitatively different than [sic] the dismissed [Lanham Act] claim."

19   (Doc. 109 at 1) (emphasis added).  As for "other unfair and fraudulent practices," Plaintiff pointed out

20   that its claim rests on Defendant's use of the Harvest Tote to make the Second Generation Harvest

21   Tote and Plaintiff's right to the Second Generation Harvest Tote due to a contract between the parties.

22   (Id. at 2-4.)  Although Plaintiff explained how this differed from a claim for misappropriation of a

23   trade secret, Plaintiff did not tether these allegations to any specific theory of liability or substantive

24   legal authority to indicate a distinct claim.

25       Next, Defendant reiterated in its brief that common law claims for unfair competition is limited

26   to passing-off, and that Plaintiff "cannot and does not dispute this." (Doc. 131 at 3.)  As support for its

27   proposition, Defendant cited and relied upon Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137,

28   1153 (9th Cir. 2008); Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1147 (9th Cir. 1997);

1   and Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1263 (1994). All of this appeared to be good

2   authority. Defendant then argued that Plaintiff could not prove consumer confusion, which Defendant

3   suggested was a necessary part of any passing-off claim. (Doc. 131 at 2-3.)

4       Finally, Plaintiff stated briefly in its reply that its common law claim for unfair competition is

5   not just limited to passing off, but is also based on the allegation that Defendant "competed unfairly by

6   developing and selling the SG Harvest Tote without [Plaintiff's] authorization." (Doc. 154 at 1.) It

7   then argued that it could make the necessary showing of (likelihood) of consumer confusion to support

8   a passing off claim. (Id. at 1-4.)

9       On May 9, 2013, the Court ruled that Plaintiff could proceed to trial on its common law unfair

10  competition claim based on a passing off theory. (Doc. 164 at 2-3.) To the extent that it was not clear

11  from that order that this was the only theory of liability that the Court saw with respect to the common

12  law claim, the Court's order on the parties motion in limine seemed to make that clear. (See Doc. 165

13  at 12) ("The claim to be tried by the jury is whether Defendant engaged in 'passing off' by selling the

14  Second Generation Harvest Tote without Plaintiff's authorization."). The Court then entered a final

15  pretrial order on May 16, 2013. (Doc. 167.)

16      Presently, discovery has closed, dispositive motions have been resolved, the pretrial order has

17  been entered, and trial begins tomorrow with a jury panel summoned. And yet, the target for

18  Plaintiff's common law claim seems to have shifted again. Plaintiff finally has flushed out in its jury

19  instructions two common law theories for the misappropriation of property and seeks to bring them

20  before the jury. See City Solutions v. Clear Channel Communs., Inc., 365 F.3d 835, 842 (9th Cir.

21  2004) (holding that common law misappropriation is one of a number of doctrines subsumed under the

22  umbrella of unfair competition, with the elements being: (1) the plaintiff has invested substantial time,

23  skill, or money in developing the property; (2) the defendant has appropriated the property at little or

24  no cost; and (3) the plaintiff has been injured by the defendant's conduct). These are the claims that it

25  appears Plaintiff had originally intended, not the passing off claim that is now moving forward. But

26  this is not how pleading and discovery practice work. Plaintiff cannot slowly develop and unveil its

27  claims along the way, ending its thought process and legal research on the literal eve of trial. It is too

28  late. All of this should have been achieved, at the very latest, before the pretrial conference.

1    The Court will therefore allow Plaintiff's common law unfair competition claim to proceed to

2    trial only on the passing off theory of liability, just as the Court stated in orders before now.  If

3    Plaintiff believes that a trial would not be of any positive consequence under this ruling and would

4    prefer instead to appeal immediately, it may file a stipulation entering judgment for appellate purposes

5    by no later than **today, June 3, 2013, at 3:30 p.m.  This will provide this Court with enough time**

6    **to call off the jury panel.**  If Plaintiff elects to proceed to trial, however, the Court expects the parties

7    to reconsider and rework their disputed proposed jury instructions and re-file them before the start of

8    trial tomorrow.  The Court notes that as the proposed jury instructions currently stand, the parties are

9    miles apart.  With any real meet and confer efforts, coupled with the parties' finally deciding to notice

10    and follow the Court's orders, the gap will be closed and the appellate issue preserved.

11

12

13

14

15

16

17

18

19

20    IT IS SO ORDERED.

21    Dated:    **June 3, 2013**                    **/s/ Lawrence J. O'Neill**

22                                           UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
JILL M. PIETRINI (CA Bar No. 138335)
    jpietrini@sheppardmullin.com
JAMES E. CURRY (Cal. Bar No. 115769)
    jcurry@sheppardmullin.com
1901 Avenue of the Stars, 16th Floor
Los Angeles, California 90067
Telephone:  (310) 228-3700
Facsimile:   (310) 228-3701

MICHAEL MURPHY (CA Bar No. 234695)
    mmurphy@sheppardmullin.com
Sheppard, Mullin, Richter & Hampton LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130-2006
Telephone:  (858) 720-8900
Facsimile:   (858) 509-3691

