**CASE NOS. 14-1264, 14-1290**

———————

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

———————

GERAWAN FARMING, INC., a California corporation,

*Plaintiff - Appellant,*

v.

REHRIG PACIFIC COMPANY, a Delaware corporation,

*Defendant - Appellee.*

———————

On Appeal from the United States District Court
Eastern District of California
Case No. 1:11-cv-01273-JLO-BAM
The Honorable Lawrence J. O'Neill, United States District Judge

———————

**APPELLEE REHRIG PACIFIC COMPANY'S ANSWERING BRIEF**

———————

MARK K. SLATER, CAL. BAR NO. 129742
mslater@slaterhersey.com
JONATHAN P. HERSEY, CAL. BAR NO. 189240
jhersey@slaterhersey.com
SCOTT B. LIEBERMAN, CAL. BAR NO. 208764
slieberman@slaterhersey.com
NEIL J. COOPER, CAL. BAR NO. 277997
ncooper@slaterhersey.com
SLATER HERSEY & LIEBERMAN LLP
18301 Von Karman Ave., Suite 1060
Irvine, CA  92612
Tel: 949-398-7500

*Attorneys for Appellee
REHRIG PACIFIC COMPANY*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellee Rehrig Pacific Company certifies the following:

1.    The full name of every party or amicus represented by me is:  Rehrig Pacific
Company.

2.    The name of the real party in interest (if the party named in the caption is not
the real party in interest) represented by me is:  N/A.

3.    All parent corporations and any publicly held companies that own 10 percent
or more of the stock of the party represented by me are:  None.

4.    The names of all law firms and the partners or associates that have appeared
for the party or amicus now represented by me in the trial court or agency or
are expected to appear in this court are:  Slater Hersey & Lieberman LLP,
Mark K. Slater, Jonathan P. Hersey, Scott B. Lieberman, Elise K. Sara, and
Neil J. Cooper.

Dated:  June 10, 2014

SLATER HERSEY & LIEBERMAN LLP

By    _____*s/Scott B. Lieberman*_____
        SCOTT B. LIEBERMAN

Attorneys for Appellee
REHRIG PACIFIC COMPANY

# **TABLE OF CONTENTS**

STATEMENT OF RELATED CASES ...................................................................1

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE ............................................................................3

STATEMENT OF FACTS ..................................................................................10

    Rehrig Designed and Built the Grape Lug  By Itself Before Ever
Meeting With Gerawan...................................................................................10

    Rehrig Manufactured an Injection-Molded Harvest Tote ............................13

    With Gerawan's Knowledge, Rehrig Stopped Sales of the Harvest
Tote and Developed a Next Generation Harvest Tote ..................................16

SUMMARY OF ARGUMENT ...........................................................................19

ARGUMENT .......................................................................................................23

I.    THE DISTRICT COURT CORRECTLY GRANTED
SUMMARY JUDGMENT ON CORRECTION OF PATENT
INVENTORSHIP .................................................................................23

    A.    Gerawan Did Not Have Clear and Convincing Evidence
to Support Its Claim .................................................................23

    B.    The Construction of the '293 Patent was Never in
Question .....................................................................................27

    C.    The Fees Award Should Be Affirmed .....................................30

II.    THE DISTRICT COURT PROPERLY DISMISSED THE
LANHAM ACT CLAIM WITHOUT LEAVE TO AMEND ...........31

    A.    Gerawan Does Not Appeal the Dismissal of Its Reverse
Palming Off Claim, Which Was Its Only Lanham Act
Claim ..........................................................................................31

B.    Gerawan's Lanham Act Claim Did Not Allege Traditional Passing Off and Gerawan Is Judicially Estopped From Arguing Otherwise ..........................................34

C.    The Court Did Not Commit Prejudicial Error by Dismissing Without Leave to Amend Because Gerawan Was Still Permitted to Proceed to Trial on the same Unfair Competition Claims.......................................................37

III.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN LIMITING GERAWAN'S COMMON LAW UNFAIR COMPETITION CLAIM TO ONE FOR PASSING OFF..................................................................................................38

A.    The Appropriate Standard of Review of Pretrial Orders is Abuse of Discretion, Not the *De Novo* Standard that Gerawan Claims ........................................................................40

B.    Common Law Unfair Competition is Limited to Passing Off ...........................................................................................42

C.    Gerawan's Alternate Theories of Common Law Unfair Competition Based on Misappropriation Were Either Superseded by CUTSA, Never Pled, or Previously Dismissed by Gerawan ............................................................43

D.    Gerawan is Not a Competitor of Rehrig's and Therefore Any Theory of Common Law Unfair Competition is Barred......................................................................................49

E.    Gerawan's Common Law Unfair Competition Claim is Barred by the Statute of Limitations.........................................50

F.    Gerawan Lacked Evidence of Consumer Confusion Because Admittedly It Did Not Produce Anything and Did Not Want Its Name Affiliated with the Harvest Tote........52

G.    The District Court Properly Excluded Surprise Witnesses and Evidence ..........................................................................55

IV.    GERAWAN DISMISSED ITS UCL CLAIM WITH PREJUDICE, BUT EVEN IF APPEALABLE, THE DISTRICT

COURT DID NOT ABUSE ITS DISCRETION IN LIMITING
THE CLAIM ...................................................................................57

CONCLUSION ...........................................................................................62

CERTIFICATE OF SERVICE ...............................................................63

CERTIFICATE OF COMPLIANCE .......................................................1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allied Grape Growers v. Bronco Wine, Co.*,
    203 Cal.App.3d 432 (1988) ................................................................59

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2011 U.S. Dist. LEXIS 73853
    (N.D. Cal. July 8, 2011) ................................................................43

*Anderson v. Allstate Ins. Co.*,
    630 F.2d 677 (9th Cir. 1980) .................................................... 55, 57

*Art Attacks Ink, LLC v. MGA Enter. Inc.*,
    581 F.3d 1138 (9th Cir. 2009) ................................................................54

*Aryeh v. Canon Business Solutions, Inc.*,
    55 Cal. 4th 1185 (2013) ................................................................60

*Baden Sports, Inc. v. Molten USA, Inc.*,
    556 F.3d 1300 (Fed. Cir. 2009) ................................................................41

*Bank of the West v. Superior Court*,
    2 Cal. 4th 1254 (1994) ................................................................42

*Barton v. New United Motor Manufacturing, Inc.*,
    43 Cal. App. 4th 1200 (1996) ................................................................51

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
    583 F.3d 832 (Fed. Cir. 2009) *aff'd* 131 S. Ct. 2188 (U.S. 2011) ......................47

*Cel-Tech Communication, Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal.4th 163 (1999) ................................................................48

*Champion Labs., Inc. v. Parker-Hannifin Corp.*,
    2011 U.S. Dist. LEXIS 52853 (E.D. Cal. May 17, 2011) ...................................59

*Dannenberg v. The Software Toolworks, Inc.*,
    16 F.3d 1073 (1994) ................................................................55

*Dastar Corp. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) ........................................................................................ 32, 34

*Ethicon, Inc. v. U.S. Surgical Corp.*,
   937 F. Supp. 1015 (D. Conn.1996) ..............................................................26

*Ethicon, Inc. v. United States Surgical Corp.*,
   135 F.3d 1456 (Fed. Cir. 1998) ....................................................................25

*Fina Oil & Chem. Co. v. Ewen*,
   123 F.3d 1466 (Fed. Cir. 1997) ............................................................. 25, 26

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ..................................................................................60

*Garcia v. Coleman*,
   2008 U.S. Dist. LEXIS 68672 (N.D. Cal. Sept. 8, 2008) ............................50

*Garrett Corp. v. United States*,
   422 F.2d 874 (Ct. Claims 1970) ...................................................................26

*GNI Waterman LLC v. A/M Valve Co. LLC*,
   2007 U.S. Dist. LEXIS 68715 (E.D. Cal. Sept. 7, 2007) ............................33

*Guess, Inc. v. Sup. Ct.*,
   176 Cal.App.3d 473 (1986) ...........................................................................51

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) .........................................................................36

*Hess v. Advanced Cardiovascular Sys., Inc.*,
   106 F.3d 976 (Fed. Cir. 1997) ................................................................. 25, 26

*Hunt v. County of Orange*,
   672 F.3d 606 (9th Cir. 2012) .............................................................. 41, 49, 57

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.*,
   802 F.2d 1367 (Fed. Cir. 1986) .....................................................................25

*Italiani v. Metro-Goldwyn-Mayer Corp.*,
45 Cal. App. 2d 464 (1941) ...............................................................51

*Japan Telecom v. Japan Telecom Am.*,
287 F.3d 866 (9th Cir. 2002) ...........................................................55

*Johns Hopkins Univ. v. CellPro, Inc.*,
152 F.3d 1342 (Fed. Cir. 1998) ........................................................28

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) ......................................................................60

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
171 Cal.App.4th 939 (2009) ..............................................................43

*Kline v. Turner*,
87 Cal. App. 4th 1369 (2001) ............................................................60

*Knoell v. Petrovich*,
76 Cal.App.4th 164 (1999) ................................................................52

*L & L White Metal Casting Corp. v. Joseph*,
387 F. Supp. 1349 (E.D.N.Y. 1975) ..................................................37

*Lamothe v. Atlantic Recording Corp.*,
847 F.2d 1403 (9th Cir. 1988) ................................................... 32, 34

*Mattel, Inc. v. MGA Entm't, Inc.*,
782 F.Supp.2d 911 (C.D. Cal. 2011) ................................................44

*Mercado v. Allstate Ins. Co.*,
340 F.3d 824 (9th Cir. 2003) ............................................................59

*Miller v. Safeco Title Ins. Co.*,
758 F.2d 364 (9th Cir. 1985) ............................................................41

*Monolith Portland Midwest Co. v. Kaiser Alum. & Chem. Corp.*,
407 F.2d 288 (9th Cir. 1969) ............................................................51

*Morning Star Packing Co. v. SK Foods, L.P.*,
  754 F. Supp. 2d 1230 (E.D. Cal. 2010) ..............................................43

*Nartron Corp. v. Schukra U.S.A. Inc.*,
  558 F.3d 1352 (Fed. Cir. 2009) ......................................................26

*Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.*,
  319 F.Supp.2d 1059 (C.D. Cal. 2003) ..............................................59

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,
  6 Cal.3d 176 (1971) ......................................................................51

*Oracle Corp., v. Druglogic, Inc.*,
  2011 U.S. Dist. LEXIS 133642 (N.D. Cal. Nov. 16, 2011) ................43

*Pohl v. Anderson*,
  13 Cal. App. 2d 241 (1936) ...........................................................52

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ................................................... 41, 49

*Puentes v. Wells Fargo Home Mortgage, Inc.*,
  160 Cal.App.4th 638 (2008) ...........................................................59

*Rissetto v. Plumbers & Steamfitters Local 343*,
  94 F.3d 597 (9th Cir. 1996) ...........................................................35

*Sage Products, Inc. v. Devon Indus., Inc.*,
  126 F.3d 1420 (Fed. Cir. 1997) ......................................................27

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
  758 F.2d 613 (Fed. Cir. 1985)........................................................26

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ........................................................59

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal.App.4th 210 (2010) ...........................................................43

*SkinMedica, Inc. v. Histogen Inc.*,
    869 F. Supp. 2d 1176 (S.D. Cal. 2012) .......................................................... 43, 52

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ...........................................................................42

*Speedtrack, Inc. v. Endeca Techs., Inc.*,
    524 Fed. Appx. 651 (Fed. Cir. 2013) ...................................................................35

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
    7 F.3d 1434 (9th Cir. 1993) ........................................................................ 36, 37

*SunPower Corp. v. SolarCity Corp.*,
    2012 U.S. Dist. LEXIS 176284 (N.D. Cal. Dec. 11, 2012) ................................43

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ...........................................................................42

*Trovan, Ltd. v. Pfizer, Inc.*,
    2000 U.S. Dist. LEXIS 7522 (C.D. Cal. May 25, 2000) ....................................50

*West v. Quality Gold, Inc.*,
    2012 U.S. Dist. LEXIS 98700 (N.D. Cal. July 16, 2012 ) .................................59

## Statutes

28 U.S.C. § 2111 ....................................................................................................37

Cal. Code Civ. Proc. § 339 ............................................................................. 44, 51

Fed. R. Civ. P. 16(e).......................................................................................... 41, 57

## <u>STATEMENT OF RELATED CASES</u>

Rehrig Pacific Company ("Rehrig") is unaware of any prior or pending related cases as defined in Federal Circuit Rule 47.5. However, this appeal existed as Ninth Circuit Court of Appeals Case No. 13-16156, until it was transferred pursuant to Order entered January 16, 2014. The order included a transfer of Rehrig's request for attorneys' fees in connection with the motion to dismiss it filed. (*See* January 16, 2014 Order, included at Doc. 1-2.)