THE LAW OFFICE OF MICHAEL P. MALLERY
MICHAEL P. MALLERY, (CA Bar No. 116345)
7108 N. Fresno Street, Suite 450
Fresno, California  93720
Telephone:  (559) 787-2172
Facsimile:   (559) 787-2191

Attorneys for Plaintiff
GERAWAN FARMING, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| GERAWAN FARMING, INC., | Case No. 1:11-CV-01273-LJO-BAM |
| Plaintiff, | **STIPULATION and AMENDED ORDER** |
| v. | |
| REHRIG PACIFIC COMPANY, | |
| Defendant. | |

SMRH:408591992.1

STIPULATION

1

## **STIPULATION & PROPOSED ORDER**

2       Whereas the Court made a ruling on June 3, 2013, regarding Plaintiff's

3   common law unfair competition claim ("The Court will therefore allow Plaintiff's

4   common law unfair competition claim to proceed to trial only on the passing off

5   theory of liability") and offering "[i]f plaintiff believes that a trial would not be of any

6   positive consequence under this ruling and would prefer instead to appeal

7   immediately, it may file a stipulation entering judgment for appellate purposes . . ."

8   [*See* Dkt No. 204.]

9       The parties hereby stipulate:

10       Plaintiff's statutory unfair competition claim pursuant to California Business &

11   Professions Code, Section 17200 *et seq.*; and

12       Plaintiff's common law unfair competition claim on a theory of "passing off" as

13   that claim is described in the Court's Order set forth in Docket No. 204, are dismissed

14   with prejudice.

15       Plaintiff does not stipulate or dismiss its common law unfair competition claim

16   on any other theories.

17

18
                                    Respectfully submitted,
19
                                    SHEPPARD, MULLIN, RICHTER &
20                                  HAMPTON  LLP

21
Dated:  June 3, 2013                By /s/ Jill M. Pietrini
22                                     Jill M. Pietrini

23                                     Attorneys for Plaintiff
24                                     GERAWAN FARMING, INC.

25

26

27

28

                                                            STIPULATION

-125-

1  Dated:  June 3, 2013                    SLATER HERSEY & LIEBERMAN LLP

2                                          By:/s/ Scott B. Lieberman

3

4                                          Attorneys for Defendant
                                           REHRIG PACIFIC COMPANY
5

6          This Court DISMISSES plaintiff's claims pursuant to the parties' above

7
   stipulation and DIRECTS the clerk to close this action.  This Court does not
8

9  contemplate to take further action in this case unless requested by the parties.

10

11

12

13 IT IS SO ORDERED.

14    Dated:   **June 4, 2013**                    **/s/ Lawrence J. O'Neill**
                                                   UNITED STATES DISTRICT JUDGE
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                     STIPULATION

1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11   GERAWAN FARMING, INC.,                    Case No. 1:11-cv-1273 LJO BAM

12                 Plaintiff,                  JUDGMENT

13          v.

14   REHRIG PACIFIC COMPANY,

15                 Defendant.

16
17   _____/

18          Judgment is hereby entered in accordance with the Court's orders filed on April 8, 2013 (Doc.

19   100) and June 4, 2013 (Doc. 211).

20
21   IT IS SO ORDERED.

22      Dated:   **January 14, 2014**              **/s/ Lawrence J. O'Neill**
23                                              UNITED STATES DISTRICT JUDGE
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERAWAN FARMING, INC., | Case No. 1:11-cv-1273 LJO BAM |
| Plaintiff, | AMENDED JUDGMENT |
| v. | |
| REHRIG PACIFIC COMPANY, | |
| Defendant. | |

_____/

Judgment is hereby entered in accordance with the Court's orders filed on March 2, 2012 (Doc. 25), April 8, 2013 (Doc. 100), and June 4, 2013 (Doc. 211).  In addition, pursuant to the Court's order filed on January 17, 2014, Rehrig is entitled to $10,169.25 in attorney's fees (Doc. 240).

IT IS SO ORDERED.

Dated:   __January 17, 2014__          ____/s/ Lawrence J. O'Neill___
                                        UNITED STATES DISTRICT JUDGE

# PROOF OF SERVICE

I hereby certify that, on this the 22nd day of April, 2014, I electronically

filed the foregoing Opening Brief with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered users:

Mark K. Slater
Jonathan P. Hersey
Scott B. Lieberman
SLATER HERSEY & LIEBERMAN LLP
18301 Von Karman Avenue, Suite 1060
Irvine, California 92612
Telephone:  949.398-7500
Facismile:   949-398-7501

*Counsel for Appellee*
Rehrig Pacific Company

I further certify that, upon acceptance and request from the Court, the

required paper copies of the foregoing will be deposited with the United Parcel

Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR

THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service was performed in accordance with the

instructions given to me by counsel in this case.

*/s/ Amy Mertens*
Amy Mertens
Sheppard Mullin Richter & Hampton LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.　　This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  This brief contains 13,589 words, excluding the parts of the brief exempted by the Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit 32(b).

2.　　This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated:  April 22 , 2014　　　By _____/s/ Jill M. Pietrini_____

Jill M. Pietrini
James Curry
Michael Murphy
Attorneys for Plaintiff-Appellant
Gerawan Farming, Inc.