Dated: June 10, 2014

SLATER HERSEY & LIEBERMAN LLP

By _____s/Scott B. Lieberman_____
        SCOTT B. LIEBERMAN

        Attorneys for Appellee
        REHRIG PACIFIC COMPANY

## STATEMENT OF THE ISSUES

1.    Whether the District Court correctly granted summary judgment in favor of Rehrig on the correction of inventorship claim in finding that (a) Rehrig had fully designed the Grape Lug product before it ever met with Gerawan, and (b) the alleged co-inventor, Ray Gerawan, failed to offer any evidence of a single inventive contribution he made to the Grape Lug embodied in the '293 Patent.

2.    Whether the District Court correctly dismissed Gerawan's Lanham Act claim without leave to amend because (a) the Lanham Act does not protect purported inventors and designers, like Gerawan, who do not manufacture or sell, (b) Gerawan is judicially estopped from arguing that its Lanham Act claim included a claim for traditional passing off, and (c) there was no prejudice by the denial of leave to amend because Gerawan prosecuted claims for passing off and other allegedly wrongful acts with its unfair competition claims.

3.    Whether the District Court correctly limited Gerawan's common law unfair competition claim to one for passing off.

4.    Whether Gerawan is entitled to appeal its voluntary dismissal, with prejudice, of the statutory unfair competition claim, and if so, whether the District Court correctly limited that claim to the "unfair" practices Gerawan pled in its complaint.

## STATEMENT OF THE CASE

This lawsuit was a poorly crafted attempt to fabricate claims on stale and utterly false allegations of Ray Gerawan's patent co-inventorship of a Grape Lug product that was fully designed by Rehrig before it even met Gerawan, and claims of "passing off" and unfair competition for Rehrig's sales of a Harvest Tote product that Gerawan never sold or manufactured, and which Gerawan knew Rehrig had been selling since 2003.

The Lanham Act claim for reverse passing off, along with four state law claims for conversion, fraudulent concealment, unjust enrichment and accounting, failed on Rehrig's motion to dismiss. The claim for correction of patent inventorship for the Grape Lug failed for utter lack of evidence on summary judgment. The same was true for the fraud claims related to the second generation Harvest Tote. Left with nothing more than an unfair competition claim for "traditional" passing off, Gerawan tried to reinvent and redefine the unfair competition laws to include the previously dismissed claims, plus more. All failed. But Gerawan waited until the literal eve of trial to concede that it lacked any evidence of passing off and that trial would be a futile exercise before it voluntarily dismissed its last remaining claims with prejudice. It cannot now appeal those dismissed claims.

Gerawan filed its original complaint on July 29, 2011. The complaint

alleged Ray Gerawan was a co-inventor of U.S. Patent No. 5,415,293 ("the '293 Patent") and that he had assigned his patent rights to plaintiff and appellant Gerawan Farming, Inc. ("Gerawan") in 1993. (A152-A153.) Gerawan was unable to produce any evidence of inventorship contribution or a written assignment. As it turns out, there was no assignment. Gerawan and its lawyers manufactured one 20 years later in January 2013 in an attempt to mislead the Court and Rehrig. (A72-A74.) The District Court found litigation misconduct and awarded Rehrig a portion of its attorneys' fees. (A72-A76.) More importantly, the District Court properly granted summary judgment because the undisputed evidence proved that Rehrig had fully designed and developed the Grape Lug on its own prior to ever meeting with Gerawan. Not surprisingly, the alleged co-inventor Ray Gerawan could not identify a single contribution he made to the Grape Lug. (A30-A35.)

The complaint also alleged Rehrig violated the Lanham Act by suggesting to consumers that it is the "sole source or inventor of the Harvest Tote or Second Generation Tote." (A157.) In short, Gerawan alleged "reverse palming off." But the Court correctly held that the Lanham Act does not protect mere inventorship and design claims, such as Gerawan's, that do not implicate consumer confusion. Gerawan admitted that it does not manufacture or produce harvest totes. Its claim was limited to inventorship and design right disputes. The District Court

described the claim as "groundless" (A83) and properly dismissed without leave to amend (A5-A7).

Gerawan filed its First Amended Complaint ("FAC") on March 23, 2012. (A184-A195.)  The FAC asserted claims for correction of inventorship under the Patent Act, false promise, and unfair competition under both Section 17200 and the common law.  Gerawan dismissed all other claims.  (A496-A498.)

On February 8, 2013, the last day of the extended discovery period, Gerawan moved for permission to amend the FAC to add a new cause of action for false patent markings in violation of 35 U.S.C. § 292, and to add "newly discovered" false promises that Gerawan had known about for years.  The Court did not abuse its discretion in denying the motions.  (A573-A586 & A587-A601.) Instead, the Court found that Gerawan lacked good cause to amend, and that it had unduly delayed in asking for the amendments, which would unfairly prejudice Rehrig.  Undeterred, Gerawan sought reconsideration.  Both motions were denied again.  (A614-A622 & A257-A265.)

On February 14, 2013, Rehrig moved for summary judgment.  On April 8, 2013, the District Court granted the motion on the correction of inventorship claim.  (A30-A35.)  The District Court stated, "Taken together, Defendant's evidence demonstrates that Defendant's conception of the Grape Lug was firm and definite by June 14, 1993 . . . . Mr. Gerawan's deposition testimony is also far

-5-

from enlightening on this issue.  Mr. Gerawan, the supposed co-inventor of the

Grape Lug, testified that he could not recall which specific inventive design

features he contributed to the Grape Lug, whether at this first meeting with

[Rehrig] or at some other time . . . Thus, having reviewed the evidence presented

as a whole, the Court concludes that Plaintiff has failed to offer clear and

convincing evidence demonstrating that Mr. Gerawan made an inventive

contribution to the Grape Lug as embodied in the '293 Patent."  (A32-A35.)[1]

Regarding the unfair competition claim, the District Court found that

Gerawan had only alleged its statutory unfair competition claim (the "UCL

claim") under the "unfair" prong of the statute, not the unlawful or fraudulent

prongs.  (A37-A38; A373.)  The Court, however, allowed Gerawan to proceed on

the allegation that Rehrig unfairly developed and sold the second generation

Harvest Tote based upon the Harvest Tote *design* without Gerawan's

authorization and without paying royalties.   (A37-A38.)

On April 18, 2013, almost immediately following the pretrial conference,[2]

---

[1] The Court also granted Rehrig's motion on the false promise claim, finding among other things that Gerawan failed to produce any evidence that Rehrig intended to break any promises when made in 1993.  (A35-A36.)   Gerawan does not appeal that ruling.

[2] In preparing its portion of the joint pretrial statement, Rehrig cited overwhelming case law holding that the common law unfair competition claim should be barred because it is nothing more than a passing off claim and, if it were more than that,

the District Court issued a Preliminary Pretrial Order and Request for Further

Immediate Briefing, expressing its concern that Gerawan could not state a claim

for common law unfair competition ("whether Plaintiff's common law claim for

unfair competition is premised on a theory of 'passing off' or misappropriation, it

appears that it should be dismissed") and requesting immediate briefing because

"[t]he Court does not intend to proceed to trial if the claims lack merit."  (A346-

A349.)

     In its supplemental briefing, Gerawan represented to the District Court that

it had a viable traditional passing-off claim, which it argued was "qualitatively

different than the dismissed 43(a) [reverse palming off] claim."  (A351.)  Based

on this representation, the District Court let Gerawan go forward to trial with its

passing off claim.  (A370.)  However, the District Court made clear in its May 9,

2013 order that the only available theory of liability under the common law claim

would be one for passing off.  (A369-A370.)

     Gerawan did not heed the District Court's order and persisted with its

assertion that its unfair competition claim was not limited to passing off, but also

included claims that had been dismissed (e.g., conversion of design rights) and

which the District Court refused to allow Gerawan to amend into the complaint

---

it would be superseded by the California Uniform Trade Secrets Act and be time-
barred by a two-year statute of limitations.  (A299-A302.)

(e.g., false patent markings). Realizing it did not even have the evidence needed to support a passing off claim, Gerawan petitioned the District Court less than two weeks before trial to modify the Final Pretrial Order to allow new declarations and evidence to be introduced from five new witnesses never previously disclosed. (A403-A408.) Gerawan argued that it would be "manifestly unjust" not to allow the new evidence because it was somehow Rehrig's fault for not telling Gerawan earlier what evidence it would need to support its claim. The District Court correctly scoffed at Gerawan's fingerpointing. In its May 31, 2013 order, it stated that "it should go without saying that it is not Defendant's burden to point out what evidence Plaintiff will need to prevail on its own claims. Quite frankly, it is ridiculous for Plaintiff to argue, as it essentially does, that Defendant is to blame because Defendant failed to advise Plaintiff how to prove its claim sooner. Plaintiff, and Plaintiff alone, is the one to blame for its current predicament." (A457.)

    In its order on the parties' motions in limine and again in its June 3 order requiring immediate response, the District Court continued to reiterate that passing off was the only available theory of liability under the common law: "To the extent that it was not clear from that [May 9, 2013] order that this was the *only* theory of liability that the Court saw with respect to the common law claim, the Court's order on the parties motion in limine seemed to make that clear. (See Doc.

165 at 12) ('The claim to be tried by the jury is whether Defendant engaged in 'passing off' by selling the Second Generation Harvest Tote without Plaintiff's authorization.')."  (A54 & A60.)

Rather than go to trial on a passing off claim that Gerawan contends it had always pled (and therefore should have had evidence and been prepared to try), Gerawan stipulated to dismiss the common law unfair competition passing off claim with prejudice less than 18 hours before the start of trial.  (A63.)  Gerawan also dismissed, with prejudice, its statutory unfair competition claim in its entirety.  (*Id*.)  Gerawan has therefore forfeited its right to seek this Court's review of any part of the statutory unfair competition claim or the common law unfair competition claim premised on a theory of passing off.  The District Court issued its June 4, 2013 order dismissing the remaining claims.  (A64.)

The District Court subsequently granted Rehrig's motion for an award of attorneys' fees, finding Rehrig to be the prevailing party under 35 U.S.C. § 285 on the correction of inventorship claim based on a finding of litigation misconduct practiced by Gerawan and its attorneys.  (A72-A76.)

Gerawan hurriedly and erroneously appealed to the Ninth Circuit within 24 hours of entry of the order dismissing its claims.  Rehrig provided Gerawan with the pertinent authorities that this case belonged in the Federal Circuit and requested Gerawan to transfer the appeal.  Gerawan did not to respond, so 10 days later,

Rehrig moved to dismiss and sought recovery of its fees for the necessity of the motion.  Rather than seek a transfer by stipulation, as Rehrig had offered, Gerawan instead opposed the motion to dismiss and filed a separate motion to transfer.  On January 16, 2014, the Ninth Circuit transferred the appeal, and also the determination of Rehrig's request for attorneys' fees in connection with the motion to dismiss, to this Court.  (A656.)

The District Court entered its Amended Judgment on January 17, 2014. (A97.)

## STATEMENT OF FACTS

Rehrig started its development of injection-molded plastic food storage containers in the 1960s.  (A5595 [¶4].)  Dating back to at least 1988, if not earlier, Rehrig had designed, manufactured and sold at least two different types of agricultural products—a lemon box and a strawberry picking tote with vented sidewalls.  (A5595-A5596 [¶4]; A5772.)

### Rehrig Designed and Built the Grape Lug
### By Itself Before Ever Meeting With Gerawan

In early 1992, Rehrig recognized a need in the agricultural market for a more durable and reusable plastic crate to store, cool and transport table grapes.  (A5596 [¶5]; A5773.)  Before ever meeting with Gerawan, Rehrig researched, designed, engineered and developed a mold for the "Grape Lug" by improving upon the inefficiencies in the designs of existing styrofoam, corrugated plastic, and wooden

TKV grape containers dating back to the 1980s.  (A5596 [¶6]; A5733 [¶3].)



[Fig. 1: The Grape Lug]

Rehrig's market and production studies for the Grape Lug began in 1992. (A5596-A5598 [¶¶6-9]; A5604-A5633.)  By February 1993, Rehrig had completed market projections, calculated production capabilities, detailed its return on investment, and identified scores of likely customers.  (*Id.*)  By May 1993, Rehrig provided detailed specifications to a mold manufacturer for a price quote and prototypes.  (A5598 [¶11]; A5637-A5640.)  Full design drawings of the final Grape Lug product were completed by June 14, 1993, and those drawings were sent to the tool builder to manufacture the mold according to the design specifications.  (A5598 [¶12]; A5642-A5643.)  All of these things took place

before Rehrig ever met Gerawan.

Once the design drawings were completed and the mold ordered, Rehrig began making presentations to potential purchasers. (A5598-A5599 [¶¶10, 13-14]; A5636; A5645-A5654.) For example, on July 1, 1993, Rehrig made a sales presentation titled "Plastic Grape Lug Proposal" to Sun World, one of Gerawan's competitors. (A5599 [¶14]; A5645-A5654.) The pitch materials included a full design drawing of the final Grape Lug product. (*Id*.) That was several weeks before Rehrig first met with Gerawan. (*Id*.)

On July 8, 1993, Rehrig authorized its counsel to conduct a patentability search for the Grape Lug. (A5599-A5600 [¶¶15-16]; A5656; A5658.) The documents and correspondence related to the search include descriptions of the specific inventive ideas that Rehrig conceived and designed for the Grape Lug, including drawings and photographs. (*Id*.) Rehrig also received final part sheets from the mold manufacturer dated July 22, 1993. (A5600 [¶17]; A5660-A5662.) Part sheets are detailed sheets that explain to a manufacturer how each part of the mold is physically constructed so that it can be re-created later if necessary. (*Id*.) Again, all of these documents predate Rehrig's first meeting with Gerawan.

On August 30, 1993, Rehrig, through its patent counsel, submitted the completed patent application (no. 113,336) for the Grape Lug to the United States Patent and Trademark Office. (A557; A5601 [¶21]; A5666-A5667.) The only

named inventors were Rehrig's employees Jeff Ackermann, William Apps, and Cory Phillips. (A98.) The '293 Patent issued on May 16, 1995. (A557; A98.)

Rehrig did not meet with Gerawan until late July 1993, on or around July 26, 1993. (A5601 [¶¶22-23].) By that time, the design specifications for the Grape Lug were long since finished, the part sheets were completed, the mold had been ordered, the patent application was being finalized, and Rehrig had already shown the final product to other potential customers, including Gerawan's competitors. Ray Gerawan contributed nothing to the design. (A5601-A5602 [¶¶23, 25]; A5734 [¶6]; A5813 [24:3-11]; A5817 [35:1-9].) Rehrig approached Gerawan as a potential customer for the Grape Lug. (A5601 [¶22].)

From 1994 through 2001, Gerawan purchased almost 4 million Grape Lugs from Rehrig. (A5602 [¶26]; A5813-A5814 [24:25-25:4].) Each of the Grape Lugs was stamped with "patent pending" or the patent number. Gerawan never demanded that Ray Gerawan be added as a co-inventor, nor did Gerawan ever demand any royalty, discount or payment from Rehrig for any of the millions of Grape Lugs it bought based on Ray Gerawan's alleged co-inventorship. (A5602 [¶¶27-28]; A5734 [¶6]; A5789 [65:23-25].)

### Rehrig Manufactured an Injection-Molded Harvest Tote

Soon after Rehrig introduced Gerawan to the Grape Lug, Gerawan raised the possibility that Rehrig might produce a hard plastic picking bin for stone fruit.

(A5601 [¶23]; A5045 [31:12-25].)  Gerawan refused to share any design ideas or specifications for this "harvest tote" with Rehrig until after it signed a confidentiality agreement, which Rehrig did on September 15, 1993.  (A5601-A5602 [¶24].)  The information that Gerawan then shared, however, was anything but proprietary or unique.  Its design idea was nothing more than a request that Rehrig produce a hard plastic copy of a corrugated harvest tote already widely used throughout the industry as early as 1977, like the "Pik/Pak System" tote sold by Diversi-Plast Products.  (A5734 [¶7]; A5738-A5739; A5832-A5834 [90:1-5, 91:25-92:25]; A5735 [¶8].)  The design was not new; consequently the Harvest Tote could not be patented like the Grape Lug.  (*Id*.; A5817 [35:1-9].)



[Fig. 2: The Harvest Tote]

Nonetheless, Gerawan agreed to invest in a mold. In return, Rehrig agreed to pay Gerawan a portion of the sales Rehrig made of the Harvest Tote from that mold. (A5819-A5820 [61:7-11, 62:9-19].) From October 1993 through July 1994, while production of the Harvest Tote forged ahead, the parties exchanged several drafts of an "Agreement in Principle" regarding the marketing and sales of the Harvest Tote, but no final agreement was ever reached. (A5602 [¶29]; A5818 [48:8-11].) Rehrig did not agree to restrict itself from designing, producing, manufacturing or selling any other stone fruit crates, and certainly did not promise to continue producing the

Harvest Tote forever.  (A5602 [¶29].)

Sales of the Harvest Tote began in mid-1994 and continued to September 2002.  (A5704 [¶12].)  During that entire time, Gerawan was content to let Rehrig assume all responsibility for production, maintenance of the tools, and sales of the totes while Gerawan merely collected an agreed percentage of the sales.  There is no dispute that Rehrig paid Gerawan all amounts it had promised for sales of the Harvest Tote until Rehrig stopped production and the payments for the Harvest Tote ended around the end of 2001.  (A5603 [¶30]; A5704 [¶12]; A5791 [79:3-18]; A5055 [113:20-114:18]; A5821 [66:3-9].)

### With Gerawan's Knowledge, Rehrig Stopped Sales of the Harvest Tote and Developed a Next Generation Harvest Tote

The Harvest Tote's end of life and Rehrig's production of a second generation Harvest Tote was no surprise to Gerawan.  As early as September 1999, Rehrig's representatives met with Gerawan's to discuss the declining sales of the Harvest Tote, the prohibitive cost of maintaining the aging mold, and Rehrig's plans to develop a next generation mold.  (A558; A5702 [¶¶4-5]; A5710; A5788 [61:8-20].)  In February 2001, another meeting ensued in which the parties discussed the significantly declining sales of the Harvest Tote and Rehrig's development of a next generation product.  (A558; A5701 [¶6]; A5712.)  There was never any discussion of terms of an agreement, much less any actual new agreement, to include Gerawan in the design or sales.  (A5704 [¶¶10-11]; A5790

-16-

[73:18-22]; A5830-A5831 [88:21-89:5].)

By February 2002, Gerawan clearly knew that Rehrig was designing the next generation tote.  (A558; A5703 [¶7].)  Later that month, Rehrig's personnel attended another meeting at Gerawan's facilities to inform Gerawan again about the challenges and market problems that Rehrig faced with the first generation Harvest Tote, including the deterioration of the mold, the lack of speed by which a competitive part could be produced, and the introduction of other competitive totes into the marketplace, such as a European-made tote.  (A5703-A5704 [¶9].)  At the conclusion of the meeting, Rehrig informed Gerawan that Rehrig was stopping production on the first generation Harvest Tote, that it would no longer support the mold, and that it was finalizing development of a new tote without Gerawan.  (*Id.*)

Thereafter, Rehrig made substantial design improvements to the Harvest Tote without Gerawan.  (A5735 [¶9].)  Gerawan did not provide any design input, research or development into the new tote to overcome the structural defects and manufacturing challenges of the original mold.  (A5704 [¶10]; A5796-A5800 [96:13-97:17, 102:24-103:19, 106:16-23].)  Gerawan did not request any prototype, design, or cost figures for the second generation Harvest Tote mold. (*Id.*)  As Gerawan admits, the parties never had any agreement related to the production or sale of the second generation Harvest Tote.  (A5704 [¶¶10-11]; A5790 [73:18-22]; A5830-A5831 [88:21-89:5].)



[Fig. 3: The Second Generation Harvest Tote]

Despite having known about the second generation Harvest Tote since as early as 1999, and despite having purchased thousands of them in 2003 (A5704-A5706 [¶¶13-15]; A5717; A5792-A5794 [84:10-19, 88:23-89:6]), Gerawan chose to do nothing to enforce its alleged rights in the product.  Instead, it waited until 2011 to file a lawsuit positing a number of theories, such as correction of inventorship over the Grape Lug patent which was nearly 16 years old and for which Mr. Gerawan cannot recall a specific inventive contribution.  The lawsuit also included a claim for false promises Rehrig allegedly made in 1993 which

-18-

Gerawan contended Rehrig did not intend to keep when developing the second generation Harvest Tote some 9 years later.  Gerawan failed to proffer any explanation why it waited until 2011 to file these stale and baseless claims. Gerawan attended trade shows and subscribed to industry publications where Rehrig advertised the second generation Harvest Tote (A5706-5707 [¶¶16-21]; A5800-A5803 [106:24-107:24, 108:7-16, 110:2-25]), and even bought several thousand in 2003.  It is simply unfathomable that a major grower, not to mention designer and user of the original Harvest Tote, was completely unaware of the existence of the second generation Harvest Tote for more than 5 years after Rehrig started selling the product.

## SUMMARY OF ARGUMENT

The District Court properly found Gerawan lacked sufficient evidence to create a triable issue to sustain a claim for correction of patent inventorship.  (A30-35.)  Rehrig proffered documentary evidence showing full conception of the Grape Lug by June 14, 1993.  On the other hand, Ray Gerawan, the supposed co-inventor, failed to recall a single inventive design feature he provided to the Grape Lug (A34-35) and failed to raise a triable issue that he provided any contribution prior to that date.  The issuance of a patent creates a presumption that the named inventors are the only inventors.  A plaintiff seeking to add himself as a co-inventor carries a heavy burden of proving by clear and convincing evidence a

definite and permanent idea of the completed and operative invention. Gerawan badly failed to raise a triable issue with that standard. Further, Gerawan elected not to construe the claims of the '293 Patent, and its attempt to raise this for the first time on appeal should be disregarded. Even if considered, Gerawan's arguments fail because it now claims contribution to ideas that do not appear in the claim language. The District Court properly granted summary judgment on this claim.

The District Court also properly held that Gerawan could not state a claim for reverse palming off under the Lanham Act. (A5-7.) Gerawan does not appeal that ruling, but rather complains that its Lanham Act claim also included a theory of "traditional passing off," and that it should have been given leave to amend. The passing off claim is entirely inconsistent with the facts Gerawan pled in support of the Lanham Act claim, and the District Court rejected Gerawan's attempt to expand the scope of the Lanham Act to cover inventorship and design right disputes that do not involve consumer perception. Moreover, Gerawan is judicially estopped from arguing that the Lanham Act claim included a passing off theory. It avoided dismissal of the common law unfair competition passing off claim by arguing that its Lanham Act claim did not include a theory of passing off. It cannot say the reverse now.

Gerawan never argued that it had any claim other than reverse palming off until more than a year later when, having lost, abandoned, and betrayed its other theories, it asserted the exact opposite of what the complaint alleged. Regardless, the denial of leave to amend the Lanham Act claim did not prejudice Gerawan in any way. It was able to pursue its passing off and "other" theories of liability through its unfair competition claims all the way until the eve of trial when Gerawan chose to voluntarily dismiss them. The District Court was correct to dismiss the claim without leave to amend, and its ruling should be affirmed.

The District Court did not abuse its discretion in limiting Gerawan's common law unfair competition to one for passing off. First, the District Court did not grant summary judgment or dismissal as to this claim; it made a series of pretrial rulings conforming the scope of the claim to the law and Gerawan's evidence. As a result, the District Court's rulings are reviewed only for an abuse of discretion, not *de novo*. Second, common law unfair competition is essentially a claim for passing off, and in any event, could not mean more here. Gerawan asserts that its claim rested on a physical misappropriation of the Harvest Tote product, or its phantom rights in it, but Gerawan never pled those facts or advanced that theory until it was too late to do so and after having voluntarily dismissed its conversion claim.

Instead, Gerawan's unfair competition claim hinged on Rehrig "developing and selling the Second Generation Harvest Tote based upon the Harvest Tote design without ever receiving Plaintiff's authorization and without ever paying Plaintiff royalties." (A192.)  As pled, that claim was preempted and superseded by California's Uniform Trade Secrets Act ("CUTSA").  Plus, a claim for common law unfair competition can only be stated by one competitor against another, but Gerawan and Rehrig are not competitors.  Nor could Gerawan prove consumer confusion because it admits that it did not produce the product and did not want its name affiliated with it because other growers would be turned-off from buying a "Gerawan tote."  Finally, a claim for common law unfair competition based on the interference with another's trade or business is limited by a two-year statute of limitations.  Gerawan admittedly did not file suit for two years and eleven months after discovering the competing tote.

The District Court's rulings limiting the statutory unfair competition claim under California Business and Professions Code section 17200 are not subject to appeal because Gerawan voluntarily dismissed the entire claim with prejudice. Even if it were reviewable, the appropriate standard of review is for an abuse of discretion.  Allegations concerning false patent markings were excluded from this case as an independent claim, but Gerawan was permitted to introduce evidence of patent markings in support of its UCL claim under the "unfair" prong.

Nonetheless, Gerawan elected not to go to trial on that claim and dismissed with prejudice.  Likewise, the statutory unfair competition claim based on alleged misappropriation of design information was preempted and superseded by CUTSA and barred by a four-year statute of limitations.

## **ARGUMENT**

## I.  **THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON CORRECTION OF PATENT INVENTORSHIP**

### A.  **Gerawan Did Not Have Clear and Convincing Evidence to Support Its Claim**

The District Court properly concluded that "Plaintiff has failed to offer clear and convincing evidence demonstrating that Mr. Gerawan made an inventive contribution to the Grape Lug as embodied in the '293 Patent."  (A35.)  The District Court based its conclusion on the undisputed evidence that Rehrig had fully designed the Grape Lug by June 14, 1993, and that Gerawan was unable to present any evidence that it ever met with Rehrig before that date, or even if it had, that Gerawan made any inventive contribution to the Grape Lug.  The District Court was highly critical of Gerawan's claim in light of Mr. Gerawan's deposition testimony, which the Court described as "far from enlightening...  Mr. Gerawan, the supposed co-inventor, testified that he could not recall which specific inventive design features he contributed to the Grape Lug, whether at the parties' first meeting or at any time thereafter."  (A34.)  The District Court also held that the so-

called "corroborating" evidence – Mr. Dever's testimony – "is neither clear nor convincing in showing that Mr. Gerawan made an inventive contribution to the Grape Lug at the parties' first meeting." (A33.)[3]  Gerawan had no documentary evidence and Ray Gerawan testified he could not identify the specific venting or design features he supposedly contributed, and that nothing in the Grape Lug was proprietary to Gerawan.  (A5813 [24:3-11]; A5817 [35:1-9].)  In later ruling on Rehrig's motion for fees, the District Court recalled that "there were notable gaps in Gerawan's evidence, particularly Mr. Gerawan's utter inability to remember anything of substance that would support Gerawan's correction of inventorship claim." (A70.)

Rehrig proved that by June 14, 1993, it had fully engineered the Grape Lug, and had the final schematic drawings.  (A22; A5599 [¶14]; A5645-A5654.)  By July 1, 1993, Rehrig was sending proposals to potential customers such as Sun World.  (A22; A31-32; A5599 [¶14]; A5645-A5654.)  The drawings in the

---

[3] Mr. Dever actually supported Rehrig's recounting of events when he testified that he was not aware of anyone at Gerawan giving any designs or specifications for a grape lug to Rehrig in that "June, July" time frame.  (A5047 [37:8-38:12].)  The documentary evidence – a follow-up letter of introduction from Rehrig dated July 26, 1993 – shows that the first meeting was sometime at the end of July.  (A314; A5601 [¶23].)  While Gerawan claims that Mr. Dever had "contemporaneous notes" of meetings with Rehrig, the earliest notes are dated September 15, 1993.  (A317.)  This aligns with Rehrig's testimony that Gerawan did not share any design ideas about the Harvest Tote until after Rehrig signed Confidential Disclosure Agreements on September 15, 1993, two weeks after Rehrig filed the patent application.  (A5601-A5602 [¶24].)

proposals were the same that Rehrig used as the preferred embodiment drawings in the '293 Patent. (A32); A5649-A5651; A100; A102.) Further, the mold to make the plastic Grape Lugs had been designed several months earlier. Using these designs, the molds were made in Portugal, shipped to California, and set up and ready to run by August 30, 1993. (A5600 [¶¶17-18]; A5660-A5662; A5664; A98; A523.)

The issuance of a patent creates a presumption that the named inventors listed on the face of the patent are the only true inventors. *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997); *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). To overcome that presumption, a plaintiff is required to prove an inventive contribution by *clear and convincing* evidence.[4] *Hess*, 106 F.3d at 980; *Ethicon*, 135 F.3d at 1461. That, in turn, requires proof that the alleged co-inventor contributed the conception of "a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986); *see also Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997); *Ethicon*, 135 F.3d at 1461 & 1463.

---

[4] An alleged co-inventor's testimony, standing alone, is insufficient and must be supported by corroborating evidence. *Ethicon*, 135 F.3d at 1461; *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993).

Describing concepts already known in the industry or found in the current state of the art does not make a person a co-inventor. *Fina Oil & Chem. Co.*, 123 F.3d at 1473; *Hess*, 106 F.3d at 981 (holding that a person who provides an inventor with well-known principles or who explains the state of the art does not qualify as a joint inventor); *Garrett Corp. v. United States*, 422 F.2d 874, 881 (Ct. Claims 1970) ("One who merely suggests an idea of a result to be accomplished, rather than means of accomplishing it, is not a joint inventor."); *Nartron Corp. v. Schukra U.S.A. Inc.*, 558 F.3d 1352, 1359 (Fed. Cir. 2009); *Ethicon, Inc. v. U.S. Surgical Corp.*, 937 F. Supp. 1015, 1035 (D. Conn.1996) ("An entrepreneur's request to another to create a product that will fulfill a certain function is not conception-even if the entrepreneur supplies continuous input on the acceptability of offered products." (quotation marks omitted), *aff'd* 135 F.3d 1456 (Fed. Cir. 1998)); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985) (an inventor may solicit the assistance of others when perfecting the invention without losing his right to a patent). The alleged co-inventor must contribute a novel and non-obvious element. *See, e.g., Garrett Corp.*, 422 F.2d at 880-81.

When questioned in deposition about his supposed inventive contributions to the Grape Lug, Mr. Gerawan could not identify a single unique or non-obvious design that did not already exist in countless other fruit containers. (A5813 [24:3-

11]; A5817 [35:1-9].)  Stackable containers to receive produce and allow

ventilation were known in the prior art as early as 1969.  (A5735 [¶8].)  Sidewalls

specific for ventilation were an existing feature of produce containers when the

Grape Lug was designed.  (*Id*.)  Perforated bottoms to allow water to drain were

common.  (*Id.*; A5833-A5834 [91:25-92:25].)  Ray Gerawan contributed nothing

to its design.

Gerawan admits in its Opening Brief that Ray Gerawan did not give

anything to Rehrig in regards to the Grape Lug, but instead contends that he

"provided [information regarding venting and hydrocooling] in the context of

discussing a picking bin that was later named the Harvest Tote."  (Opening Brief,

at 36; *see also* A190 ["the '293 Patent… included claims invented by Ray

Gerawan in connection with the Harvest Tote"].)  A discussion of a product's

general features is not clear and convincing evidence of co-inventorship.

## B.    The Construction of the '293 Patent was Never in Question

Gerawan takes issue, for the first time on this appeal, that the District Court

failed to construe the language of the claims in the '293 Patent.  Gerawan,

however, never attempted a claim construction to define the claims or identify the

portion of the claims for which Gerawan was asserting inventorship.  *See Sage

Products, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997)

("appellate courts do not consider a party's new theories, lodged first on appeal.  If

a litigant seeks to show error in a trial court's overlooking an argument, it must first present that argument to the trial court.  In short, this court does not 'review' that which was not presented to the district court."); *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1361-62 (Fed. Cir. 1998) (declining to address issue which was only "casually referenced" and not "clearly raised" at the district court).

While Gerawan never raised claim construction in opposition to Rehrig's motion for summary judgment (A239-A242), the District Court nevertheless stated that, in light of Rehrig's documentary evidence "demonstrat[ing] that Defendant's conception of the Grape Lug was firm and definite by June 14, 1993…, it became Plaintiff's burden in opposing summary judgment to offer clear and convincing evidence of one of two things: (1) the Grape Lug shown in Defendant's engineered drawings is different from the Grape Lug embodied in the '293 Patent; or (2) Mr. Gerawan made his alleged inventive contributions to the Grape Lug sometime before June 14, 1993. [Citation.]  Plaintiff attempts to do the latter in its opposition…"  (A32.)

Gerawan had the opportunity, but chose not to construe the language of the '293 Patent's claims, because the supposed co-inventor could not identify a single feature he contributed to the product, let alone the claim language in the patent. Instead, Gerawan attempted to pre-date the Grape Lug schematics, which it was

clearly unable to do.[5]  Because Gerawan never argued the scope of the '293 Patent to the District Court, this issue was not properly raised below and Gerawan is precluded from raising it on appeal.

Gerawan's substantive argument regarding the language of the '293 Patent also fails.  Its claim of inventorship regards features that do not appear in the '293 Patent.  Gerawan discusses various cooling considerations for ventilation and hydrocooling and that different types of fruit are cooled differently, and opines that Rehrig was naïve with respect to all of these.  (Opening Brief, at 35-36.)  Further, Gerawan claims that "the following information . . . is covered by the '293 Patent:… [¶] The placement of venting holes for adequate ventilation; [¶] The design and structure of the corners… [¶] The placement of holes in the floor for the hydrocooling."  (Opening Brief, at 36.)  However, not once in the entirety of the '293 Patent is there any discussion of (1) how to determine the amount of ventilation needed or (2) the number, dimensions, or placement of apertures.  Further, the '293 Patent does not mention or refer to hydrocooling (*i.e.*, cooling with water) at all: it states the "bottom surface is apertured to allow for air circulation between containers when stacked."  (A114 [col. 7, ll. 2-4]; *see also* A117 (Claim 15).)

---

[5] Contrary to Gerawan's unsupported assertions, it never identified any evidence of any contribution to the claim language.

Gerawan raises the argument that Rehrig was a relative "newcomer" and unlikely to be able to come up with the specifics of ventilation without Gerawan's help. (Opening Brief, at 37-38.) However, Gerawan ignores the undisputed evidence that for decades, if not longer, fruit containers have included ventilation and walls with apertures. Moreover, Rehrig was not a "newcomer" as it had designed, developed, and sold both a strawberry box and a lemon crate dating back to the 1980s which included ventilation and walls with apertures. (A5595-A5596 [¶4].)

According to Gerawan, Rehrig may have been able to invent and design the Grape Lug with all of its special features, but Rehrig's patent attorneys were unable to write the '293 Patent's claim language without Ray Gerawan. (Opening Brief, at 37.) The assertion that Rehrig's patent attorneys could not come up with the words "walls including apertures" from examining the Grape Lug schematics without Ray Gerawan's assistance is arrogant and absurd, but worse, it is unsupported by even a shred of evidence.[6]

## C.    The Fees Award Should Be Affirmed

Due to Gerawan's litigation misconduct in dishonestly manufacturing evidence and misleading the District Court and Rehrig as to when it was created,

---

[6] This runs directly contrary to Gerawan's statement in opposition to Rehrig's motion to dismiss, namely that Rehrig is a sophisticated manufacturer with nearly 300 issued patents. (A488-A489.)

the District Court found the case exceptional and awarded Rehrig its attorneys'
fees spent combating the standing issue.  (A89-96; A72-75.)  Gerawan does not
contest the Court's findings, it merely argues that the fee award should be vacated
if the patent inventorship claim is remanded.  (Opening Brief, at 40 n.6.)  Thus,
when the grant of summary judgment on the inventorship claim is affirmed, the fee
award should stand with it.

## II.    THE DISTRICT COURT PROPERLY DISMISSED THE LANHAM ACT CLAIM WITHOUT LEAVE TO AMEND

### A.    Gerawan Does Not Appeal the Dismissal of Its Reverse Palming Off Claim, Which Was Its Only Lanham Act Claim

Gerawan's Lanham Act claim asserted that Rehrig wrongfully failed to
attribute or otherwise disclose to the consuming public that Gerawan was a source
of inventorship or origin of the Harvest Tote and second generation Harvest Tote.
Specifically, Gerawan alleged that Rehrig's "conduct... constitutes a false
designation of origin, affiliation or sponsorship… in that such conduct wrongfully
and falsely suggests that [Rehrig] is the sole source or inventor of the Harvest Tote
or the Second Generation Tote."  (A157 [¶53].)

Rehrig moved to dismiss.  In response, Gerawan pointed to the factual
allegations in the complaint, namely that it had provided the design for the harvest
tote, which would be exclusively manufactured and sold by Rehrig in exchange for
certain payments, but that Rehrig then held itself out to consumers as the "sole

inventor." (A482-A483 & 485 (citing Complaint ¶¶ 7, 9 & 14-15).) The complaint was devoid of any other facts, and Gerawan made no other argument, about how Rehrig's conduct amounted to a false designation of origin or affiliation.

In its order granting the motion to dismiss, the District Court interpreted the claim precisely as Gerawan had presented it: "The essence of Gerawan's claim here is that Rehrig made false descriptions of origin when it used Ray Gerawan's design for the Harvest Tote but failed to credit Ray Gerawan as a joint inventor or source of origin of the Harvest Tote or the Second Generation Harvest Tote." (A6.) As the District Court stated, this is a claim for "reverse palming off," which generally occurs when the "wrongdoer takes another party's product, removes the party's trademark or name as the origin of the source, and sells the product under the wrongdoer's own name." (A6 (citing *Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988).) The problem with Gerawan's theory of liability, the District Court found, was that it was based on an "incorrect construction of the word 'origin' as it is used in § 1125(a)" of the Lanham Act. (A6.) "Origin of goods" refers to producers, manufacturers or sellers whose goods are offered to consumers. It does not refer to mere inventors or designers who do not manufacture or sell goods. (A6 (quoting *Dastar Corp. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31-32 (2003) (opining that the words of the Lanham Act

should not be stretched to cover matters like inventorship disputes that are typically no consequence to consumers))).)

The only case cited by Gerawan in opposition to the motion was *GNI Waterman LLC v. A/M Valve Co. LLC*, 2007 U.S. Dist. LEXIS 68715 *13 (E.D. Cal. Sept. 7, 2007), a "reverse palming off" case decided by the same District Judge here.  (A493.)  The District Court readily distinguished the facts of that case from Gerawan's claim because, unlike the plaintiff in *GNI Waterman*, "it is clear" from Gerawan's own Complaint that Gerawan is not a producer or seller of harvest totes.  (A6.)  "Gerawan produces no products or services related to the Harvest Tote or the Second Generation Tote for consumers."  (A7.)  Its interests are limited to those of a patent co-inventor or the holder of contractual royalty rights, which the Lanham Act does not cover.  (*Id.*)  The District Court therefore properly dismissed the Lanham Act claim without leave to amend.

Gerawan does not appeal the District Court's dismissal of the "reverse palming off" claim, so that ruling should not be disturbed.[7]  Instead, Gerawan for the first time now contends that its Lanham Act claim was broader than "reverse palming off" and included a claim for "traditional passing off."  Gerawan faults the

---

[7] The District Court actually found Gerawan's Lanham Act claim "groundless" and "exceptional."  (A82-A83.)

District Court for unfairly over-limiting the claim or, at a minimum, failing to offer leave to amend.  The argument lacks merit for each of the reasons below.

### B.  Gerawan's Lanham Act Claim Did Not Allege Traditional Passing Off and Gerawan Is Judicially Estopped From Arguing Otherwise

A claim for "traditional passing off" arises when a party wrongly sells its own goods under the mark of or false affiliation with another party.  *See Dastar Corp.*, 539 U.S. at 27 n.1; *Lamothe*, 847 F.2d at 1406.  Gerawan generally asserts that its Lanham Act claim "included claims for 'passing off' and other improper actions likely to cause confusion as to Gerawan's association with the second generation Harvest Tote," but Gerawan does not cite any portion of its complaint that supports this contention.  (Opening Brief, at 29.)  Nor is it clear, even on appeal, what Gerawan asserts the passing off claim could be.[8]  Gerawan's claim was that Rehrig hid Gerawan's design involvement from consumers.  It is inconceivable that the Lanham Act claim also included a contradictory and mutually exclusive allegation that Rehrig wrongfully sold the harvest totes by unfairly using Gerawan's name.  (A157.)

Gerawan is judicially estopped from arguing that its Lanham Act reverse palming off claim included a contradictory claim for traditional passing off.  Judicial estoppel is an equitable doctrine that precludes a party from gaining an

---

[8] Gerawan asserts, without citing any evidence, "Rehrig used Gerawan's reputation to promote the Harvest Tote."  (Opening Brief, at 14-15.)

advantage by asserting one position, and then later seeking another advantage by taking a clearly inconsistent position. *Speedtrack, Inc. v. Endeca Techs., Inc.*, 524 Fed. Appx. 651, 657-658 (Fed. Cir. 2013) (citing *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996)). Yet that is precisely what Gerawan is attempting.

During the pretrial conference, Rehrig argued "and on first impression it appeared to the Court, that any claim premised on allegations of 'passing off' was dismissed with prejudice in connection with [Gerawan's] claim under the Lanham Act." (A370.) The District Court therefore requested briefing from Gerawan why it should still be permitted to go to trial on its remaining unfair competition claim based on a theory of "passing off." In response, Gerawan expressly and unequivocally argued that the dismissed Lanham Act claim was only for reverse palming off, and did not include a claim for traditional passing off. Gerawan said that its "common law unfair competition claim should not be dismissed because it is based on traditional passing off and other unfair and fraudulent practices[], *not reverse passing off, and is therefore qualitatively different than the dismissed 43(a) claim*." (A351 (emphasis added); *see also* A457 (holding that "in response to the Court's hard efforts to clarify the basis of Plaintiff's common [law] unfair competition claim, it was *Plaintiff* who analogized its claim to trademark infringement by way of 'passing off.'").)

-35-

The District Court accepted Gerawan's argument and permitted it to proceed to trial on the passing off claim.  (A370.)  Gerawan is thus judicially estopped from now arguing on appeal that the Lanham Act claim also included a theory of passing off.  *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-783 (9th Cir. 2001).  If it had, the unfair competition claim for passing off would have been dismissed along with the Lanham Act claim because as Gerawan acknowledges, claims for passing off under the Lanham Act are virtually synonymous with those for unfair competition.  (Opening Brief, at 4, 26 & 30.)

Finally, this Court should not, as Gerawan suggests, interpret the scope of the Lanham Act to make actionable all claims of "unfairness."  (Opening Brief, at 28-29.)  Gerawan's argument is not supported by *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434 (9th Cir. 1993).  There, the Ninth Circuit did not hold for the plaintiff, but affirmed the district court which ruled against the plaintiff's Lanham Act claim for reverse passing off.  Summit hired Chinese manufacturer ZMTW to make Summit's lathes, which Summit would have the exclusive right to sell outside of China.  *See id.*, at 1436.  Defendant Victor resold several lathes purchased from ZMTW which were allegedly based on Summit's designs.  *See id.*, at 1436-37.  "It cannot be disputed that Victor has the right to *copy* Summit's lathe" and sell them in the United States since they were not patented and therefore unprotected, even under common law.  *See id.*, at 1437

(emphasis original).  The only question was whether Victor had violated the

Lanham Act through reverse palming off: i.e., by selling Summit's goods as its

own.  *See id*.  The Court rejected Summit's contention that the district court should

have focused on "'who was responsible for the design and manufacturing'" and

whether the public would be "misled by the Victor label into believing that Victor

was responsible for the quality and make-up of the lathes." *Id.*, at 1437-38.  The

question the Court focused on was whether Victor had taken Summit's lathes and

sold them as its own.  The Court upheld the ruling that Victor had not, and

affirmed judgment in defendant's favor.  *See id*.[9]

### C.    The Court Did Not Commit Prejudicial Error by Dismissing Without Leave to Amend Because Gerawan Was Still Permitted to Proceed to Trial on the same Unfair Competition Claims

The crux of Gerawan's argument is that it should have been permitted to

amend its Lanham Act claim to allege a passing off theory because the District

Court subsequently permitted Gerawan to proceed to trial on an unfair competition

theory of passing off.  The argument proves too much.

Reversals lie only when a trial court commits a *prejudicial* error.  28 U.S.C.

§ 2111 (2014) ("On the hearing of any appeal . . . , the court shall give judgment

---

[9] Gerawan's reliance on *L & L White Metal Casting Corp. v. Joseph*, 387 F. Supp. 1349 (E.D.N.Y. 1975) is equally erroneous.  That court did not find a Lanham Act violation since it held consumer confusion to be a necessary element for which the plaintiff offered no evidence.  *See id.*, at 1356.

after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."). There was none here. Despite denying leave to amend the Lanham Act claim, the District Court gave leave to amend the unfair competition claim, which Gerawan did. (A17.) The facts and theories that Gerawan pursued all the way to the eve of trial with its unfair competition claims are exactly the same facts and theories that Gerawan says it would have amended with the Lanham Act claim. Gerawan was therefore not denied the opportunity to pursue any different claims. As such, there was no prejudice by the denial of leave to amend the Lanham Act claim.

## III.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN LIMITING GERAWAN'S COMMON LAW UNFAIR COMPETITION CLAIM TO ONE FOR PASSING OFF

Following its order granting Rehrig's motion for summary judgment, the District Court rightfully contemplated the scope of Gerawan's remaining claims for common law and statutory unfair competition. Neither party believed that common law unfair competition was a part of this case, but Gerawan has vehemently argued that it pled this claim from the outset. It just chose to never disclose or provide any evidence to support the claim until days before trial. On February 8, 2013, the day that discovery closed, Gerawan filed a motion for leave to amend the complaint. In its motion, Gerawan sought, among other things, to "make it clear" that its complaint included a claim for common law unfair

competition.  "Lest there be any confusion, Gerawan seeks to clarify that it has already pled a common law unfair competition claim in its Complaint and in its First Amended Complaint.  This claim is ***based on the same underlying facts already alleged*** in the Complaint and in the First Amended Complaint."  (A524 (emphasis added).)

Gerawan apparently misrepresented the scope of its claim in its motion for leave to amend, because it argued in response to the District Court's preliminary pretrial order that its unfair competition claim consisted of things that cannot be found anywhere in the complaint or the FAC, including (1) a claim for traditional passing off, which Gerawan argued was "qualitatively different" than the reverse passing off it had asserted under the Lanham Act, and (2) a misappropriation of *rights* in the Harvest Tote, rather than the Harvest Tote *design* it had previously pled in the FAC.  (A351-A353.)  Gerawan presented *no facts* supporting either of these theories of its claim in the complaint or in the FAC, and the only allegation it alleged related to the unauthorized use of design information.  Gerawan thereafter tried to inject even more theories of unfair competition, including previously dismissed or adjudicated issues, it hoped could fall under the nebulous rubric of unfair competition when it submitted its jury instructions days before trial.

Ultimately, through a series of pretrial orders, the District Court limited Gerawan's claim for common law unfair competition to one for passing off:

"First, in response to the Court's hard efforts to clarify the basis of Plaintiff's common unfair competition claim, it was Plaintiff who analogized its claim to trademark infringement by way of 'passing off.' (See Doc. 109 at 1-2). ('GFI's [Gerawan's] common law unfair competition claim is based . . . on traditional passing off, which occurs when business labels its goods with a mark identical to that of another enterprise.')."  (A457 (bracket and ellipsis in original).)

Rather than go to trial, Gerawan voluntarily dismissed with prejudice the common law unfair competition claim based on a passing off theory.  (A63.)  It cannot appeal its own dismissal.  Instead, it asks this Court to find that the District Court erred in refusing to allow Gerawan to present a common law unfair competition claim based on unpled and unarticulated theories of misappropriation of rights.  For the reasons below, the District Court's orders should be affirmed.

### A.    The Appropriate Standard of Review of Pretrial Orders is Abuse of Discretion, Not the *De Novo* Standard that Gerawan Claims

Gerawan claims that the District Court "*sua sponte* grant[ed] [] summary judgment on Gerawan's common law unfair competition claim" and asserts that the *de novo* standard of review applies.  (Opening Brief, at 26.)  The District Court did no such thing.  The District Court circumscribed Gerawan's claim through pretrial orders and its authority under Federal Rule of Civil Procedure 16.  "At any pretrial conference, the court may consider and take appropriate action on the following matters: (A) formulating and simplifying the issues, and eliminating

frivolous claims or defenses; … (J) determining the form and content of the pretrial order;… and (P) facilitating in other ways the just, speedy, and inexpensive disposition of the action."  Fed. R. Civ. P. 16(c)(2).

The District Court has the right, subject to the proper exercise of its discretion, to dismiss claims *sua sponte* even on the eve of trial based on theories, evidence and argument first presented in pretrial statements.  *See, e.g., Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 719 (9th Cir. 2004) (affirming court's exclusion of claim from case by pretrial order); *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985) ("The district court['s] . . . decisions regarding the preclusive effect of a pretrial order on issues of law and fact at trial will not be disturbed unless they evidence a clear abuse of discretion."); *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1308-09 (Fed. Cir. 2009) ("Baden failed to raise a consumer confusion argument in its complaint or the pre-trial order. Thus, Baden did not pursue its 'switch' claims at trial and has therefore waived that argument on appeal.").  Likewise, a district court's refusal to modify a pretrial order is reviewed for an abuse of discretion.  *See Miller*, 758 F.2d at 369; *Polar Bear Prods.*, 384 F.3d at 719; *Hunt v. County of Orange*, 672 F.3d 606, 616-17 (9th Cir. 2012).

On May 9, 2013, the District Court issued an order determining that the statutory and common law unfair competition claims were plausibly viable on

certain theories and ruling that Gerawan could proceed to trial, limited to those

specific theories.  (A368-374; A60.)  But, the District Court *refused to enter*

*summary judgment*.  In its May 9 order, the Court stated that "the record is simply

too cloudy for the Court to enter summary judgment *sua sponte* in Defendant's

favor at this time."  (A369-A370.)  It is this pretrial order and a handful of others

defining the claim to be tried that Gerawan appeals from, not an order of summary

judgment.[10]  Accordingly, this Court's review is limited to whether the District

Court abused its discretion in limiting and defining the scope of Gerawan's unfair

competition claims through its pretrial orders.

### B.    Common Law Unfair Competition is Limited to Passing Off

The common law tort of unfair competition is generally thought to be

synonymous with the act of "passing off one's goods as those of another."  *Bank of*

*the West v. Superior Court*, 2 Cal. 4th 1254, 1263 (1994); *see also Southland Sod*

*Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) (affirming grant of

summary judgment on common law unfair competition where plaintiff had no

claim for passing off or its equivalent); *Sybersound Records, Inc. v. UAV Corp.*,

517 F.3d 1137, 1153 (9th Cir. 2008) (affirming dismissal of common law unfair

competition claim where plaintiff did not allege passing off); *SunPower Corp. v.*

---

[10] The District Court thereafter stated multiple times that Gerawan's common law
unfair competition claim was limited to passing off.  (A369, A54, A55, A457,
A60.)

*SolarCity Corp.*, 2012 U.S. Dist. LEXIS 176284 at *39 (N.D. Cal. Dec. 11, 2012).[11]  The District Court properly followed the expansive case law of common law unfair competition in limiting Gerawan's claim to one for passing off.  It did not abuse its discretion in doing so.

### C.    Gerawan's Alternate Theories of Common Law Unfair Competition Based on Misappropriation Were Either Superseded by CUTSA, Never Pled, or Previously Dismissed by Gerawan

As pled in the FAC, Gerawan's unfair competition claims hinged on Rehrig's "developing and selling the Second Generation Harvest Tote design without authorization from Gerawan or payment of royalties to Gerawan."  (A192.) In its preliminary pretrial order, the District Court was rightfully concerned that Gerawan's theory relied on a misappropriation of Gerawan's *design*, and if so, such a claim would be preempted or superseded by the CUTSA.  (A348.)  *See K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal.App.4th 939, 958, 961-962 (2009); *SunPower Corp.*, 2012 U.S. Dist. LEXIS 176284, at *39; *Silvaco Data Sys. v. Intel Corp.*, 184 Cal.App.4th 210, 236, 239 n.22 (2010) ("We emphatically reject... that the uniform act was not intended to preempt 'common

---

[11] *See also SkinMedica, Inc. v. Histogen Inc.,* 869 F. Supp. 2d 1176, 1189 (S.D. Cal. 2012) (dismissing claim where plaintiff failed to show defendant traded on plaintiff's goodwill and "passed off" goods); *Morning Star Packing Co. v. SK Foods, L.P.*, 754 F. Supp. 2d 1230, 1238 (E.D. Cal. 2010)*; Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,* 2011 U.S. Dist. LEXIS 73853, at *6-9 (N.D. Cal. July 8, 2011); *Oracle Corp., v. Druglogic, Inc.*, 2011 U.S. Dist. LEXIS 133642, at *43 (N.D. Cal. Nov. 16, 2011).

law conversion claims based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant.' … On the contrary, a prime purpose of the law was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information ... of value.'"); *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F.Supp.2d 911, 985-87 (C.D. Cal. 2011) (the CUTSA's broad preemption mandate "supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret.").

In a last-ditch attempt to avoid the sweeping preclusive effect of CUTSA, Gerawan responded to the District Court by stating—for the first time—that its claim involved Rehrig's misappropriation of the actual Harvest Tote product created by "the contract"[12] rather than the intangible design information Gerawan actually pled in the FAC.  (A353.)

First, the District Court properly excluded this newly-concocted theory of physical misappropriation because it stood in stark contrast to what Gerawan

---

[12] Gerawan never said which contract it was referring to.  If Gerawan meant the unsigned "Harvest Tote Agreement," then any claim for common law unfair competition would be barred by the two-year statute of limitations for oral promises.  *See* Cal. Code Civ. Proc. § 339(1).  If Gerawan meant the Confidentiality Agreement, then that agreement only conferred rights to the alleged proprietary and confidential design information, a claim which would be preempted.

actually pled and later advanced throughout discovery, including its representation in its motion for leave to amend the complaint.  (A59-A60; A524.)

Second, Gerawan voluntarily dismissed any sort of physical misappropriation claim at the start of the case.  Gerawan's original complaint alleged conversion:  Rehrig "wrongfully exercised control over Gerawan's rights in the Harvest Tote and Second Generation Harvest Tote."  (A154.)  True to form, Gerawan's response to the preliminary pretrial order, and now its Opening Brief, attempts to assert that its common law unfair competition claim rested upon Rehrig's misappropriation of Gerawan's rights in the physical product:  "Rehrig's use of the Harvest Tote to make the [second generation] Harvest Tote, a tangible product in which [Gerawan] holds a property interest by virtue of the contract the parties entered." (A353 & Opening Brief at p. 47.)

The rights Gerawan identified in its original complaint were purported rights to royalties, and the District Court dismissed the conversion claim, permitting leave to amend, because unidentified money and rights to contractual payments cannot be the subject of a conversion claim.  (A7-9.)  Rather than amending to allege that Rehrig had converted or wrongfully exercised control over the actual Harvest Tote, Gerawan voluntarily dismissed the conversion claim.  (A496-A498.)  Not only did Gerawan dismiss the conversion claim wherein a claim for misappropriation might have resided, Gerawan never sought to clarify or amend to

explain that its unfair competition claim involved the misappropriation of a physical product – at least until the District Court told Gerawan that its claim would be superseded.

Third, Gerawan still cannot state on what its belated misappropriation theory of unfair competition was based. Gerawan claims, on the one hand, that it somehow owned the rights to the tangible second generation Harvest Tote due to its alleged contributions to the design of the first generation product. On the other hand, Gerawan argues misappropriation based on contractual rights under the parties' Confidentiality Agreement from 1993. (*Compare* Opening Brief at 41-42 (effort-based misappropriation) *with* Opening Brief at 45, 47 (misappropriation of contractual rights).) To the extent Gerawan claims effort-based ownership rights, Gerawan never presented that theory until days before trial when it submitted its disputed jury instructions and was therefore properly excluded by the District Court under its inherent authority to limit the claims set for trial. Moreover, that theory is nonsensical as to the second generation Harvest Tote because, as Gerawan admits, it did not contribute to and had absolutely no involvement with the research, development, manufacture or sale of that product.

To the extent Gerawan's claim rests on ownership by virtue of contractual rights, Gerawan failed to advance an assignment of rights in any subsequently

developed product until it was too late to do so.[13]  Rather, the First Amended

Complaint merely noted there was a "Confidentiality Agreement related to the

proprietary design for the Harvest Tote." (A186 [¶9].)  Gerawan's portion of the

disputed facts in the amended joint pretrial statement does not include a fact stating

that Gerawan owns the second generation Harvest Tote.  (A290-293.)  The

amended joint pretrial statement and the final pretrial order include the parties'

*agreed upon statement* that "Gerawan claims that defendant Rehrig developed and

sold the Second Generation Harvest Tote using *design information* that it got from

Gerawan." (A396; A345.)  In other words, Gerawan never advanced a theory of

misappropriation based on its ownership of the second generation Harvest Tote.

Instead, the most that Gerawan ever pled was a misappropriation of its design

information, which is preempted by CUTSA.

Gerawan further asserts Rehrig "served discovery directed expressly at the

issue of misappropriation of Gerawan's Harvest Tote."  (Opening Brief, at 44.)

Rehrig asked for the "agreement or other right" upon which Gerawan asserted its

---

[13] In moving for leave to amend the FAC, which the District Court denied,
Gerawan sought to include a false promise based on Rehrig's failure to assign
rights in the second generation Harvest Tote.  Under Gerawan's contract-based
theory of misappropriation, Gerawan does not have an interest capable of being
misappropriated as required by the claim. *See, e.g., Bd. of Trustees of Leland
Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841-42 (Fed.
Cir. 2009) *aff'd* 131 S. Ct. 2188 (U.S. 2011) (an assignment transfers title; an
agreement to assign does not).

claim to money on sales of the second generation Harvest Tote. (A5956.)
Gerwan's responses prove that it never asserted or disclosed a physical
misappropriation claim of unfair competition. (A5956-A5957.)

Fourth, Gerawan's portion of the amended joint pretrial statement offered
only a single citation to a dissenting opinion on the composition of its common law
unfair competition claim: "The cornerstone of a claim for common law unfair
competition is 'fraud… practiced by one in securing the trade of a rival dealer.'
*Cel-Tech Communication, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th
163, 193 (1999) [Kennard, J., concurring and dissenting]." (A298.) This
highlights that a claim for common law unfair competition must be asserted by one
"rival dealer" against another, which Gerawan admits it is not (*see* Argument at
section D, below.) Gerawan's reliance on this as the controlling statement of the
law stands in stark contrast to the four multi-part tests set forth in Gerawan's jury
instructions on the claim of common law unfair competition. (A435-439.) As
noted by the frustrated District Court, Gerawan continually changed course until
the advent of trial when it "finally… flushed out in its jury instructions two
common law theories for the misappropriation of property… but that is not how
pleading and discovery practice work." (A60.) Had misappropriation been
Gerawan's theory in the case, it would have included *some* reference to it in the
Amended Joint Pretrial Statement. The discrepancy between the Amended Joint

-48-

Pretrial Statement and Gerawan's later-filed disputed jury instructions days before

trial is perhaps the clearest sign that Gerawan never intended to prosecute a claim

for physical misappropriation as unfair competition, and that Gerawan only

developed the theory after the final pretrial conference.[14]  The District Court acted

within its discretion in barring the unarticulated claims and theories.  *See Polar*

*Bear Prods.*, 384 F.3d at 719; *Hunt*, 672 F.3d at 616-17.

### D. Gerawan is Not a Competitor of Rehrig's and Therefore Any Theory of Common Law Unfair Competition is Barred

Even if Gerawan had timely and properly disclosed a physical

misappropriation theory for its common law unfair competition claim, it would be

barred.  The common law tort of unfair competition has always been limited to

claims between business competitors and requires a showing of competitive injury.

This is the reason why states like California enacted statutory measures, such as

Business & Professions Code section 17200, to extend protection to the consuming

---

[14] Gerawan makes much ado that Rehrig "did not plead any affirmative defenses to a passing off theory."  (Opening Brief, at 52-53.)  Gerawan interprets this as showing Rehrig "must have understood the claim to be premised on something other than 'passing off.'" (*Id*.)  That is untrue and contradicted by Gerawan's own statements in multiple pleadings claiming that its unfair competition claim was solely one under Bus. & Prof. Code § 17200.  (*See, e.g.*, A575 & A614.)  Even the Magistrate Judge was unsure whether a common law unfair competition claim existed.  "Gerawan's First Amended Complaint, however, is only eleven pages long, and the only appearance of the phrase 'and the common law' appears on page eight, line twenty, of Gerawan's First Amended Complaint. This Court has concerns as to whether this claim is adequately alleged and otherwise properly before the Court."  (A591.)

public from unfair and deceptive business practices. *Trovan, Ltd. v. Pfizer, Inc.*, 2000 U.S. Dist. LEXIS 7522 at *19-22 (C.D. Cal. May 25, 2000).

Here, Gerawan admitted and the District Court found that Gerawan and Rehrig are not competitors. (A371-A373; A489; A249-A250.) Gerawan went so far as to disclaim any competitive relationship between the parties (instead calling itself a consumer) in a desperate attempt to salvage the statutory unfair competition claim it later dismissed with prejudice. Gerawan argued: "GFI and Rehrig are not direct competitors. GFI is a farming operation, and Rehrig manufactures crates. GFI is a *customer* of Rehrig, and purchased picking crates from Rehrig . . . While the parties were business partners for purposes of the creation of the Harvest Tote, this does not make GFI a competitor." (A356.) As a result, even if the tort of common law unfair competition could encompass some type of misappropriation, it would necessarily need to be a claim of misappropriation between competitors, which is not the case here.

### E.    Gerawan's Common Law Unfair Competition Claim is Barred by the Statute of Limitations

The alleged common law misappropriation claim would also be time barred by California Code of Civil Procedure Section 339(1). *Garcia v. Coleman*, 2008 U.S. Dist. LEXIS 68672, at *24 (N.D. Cal. Sept. 8, 2008) (Section 339(1)'s two-year statute applies to claim for common law misappropriation of brand name "Sonoma Ridge"); *Italiani v. Metro-Goldwyn-Mayer Corp.*, 45 Cal. App. 2d 464,

466-67 (1941) (claim for misappropriation of literary property subject to § 339(1));

*Monolith Portland Midwest Co. v. Kaiser Alum. & Chem. Corp.*, 407 F.2d 288 (9th

Cir. 1969) (common law misappropriation claim must be brought within two

years). Gerwan admits it knew of Rehrig's production by the latest in August

2008, yet did not bring suit for nearly three years, until July 29, 2011. (A24-A25.)

Its claim for common law unfair competition is barred.

Actions for injury to intangible interests have a two-year statute of

limitations as an "obligation or liability not founded upon an instrument of

writing." Cal. Code of Civ. Proc. § 339(1). "Numerous decisions have established

that Section 339(1) governs an action for [] injury *to intangible property interests*."

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 178 (1971)

(emphasis added); *Barton v. New United Motor Manufacturing, Inc.*, 43 Cal. App.

4th 1200, 1206-07 (1996) (section 339(1) applies to tort actions for infringement of

property rights not within scope of other statutes of limitations). Consequently,

"[a] number of California cases have held that tortious interference with a person's

trade or business comes within the two-year limitation in section 339, subdivision

1, as an action upon an obligation or liability not founded upon an instrument in

writing." *Guess, Inc. v. Sup. Ct.*, 176 Cal.App.3d 473, 478 (1986) (action for trade

libel governed by Section 339(1)) (citations omitted); *Knoell v. Petrovich*, 76

Cal.App.4th 164, 168 (1999) (action for tortious interference with contract and prospective business advantage governed by Section 339(1)).

### F. Gerawan Lacked Evidence of Consumer Confusion Because Admittedly It Did Not Produce Anything and Did Not Want Its Name Affiliated with the Harvest Tote

Whether or not unfair competition can encompass something more than passing off, Gerawan does not dispute that the claim is limited to one between "rival dealers" to prevent conduct that deceives the consuming public (A298.) As a claim between "rival dealers," the cornerstone of *any* common law unfair competition claim then necessarily includes consumer deception or confusion. *Skinmedica, Inc.*, 869 F. Supp. 2d at 1188 (surveying cases and holding that "[a]ll of these cases make clear" that a claim for common law unfair competition consists of passing off and analogous acts that are "rooted in preventing conduct that harms competitors by deceiving customers"). Indeed, the "universal test question" has always been whether the public is likely to be deceived. *Pohl v. Anderson*, 13 Cal. App. 2d 241 (1936).

Gerawan did not plead and could not prove any consumer confusion. Gerawan admitted, and the Court ruled, that Gerawan never made or sold any "products or services related to the Harvest Tote or the Second Generation Harvest Tote for consumers." (A7.) Plus, Gerawan specifically avoided having its name associated with the Harvest Tote in any way because it was concerned that other

growers (the potential consumers) would be less likely to buy the Harvest Tote if they thought it was manufactured by a competing grower, Gerawan. (A5963-A5964 [62:20-63:20]; A5054 [111:13-112:7].) Therefore, the central ingredient for any passing off claim was completely missing. No consumers were deceived into buying a second generation Harvest Tote from Rehrig instead of a different Harvest Tote from Gerawan because Gerawan never manufactured or sold any Harvest Totes. As Gerawan conceded, the District Court found "that GFI and Rehrig were not competitors so there was no risk of consumer confusion . . . ." (A351.) That is fatal to any passing off claim, whether traditional or reverse. An allegation that Rehrig surreptitiously made the second generation Harvest Tote is not in any way evidence of consumer confusion. The only alleged deception was to Gerawan, which is not a consumer and was not tricked into buying Rehrig's product thinking that it was its own.

The only evidence that Gerawan offered in support of likelihood of confusion is a six-line memorandum written by one of its employees on June 8, 1994 regarding a conversation the employee purportedly had with a customer, Carl Buxman.[15] (A369.) According to Gerawan, this line of text proves its case: "He

---

[15] Gerawan attempted to modify the Final Pretrial Order just days before trial to submit multiple last-minute declarations from witnesses never before disclosed to Rehrig and not listed in the parties' Joint Pretrial Statement. The District Court correctly denied that motion but allowed Gerawan to go forward with the evidence it had already disclosed. (A459.)

also acknowledged that we had an obvious investment in the design of our box."

(A364.)

This statement has no tendency to prove likelihood of confusion.

Specifically, the statement does nothing to establish that customers came to

identify the Harvest Tote by a particular design or shape.  Indeed, it cannot: the

memorandum recounts a conversation with Mr. Buxman and finishes, "[h]e said he

was going to come to our office and look at a sample."  Its text proves that when

Mr. Buxman made the statement at issue, he had never seen a Harvest Tote.  As

such, it has no probative value to show likelihood of customer confusion.  FRE

401-403.[16]  Moreover, sales of the Harvest Tote did not begin until mid-1994, thus

the instantaneous design association that Gerawan intends to attribute to this June

1994 memorandum is highly implausible.  Notably, the memo never even uses or

refers to the name "harvest tote" so by definition there is no purported confusion

about the name.

"Testimony from a single source is insufficient to demonstrate secondary

meaning."  *Art Attacks Ink, LLC v. MGA Enter. Inc.*, 581 F.3d 1138, 1146 (9th Cir.

2009) (finding a reasonable jury could not have found sufficient purchaser

association between Spoiled Brats trade dress and source from one witness'

_____

[16] The statement also constitutes hearsay within hearsay, and Gerawan never
offered a proper basis for its admission.  FRE 802.

statements); *Japan Telecom v. Japan Telecom Am.*, 287 F.3d 866, 866-67 (9th Cir.

2002) (two letters and six declarations insufficient to demonstrate secondary

meaning).

### G.    The District Court Properly Excluded Surprise Witnesses and Evidence

In its Statement of Issues, Gerawan poses the question of whether the

District Court erred "in excluding Gerawan's witnesses to support its passing off

theory of unfair competition."  (Opening Brief, at 2.)  First, this can no longer be

an issue, as Gerawan has dismissed with prejudice its common law unfair

competition claim to the extent it is based on passing off.  *See Anderson v. Allstate*

*Ins. Co.*, 630 F.2d 677, 680-81 (9th Cir. 1980) (plaintiffs were not free to re-litigate

claims dismissed with prejudice); *Dannenberg v. The Software Toolworks, Inc.*, 16

F.3d 1073, 1077 (1994) (litigants should not be able to avoid the final judgment

rule without fully relinquishing the ability to further litigate unresolved claims).

Even if it were somehow relevant, Gerawan fails to advise this Court that the

excluded evidence consisted of five previously undisclosed witnesses and six

previously undisclosed declarations that Gerawan obtained in the 48 hours it had to

respond to the District Court's request for additional briefing regarding what

evidence it had in support of its claim.[17]  (A135-136.)  On May 24, 2013, 11 days

---

[17] Given that Gerawan somehow obtained all of this evidence in 48 hours, it is hard to believe that Gerawan could not have garnered or disclosed any of these

before trial, Gerawan sought to modify the Final Pretrial Order to include all of this evidence and described the District Court's exclusion as "manifestly unjust." As the District Court ruled on May 31, 2013, "The Court did not address, let alone intend to condone, Plaintiff's late-disclosed witnesses. That much should have been clear when the Court did not include [the 5 new witnesses] in the final pretrial order. . . . [I]t should go without saying that it is not Defendant's burden to point out what evidence Plaintiff will need to prevail on its own claims. Quite frankly, it is ridiculous for Plaintiff to argue, as it essentially does, that Defendant is to blame because Defendant failed to advise Plaintiff how to prove its claim sooner. Plaintiff, and Plaintiff alone, is the one to blame for its current predicament." (A457.) The District Court also explained in a footnote that, "This is not the first time that the Court has had to address Plaintiff's lack of diligence in this case. (See, e.g., Doc. 95) Indeed, this Court has already explicitly cautioned Plaintiff once that it will not tolerate dilatory conduct and that such will be grounds for sanctions. (Doc. 165 at 9 n.3.)"

The District Court excluded the vast majority, but not all, of this new evidence on grounds that Rehrig would be surprised and prejudiced by the new

---

witnesses or evidence in support of its passing off claim at any time during the nearly 18-month period before discovery closed.

evidence if Gerawan were allowed to introduce it at trial.  (A456-457.)  That was

not an abuse of discretion.  *See* Fed. R. Civ. P. 16(e); *Hunt*, 672 F.3d at 616.

## IV.   GERAWAN DISMISSED ITS UCL CLAIM WITH PREJUDICE, BUT EVEN IF APPEALABLE, THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN LIMITING THE CLAIM

Gerawan voluntarily dismissed its California Business and Professions Code

section 17200 claim (the "UCL claim").  (A63.)  Unlike the common law unfair

competition claim, Gerawan's dismissal was not limited to a certain theory.  The

dismissal was requested and entered as to the UCL claim *in its entirety*.  (A63.)  As

the District Court noted months after the dismissal in ruling on Gerawan's bond

motion, "[t]o the extent that Gerawan believes that it may simply resume trial in

this case on its "passing off" claim and/or its UCL claim after it has finished its

appeal, the Court does not share this view.  The parties stipulated to dismissing

these claims *with prejudice* and therefore those claims can no longer be a part of

this case.  (See Doc. 221)."  (A654.)  *See Anderson*, 630 F.2d at 680-81;

*Dannenberg*, 16 F.3d at 1077.

Even if this Court were to consider Gerawan's argument on appeal – that the

District Court erred in limiting Gerawan to the "unfair" prong of the statute –

Gerawan cannot and does not show how the District Court abused its discretion in

limiting Gerawan's UCL claim.  As Gerawan concedes, the District Court refined

and limited the UCL claim through some of its pretrial orders.  As such, the correct

standard of review is an abuse of discretion standard, not the *de novo* standard that Gerawan advocates. The Court certainly did not abuse its discretion, and in any event, reached the correct result for all of the following reasons.

*First*, as noted by the District Court, Gerawan only pled its UCL claim under the "unfair" prong of the statute, not the "unlawful" or "fraudulent" prong. (A37-A38; A192; A373.) The District Court permitted Gerawan leave to amend the UCL claim following Rehrig's motion to dismiss (A17), but Gerawan chose not to and never included allegations of unlawful or fraudulent conduct supporting its UCL claim.

*Second*, Gerawan contends that either (1) purported false patent markings or (2) its common law unfair competition claim could have served as a basis for the "unlawful" predicate of the UCL claim. (Opening Brief, at 2, 56-58.) Not so.

Gerawan was not permitted to "back door" false patent marking claims into the case as a UCL predicate after the District Court had properly denied Gerawan's repeated prior requests to amend the complaint to allege an independent false patent marking claim. (A600; A260-A262; A373; A5354.) In defining the claims to be tried, the District Court explicitly eliminated false marking as a basis for the UCL claim because such allegations "were never pled in the complaint and were never a part of this case." (A373.) In any event, a UCL claim cannot be premised on alleged violation of the patent laws because such a claim would be preempted.

*Champion Labs., Inc. v. Parker-Hannifin Corp.*, 2011 U.S. Dist. LEXIS 52853, at

\*12 (E.D. Cal. May 17, 2011) (finding § 17200 claim asserting bare violation of

section 35 U.S.C. § 292 to be preempted); *West v. Quality Gold, Inc.*, 2012 U.S.

Dist. LEXIS 98700 at \*15-16 (N.D. Cal. July 16, 2012 ) (same).

In addition, a violation of common law unfair competition cannot support

"unlawful" conduct for purposes of the UCL.  *Shroyer v. New Cingular Wireless*

*Servs., Inc.*, 622 F.3d 1035, 1043-44 (9th Cir. 2010) and *Nat'l Rural*

*Telecommunications Co-op. v. DIRECTV, Inc.*, 319 F.Supp.2d 1059, 1074-75

(C.D. Cal. 2003) hold that violations of common law unfair competition and

breach of contract do not amount to a violation of the unlawful prong of the UCL.

Those cases correctly followed *Allied Grape Growers v. Bronco Wine, Co.*, 203

Cal.App.3d 432 (1988) which stands for the proposition that a breach of contract or

other common law violation *may* form the predicate for a UCL claim, "*provided it*

*also constitutes conduct that is 'unlawful, or unfair, or fraudulent*" because the

breach of contract at issue independently violated three statutes of the California

Food and Agricultural Code.  *Puentes v. Wells Fargo Home Mortgage, Inc.*, 160

Cal.App.4th 638, 645 (2008).  The 'provided' limitation cannot be read out of the

law.  Gerawan cites to *Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 828 n.3 (9th Cir.

2003) in order to manufacture a conflict that does not exist concerning what

constitutes "unlawful" conduct.  (Opening Brief, at 57-58.)  However, *Mercado*

merely stated that common law had not been foreclosed as a basis for a claim

pursuant to the UCL, not that it was sufficient to state a claim under the unlawful

prong.  *See Mercado*, 340 F.3d at 828 n.3.

*Third*, based on Gerawan's allegations in the FAC relating solely to Rehrig's

improper use of Gerawan's design information, the UCL claim would be

preempted by CUTSA.  *See discussion re CUTSA, supra*.

*Fourth*, Gerawan's UCL claim would be barred by the statute of limitations.

Under Section 17208 of the UCL, Gerawan had to bring its statutory unfair

competition claim no later than four years from the earlier of when the unfair

competition took place, was discovered, or reasonably should have been

discovered.  *Aryeh v. Canon Business Solutions, Inc*., 55 Cal. 4th 1185, 1196-97

(2013) (common law principles of accrual such as discovery rule apply to UCL

claims).  The statute of limitations begins to run "not when the plaintiff became

aware of the specific wrong alleged," but when the plaintiff has information that

would put a reasonable person on inquiry.  *Kline v. Turner*, 87 Cal. App. 4th 1369,

1374 (2001); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807-08 (2005);

*Norgart*, 21 Cal. 4th at 397-98; *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11

(1988).

In September 1999, Rehrig and Gerwan first discussed declining sales of the

Harvest Tote, the prohibitive cost of maintaining the aging mold, and Rehrig's

plans to develop a next generation mold.  (A558; A5702 [¶¶4-5]; A5710; A5788 [61:8-20].)  Rehrig informed Gerawan that it intended to stop future sales of the existing Harvest Tote in favor of a new product.  In 2001, the parties had a similar conversation.  (A558; A5701 [¶6]; A5712.)  Rehrig has actively marketed the SG Harvest Tote to the public every year since 2003, including events Gerawan attends and publications Gerawan subscribes to.  (A5706-5707 [¶¶16-21]; A5800-A5803 [106:24-107:24, 108:7-16, 110:2-25].)  In April 2003, Gerawan stated that one of its Mexican affiliates (Grupo Alta) "may buy the 'new' harvest tote next year," and then helped broker the sale of SG Harvest Totes to a different Mexican affiliate (Grupo Castelo).  (A5704-A5706 [¶¶13-15]; A5717; A5792-A5794 [84:10-19, 88:23-89:6].)

Finally, Ray Gerawan admitted to having seen other growers in the Fresno area using the second generation Harvest Tote, which Gerawan claims is identical to the Harvest Tote, in their fields at various times from 2004 through 2006. (A5827.)  Despite being close acquaintances with the owners of those companies, he never questioned them about the product.  (A5828-A5829.)  Based on the foregoing, Gerawan knew, or reasonably should have discovered, Rehrig's development and sale of the second generation Harvest more than four years before the filing of the 2011 lawsuit.

For all of the above reasons and others, the District Court did not abuse its discretion in limiting the scope of Gerawan's UCL claim, which Gerawan ultimately dismissed with prejudice.

## CONCLUSION

The District Court correctly ruled on all decisions before it, and Gerawan has not shown any prejudicial error in any of the District Court's rulings.  The District Court's rulings should be affirmed in all respects.


Dated:  June 10, 2014

SLATER HERSEY & LIEBERMAN LLP


By _____*s/Scott B. Lieberman*_____
                         SCOTT B. LIEBERMAN

                    Attorneys for Appellee
                    REHRIG PACIFIC COMPANY

## <u>CERTIFICATE OF SERVICE</u>
Federal Circuit Case Number 14-1264, 14-1290

I hereby certify that I electronically filed the foregoing **APPELLEE REHRIG PACIFIC COMAPNY'S ANSWERING BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on June 10, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system upon the following persons:

Jill M. Pietrini (Cal. Bar No. 138335)
   jpietrini@sheppardmullin.com
James E. Curry (Cal. Bar No. 115769)
   jcurry@sheppardmullin.com
Michael Murphy (Cal. Bar. No. 234695)
   mmurphy@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone: (310) 228-3700
Facsimile: (310) 228-3701


                                   *s/ Scott B. Lieberman*
                                    Scott B. Lieberman

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 13,993 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman typeface.

Dated:  June 10, 2014

SLATER HERSEY & LIEBERMAN LLP


By _____*s/Scott B. Lieberman*_____
　　　　　　SCOTT B. LIEBERMAN

Attorneys for Appellee
REHRIG PACIFIC COMPANY

4850-7366-1723, v.  1